Richard A. Clark (SBN 39558)
rclark@pmcos.com
Natasha N. Dawood (SBN 228410)
ndawood@pmcos.com
PARKER, MILLIKEN, CLARK,
O'HARA & SAMUELIAN,
A PROFESSIONAL CORPORATION
555 S. Flower Street, 30th Floor
Los Angeles, CA  90071-2440
Telephone:  (213) 683-6500
Facsimile:   (213) 683-6669

Joe G. Hollingsworth, *pro hac vice*
jhollingsworth@hollingsworthllp.com
Stephen A. Klein, *pro hac vice*
sklein@hollingsworthllp.com
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC  20005-3305
Telephone:  (202) 898-5800
Facsimile:   (202) 682-1639

Attorneys for Defendant Sandoz Inc.

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| ROSEMARY DORSETT, individually and as successor-in-interest to the Estate of NOE CARRASCO, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>SANDOZ INC., a Delaware corporation; ELI LILLY AND COMPANY, an Indiana corporation (formerly DOE 1); and DOES 2-50,<br><br>Defendants. | Case No. 2:06-cv-7821 (AHM) (AJWx)<br>Judge:  Hon. A. Howard Matz<br><br>**SANDOZ INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON GROUNDS OF LACK OF DUTY AND PROXIMATE CAUSE, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>(Filed concurrently with Statement of Uncontroverted Facts and Conclusions of Law; Declarations of Natasha N. Dawood and Stephen A. Klein in support thereof; [Proposed] Order; and [Proposed] Judgment)<br><br>Date:          December 6, 2010<br>Time:          10:00 a.m.<br>Courtroom: 14 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on Monday, December 6, 2010, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 14 of the above-referenced court, located at 312 North Spring Street, Los Angeles, California 90012, before the Honorable A. Howard Matz, Defendant Sandoz Inc. ("Sandoz") will and hereby does respectfully move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment and an Order dismissing plaintiff's claims on the grounds that the undisputed evidence demonstrates (1) plaintiff cannot meet her burden to prove that an allegedly inadequate suicide warning by Sandoz proximately caused plaintiff's damages; (2) plaintiff cannot establish that Sandoz had a duty to warn of the alleged suicide risk; and (3) there is no genuine issue of material fact as to plaintiff's inability to establish these elements of her claims against Sandoz.

This Motion is based on the pleadings on file in this action; the attached Memorandum of Points and Authorities; the Statement of Uncontroverted Facts and Conclusions of Law, and the Declarations of Natasha N. Dawood and Stephen A. Klein in support thereof, filed concurrently herewith; and upon such further evidence and argument as may be offered at the hearing on this Motion.

This Motion is made following a conference of counsel, as required by Local Rule 7-3, which conference took place on September 20, 2010 and October 12,

/ / /

/ / /

/ / /

1  2010, as set forth in the Declaration of Stephen A. Klein, filed concurrently

2  herewith.

3  DATED:  October 25, 2010                Respectfully submitted,

4                                          By: _____

5                                             Richard A. Clark
                                             rclark@pmcos.com
6                                            Natasha N. Dawood
                                             ndawood@pmcos.com
7                                            PARKER, MILLIKEN, CLARK,
                                             O'HARA & SAMUELIAN,
8                                            A Professional Corporation
                                             555 S. Flower Street, 30th Floor
                                             Los Angeles, CA  90071-2440
9                                            Telephone:   (213) 683-6685
                                             Facsimile:    (213) 683-6669

10                                           Joe G. Hollingsworth, *pro hac vice*
11                                           jhollingsworth@hollingsworthllp.com
                                             Stephen A. Klein, *pro hac vice*
12                                           sklein@hollingsworthllp.com
                                             HOLLINGSWORTH LLP
13                                           1350 I Street, N.W.
                                             Washington, DC  20005-3305
14                                           Telephone:   (202) 898-5800
                                             Facsimile:    (202) 682-1639

15                                           *Attorneys for Defendant Sandoz Inc.*
16
17
18
19
20
21
22
23
24
25
26
27
28

SANDOZ INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................... 1

II.   SANDOZ NEED ONLY POINT OUT PLAINTIFF'S INABILITY TO MEET HER BURDEN TO ESTABLISH DUTY AND PROXIMATE CAUSE. .......................................................................................................... 2

III.  SANDOZ HAS NO DUTY TO WARN A LEARNED INTERMEDIARY OF KNOWN RISKS. ................................................................................. 3

IV.   PLAINTIFF CANNOT ESTABLISH THAT ANY INADEQUATE WARNING BY SANDOZ PROXIMATELY CAUSED HER DAMAGES. ............................................................................................... 6

      A.   Dr. Abend Did Not Read or Rely On Any Sandoz Product Information .............................................................................. 7

      B.   Dr. Abend Already Knew About Fluoxetine's Suicide Risk .............. 11

      C.   Dr. Abend's Assessment of Mr. Carrasco, His Positive Clinical Experience With Fluoxetine, and His Prescribing Practices Indicate That a Different Warning (Even Had He Seen It) Would Not Have Changed His Prescribing Decision. ....................................... 12

           1.   Dr. Abend Routinely Prescribes Fluoxetine Because of His Positive Clinical Experience With the Drug. ............................ 12

           2.   Mr. Carrasco Had No Contraindications Indicating He Was An Inappropriate Candidate for Fluoxetine. ............................. 13

           3.   Dr. Abend Weighed the Suicide Risk and Considered Other Options Before Prescribing Fluoxetine to Mr. Carrasco. .......... 14

           4.   Dr. Abend Continued Prescribing Fluoxetine Without Altering His Practice After A Suicide Black Box Warning Was Added ................................................................................ 15

      D.   Dr. Abend's Failure to Testify That A Different Warning Would Have Altered His Prescribing Decision Precludes Plaintiff From Meeting Her Burden to Present Affirmative Evidence Of Proximate Causation. ....................................................................... 17

V.    CONCLUSION ..................................................................................... 19

1

2

# <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

**FEDERAL CASES**

4

5

*Allgood v. GlaxoSmithKline PLC*
   No. 06-3506, 2008 WL 483574 (E.D. La. Feb. 20, 2008) ................................. 13

6

7

*Bartlett v. Mut. Pharm. Co., Inc.*
   No. 08-0358, 2010 WL 2765358 (D.N.H. July 12, 2010) ................................... 9

8

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986) ........................................................................................... 2

9

10

*Colville v. Pharmacia & Upjohn Co., LLC*
   565 F. Supp. 2d 1314 (N.D. Fla. 2008) ...................................................... 11, 16

11

12

*Ebel v. Eli Lilly & Co.*
   536 F. Supp. 2d 767 (S.D. Tex. 2008) .............................................................. 11

13

14

*Huntman v. Danek Medical, Inc.*
   No. 97-2155, 1998 WL 663362 (S.D. Cal. July 24, 1998) .......................... 3, 4, 8

15

16

*In re Ackermann v. Wyeth Pharms.*
   526 F.3d 203 (5th Cir. 2008) ............................................................................ 11

17

18

*In re Zyprexa Prods. Liab. Litig.*
   Nos. 04-1596, 04-1612, 2009 WL 3596526 (E.D.N.Y. Oct. 16, 2009) ............. 11

19

20

*Latiolais v. Merck & Co., Inc.*
   No. 06-2208, 2007 WL 5861354 (C.D. Cal. Feb. 6, 2007) ........................ 3, 8, 14

21

22

*Maneely v. Gen. Motors. Corp.*
   108 F.3d 1176 (9th Cir. 1997) ............................................................................ 3

23

24

*Miller v. Pfizer Inc.*
   196 F. Supp. 2d 1095 (D. Kan. 2002) ............................................................... 18

25

26

*Motus v. Pfizer, Inc.*
   358 F.3d 659 (9th Cir. 2004) ...................................................................... 2, 3, 8

27

*Motus v. Pfizer, Inc.*
   196 F. Supp. 2d 984 (C.D. Cal. 2001) ....................................................... passim

28

1   *Oliver v. Pharmacia & Upjohn Co., LLC*
2       No. 06-5737, 2008 WL 4691626 (E.D. La. Oct. 22, 2008) ............................... 11

3   *Plummer v. Lederle Labs.*
4       819 F.2d 349 (2d Cir. 1987) ........................................................................ 11, 18

5   *Porter v. Eli Lilly & Co.*
        No. 06-1297, 2008 WL 544739 (N.D. Ga. Feb. 25, 2008) ............................... 14
6
7   *Porterfield v. Ethicon, Inc.*
        183 F.3d 464 (5th Cir. 1999) ............................................................................ 9
8
9   *Thomas v. Hoffman LaRoche, Inc.*
        949 F.2d 806 (5th Cir. 1992)) ...................................................................... 14, 16

10  **CALIFORNIA CASES**

11  *Carlin v. Superior Court*
12      13 Cal. 4th 1104, 56 Cal. Rptr. 2d 162 (1996) ............................................ 3, 4, 6

13  *Conte v. Wyeth, Inc.*
14      168 Cal App. 4th 89, 85 Cal. Rptr. 3d 299 (2008) ................................... 9, 10, 11

15  *Johnson v. Am. Standard, Inc.*
16      43 Cal. 4th 56, 74 Cal. Rptr. 3d 108 (Cal. 2008) .......................................... 4

17  *Plenger v. Alza Corp.*
18      11 Cal. App. 4th 349, 13 Cal. Rptr. 2d 811 (1992) ....................................... 4, 11

19  *Rosburg v. Minnesota Mining & Mfg.*
20      181 Cal. App. 3d 726, 226 Cal. Rptr. 299 (1986) ......................................... 4, 11

21  **OTHER AUTHORITIES**

22  Fed. R. Civ. P. 56(c) .......................................................................................... 2

23
24
25
26
27
28

1

## I.   INTRODUCTION

2

On July 15, 2004, Dr. Robert Abend prescribed the generic antidepressant

3   fluoxetine to plaintiff's decedent, Noe Carrasco, whom Dr. Abend believed

4   exhibited "classic" symptoms of depression, but was not suicidal.  Dr. Abend had

5   seen good results with fluoxetine and regularly prescribed it to such patients – he

6   had found the drug to be "excellent" at relieving the symptoms of depression.  As it

7   happened, when Mr. Carrasco took his prescription to the pharmacy, it was filled,

8   plaintiff alleges, with fluoxetine manufactured by defendant Sandoz Inc.

9   ("Sandoz").

10

When Dr. Abend wrote this generic prescription for Mr. Carrasco, it is

11   undisputed that he:

12   • Did not specify Sandoz's fluoxetine or even know that Sandoz

13   manufactured the product;

14   • Did not rely on or even see Sandoz's label or package insert or any

15   other product information from Sandoz;

16   • Already was well aware of fluoxetine's alleged risk of inducing

17   suicide, which he had known about since the 1990's; and

18   • Actually warned Mr. Carrasco that fluoxetine might cause him to

19   experience suicidal feelings.

20

In short, because Dr. Abend testified unequivocally that he did not see or

21   rely on any Sandoz information and that he already knew about the alleged risk of

22   suicide associated with fluoxetine, plaintiff cannot establish two of the elements of

23   her failure to warn claim:  She cannot meet her burden to prove that an inadequate

24   suicide warning by Sandoz proximately caused plaintiff's damages; nor can

25   plaintiff establish that Sandoz had a duty to warn Dr. Abend of the alleged suicide

26   risk of which he already knew.

27

Summary judgment in favor of Sandoz is compelled by this Court's decision

28   in *Motus v. Pfizer, Inc*.  In nearly identical circumstances involving a suicide

allegedly induced by another SSRI antidepressant, this Court held that a plaintiff fails to establish proximate causation where the prescribing physician, as here, did not read or rely on the defendant's product label.  196 F. Supp. 2d 984, 996 (C.D. Cal. 2001) ("*Motus I*"), *aff'd*, 358 F.3d 659 (9th Cir. 2004) ("*Motus II*").  As the Ninth Circuit put it in affirming this Court's holding,

> Because the doctor testified that he did not read the warning label that accompanied *Zoloft* or rely on information provided by Pfizer's detail men before prescribing the drug to Mr. Motus, the adequacy of Pfizer's warnings is irrelevant to the disposition of this case.

358 F.3d at 661.  Based on Dr. Abend's similar testimony here, the adequacy of Sandoz's warning likewise is irrelevant to the disposition of this case.  Plaintiff cannot establish that any inadequate warning by Sandoz proximately caused or contributed to Mr. Carrasco's suicide, nor that Sandoz even had that asserted duty.

## II.   SANDOZ NEED ONLY POINT OUT PLAINTIFF'S INABILITY TO MEET HER BURDEN TO ESTABLISH DUTY AND PROXIMATE CAUSE.

Sandoz is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Because plaintiff bears the burden of proving her claim, Sandoz can meet its burden of production as the moving party "by pointing out the absence of evidence from the non-moving party; [Sandoz] need not disprove [plaintiff's] case."  *Motus I*, 196 F. Supp. 2d at 990 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Thus, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322; *see also Motus I*, 196 F. Supp. 2d at 990.

/ / /

1    Duty and proximate causation are two essential elements of plaintiff's

2    claims:  "To establish a failure to warn claim, a plaintiff must prove that the

3    manufacturer had a duty to warn of the dangers arising from a foreseeable use of

4    the product and that the breach of that duty was the proximate cause of the

5    plaintiff's injuries."  *Maneely v. Gen. Motors. Corp.*, 108 F.3d 1176, 1179 (9th Cir.

6    1997) (applying California law); *see also Motus*, 196 F. Supp. 2d at 991 ("A

7    plaintiff asserting causes of action based on a failure to warn must prove not only

8    that no warning was provided or the warning was inadequate, but also that the

9    inadequacy or absence of the warning caused the plaintiff's injury.").  As

10   demonstrated below, plaintiff cannot carry her burden with respect to either

11   element.[1]

## III.   SANDOZ HAS NO DUTY TO WARN A LEARNED INTERMEDIARY OF KNOWN RISKS.

14   California applies the learned intermediary doctrine; thus, a prescription

15   drug manufacturer's duty to warn runs to the prescribing physician, not the patient.

16   *See Motus II*, 358 F.3d at 661 ("Pfizer is obligated to warn doctors, not patients, of

17   potential side-effects associated with its pharmaceutical products") (*citing Carlin v.*

18   *Superior Court*, 13 Cal. 4th 1104, 1116, 56 Cal. Rptr. 2d 162 (1996)); *Motus I*, 196

---

[1]  Plaintiff's inability to establish duty and proximate causation requires judgment in Sandoz's favor regarding all of plaintiff's claims (including a fraudulent concealment claim that we understand plaintiff will be seeking to add to her complaint).  *See Latiolais v. Merck & Co., Inc.*, No. 06-2208, 2007 WL 5861354 at *6 (C.D. Cal. Feb. 6, 2007) (finding "[a]ll of Plaintiff's claims are premised to some extent on the allegation that Merck's failure to warn [regarding the prescription drug Zocor®] caused her husband's suicide"); *id.* at *3 n.1 ("[A]ny fact negating causation in the failure to warn context will be dispositive of both the negligence and strict liability claims"); *Huntman v. Danek Medical, Inc.*, No. 97-2155, 1998 WL 663362 at *6 (S.D. Cal. July 24, 1998) (granting device manufacturer's motion for summary judgment with respect to plaintiff's failure to warn, fraud, and breach of warranty claims based on lack of proximate causation); June 29, 2010 Order Denying Plaintiff's Motion for Leave to Amend the Complaint to Add a Cause of Action for Fraud and Prayer for Punitive Damages [Dkt. No. 179] (to adequately plead claim for fraudulent concealment plaintiff must "alleg[e] that [Dr. Abend] reviewed and relied upon the fluoxetine warning label before prescribing fluoxetine to Decedent").

F. Supp. 2d at 990 ("California follows the learned intermediary doctrine, which states that in the case of prescription drugs, the duty to warn 'runs to the physician, not to the patient.'") (*quoting Carlin*).

However, where the learned intermediary already knows of the product risk in question, the California Supreme Court has stated that the manufacturer has no duty to warn: "[A] pharmaceutical manufacturer may not be required to provide warning of a risk known to the medical community." *Carlin*, 13 Cal. 4th at 1116. *See also Plenger v. Alza Corp.*, 11 Cal. App. 4th 349, 362, 13 Cal. Rptr. 2d 811 (1992) (finding no triable issue of fact on the adequacy of medical device warning where risk at issue already was known, stating, "We are aware of no authority which requires a manufacturer to warn of a risk which is readily known and apparent to the consumer, in this case the physician."); *Rosburg v. Minnesota Mining & Mfg.*, 181 Cal. App. 3d 726, 735, 226 Cal. Rptr. 299 (1986) (rejecting failure to warn claim where doctor already knew of the risk of spontaneous deflation associated with silicone breast implants, finding that "[t]here is no requirement that a manufacturer must give a warning which could not possibly be effective in lessening the plaintiff's risk of harm."). *Cf. Huntman*, 1998 WL 663362 at *5 (S.D. Cal. July 24, 1998) ("[T]he adequacy of the warnings is immaterial where the doctor knows of the specific risks.").[2]

Here, plaintiff claims that Sandoz had a duty to provide Dr. Abend with a "stronger warning regarding the association between fluoxetine and suicidality" and failed to warn of "the drug's association with self-harm." Sandoz's Statement of Uncontroverted Facts ("SUF") No. 6. Yet Dr. Abend gave unequivocal testimony

---

[2] This rule really is nothing more than a straightforward application of the general product liability doctrine that manufacturers need not warn consumers of known or patent risks, except that under the learned intermediary doctrine the doctor takes the place of the "consumer." *See, e.g., Johnson v. Am. Standard, Inc.*, 43 Cal. 4th 56, 67, 74 Cal. Rptr. 3d 108 (Cal. 2008) ("Just as manufacturers need not warn ordinary consumers about generally known dangers, a manufacturer need not warn members of a trade or profession (sophisticated users) about dangers generally known to that trade or profession.").

1    that prior to prescribing fluoxetine to Mr. Carrasco, he already knew about the

2    alleged risk of suicide associated with the drug.  Plaintiff thus cannot show that

3    Sandoz had a duty to warn Dr. Abend – one of the essential elements of her claim.

4            Dr. Abend testified that he first learned about the suicide risk associated with

5    SSRI antidepressants, including fluoxetine, during the 1990s, when he attended

6    continuing medical education conferences ("CMEs") at which the suicide risk was

7    discussed.  SUF No. 29.  Consequently, when he prescribed fluoxetine to Mr.

8    Carrasco on July 15, 2004 (SUF No. 1), Dr. Abend already knew and understood

9    that suicide was a possible side effect of fluoxetine.  SUF No. 30.  When asked

10   about the debate during the "early 1990s" concerning fluoxetine's suicide risk, Dr.

11   Abend testified that he "knew that suicidality was a possible side effect of this

12   drug."  *See id.* (September 1, 2010 Deposition of Robert P. Abend, M.D. ("Abend

13   Dep.") at 214:21-215:7 (attached as Exhibit "A" to Declaration of Natasha N.

14   Dawood in Support of Sandoz's Motion for Summary Judgment)).  Likewise, when

15   asked whether fluoxetine information in a pamphlet prepared by Lilly matched his

16   understanding prior to 2004 of fluoxetine's benefits and side effects, Dr. Abend

17   testified, "No.  It doesn't include the risk of suicide."  *See id.* (Abend Dep. at

18   238:14-17).[3]

19           In fact, Dr. Abend actually warned Mr. Carrasco about the risk of suicide

20   when he prescribed him fluoxetine.  SUF Nos. 36, 43.[4]  It had been his regular

21   practice to do so since the 1990s.  SUF No. 34.  After being shown dozens of

22   _____

23   [3] Dr. Abend clearly understood the suicide risk to be a side effect of fluoxetine
     itself and not merely associated with the underlying disease, depression.  SUF No.
24   31.

25   [4] Dr. Abend's office notes from Mr. Carrasco's July 15, 2004 visit provide,
     "benefits and side effects explained in detail to the patient."  *See* SUF No. 36
26   (Abend Dep. at 41:6-11).  Dr. Abend testified that this included the risk of
     producing feelings of self-harm.  *See id.* (Abend Dep. at 41:12-18).  Dr. Abend also
27   testified that it was his usual practice to warn his SSRI patients of the risk of self-
     harm and that he has no reason to doubt that he followed his usual practice with Mr.
28   Carrasco.  *See id.* (Abend Dep. at 42:1-21).

documents by plaintiff's counsel, Dr. Abend testified that regardless of any new information contained in such documents, he still had enough information beginning in the 1990s to warn his patients of fluoxetine's suicide risk.  SUF No. 35.

Dr. Abend even knew in 2004 about fluoxetine's (allegedly) comparatively greater suicide risk than the older class of tricyclic antidepressants.  SUF No. 32. When asked whether he would have liked to have known that fluoxetine induces suicide 5.6 times more frequently than tricyclics, Dr. Abend replied, "I think I had that information [though not the exact percentage]."  *See id.* (Abend Dep. at 117:22-118:13).

It cannot be controverted that when he prescribed fluoxetine to Mr. Carrasco, Dr. Abend already knew about the alleged increased suicide risk attributable to the drug; and in fact understood the risk sufficiently well to regularly warn his patients about it, including Mr. Carrasco, when prescribing them fluoxetine.  Consequently, under clear California precedent, including the California Supreme Court's pronouncements in *Carlin*, Sandoz cannot be found to have a duty to warn Dr. Abend of the suicide risk of which he already was aware.  Without any such duty, Sandoz cannot be held liable for plaintiff's alleged damages.[5]

## IV.    PLAINTIFF CANNOT ESTABLISH THAT ANY INADEQUATE WARNING BY SANDOZ PROXIMATELY CAUSED HER DAMAGES.

Plaintiff also is unable to establish a second essential element of her claims against Sandoz – proximate causation.  Whether under a theory of strict liability, negligence, breach of warranty, or fraud, it is plaintiff's burden, as noted, to prove that any inadequate suicide warning by Sandoz proximately caused Mr. Carrasco's suicide.  In the case of prescription drugs, a plaintiff must meet this burden by

---

[5] In *Motus I*, this Court did not reach the question of whether the prescribing physician's independent knowledge of the risk at issue provided separate grounds for summary judgment.  196 F. Supp. 2d at 998.

1 proving that a different warning to the doctor would have changed his decision to
2 prescribe the medication. *See, e.g., Motus I*, 196 F. Supp. 2d at 992 ("[T]he plaintiff
3 in a prescription drug case bears the full burden of proving through affirmative
4 evidence that the inadequate warning was the proximate cause of the injury, or, in
5 other words, that an adequate warning to the prescribing physician would have
6 altered the physician's conduct.").

7       For the reasons discussed below, plaintiff cannot show that a different product
8 warning by Sandoz would have changed Dr. Abend's decision to prescribe
9 fluoxetine to Mr. Carrasco. Most importantly, Dr. Abend testified unequivocally
10 that he never read or relied on any product information from Sandoz. Without any
11 such reliance by the prescribing physician, plaintiff simply cannot make out her
12 claims against Sandoz, as this Court held in *Motus*.

### A.   Dr. Abend Did Not Read or Rely On Any Sandoz Product Information.

15       Dr. Abend testified that he relies on three primary sources of information
16 regarding a drug's safety and benefits in making his prescribing decisions, *none* of
17 which comes from the manufacturer: The medical literature, information learned at
18 CMEs, and his clinical experience with other patients. SUF No. 46.

19       Dr. Abend relied on those three sources in deciding to prescribe fluoxetine to
20 Mr. Carrasco. SUF No. 49. Moreover, he expressly and unequivocally testified
21 that his prescribing decision for Mr. Carrasco was *not* based on any product
22 information from Sandoz, and indeed, that he does not recall ever having read
23 Sandoz's fluoxetine label. SUF Nos. 53, 55, 57. Dr. Abend testified:

24       Q:   Do you have any recollection of ever having seen the Sandoz
25             package insert for generic Fluoxetine prior to writing the
26             prescription for Prozac to Mr. Carrasco in July 2004?
27       A:   No.

28

---

1    Q:    And did you rely on the Sandoz package insert for generic

2             Fluoxetine in prescribing Fluoxetine to Mr. Carrasco?

3    A:    No.

4    Q:    Did you rely on any information from Sandoz in writing the

5             prescription for Fluoxetine to Mr. Carrasco?

6    A:    No.

7  *See id.* (Abend Dep. at 58:1-12).[6]

8        In the same factual circumstance, this Court found the prescribing

9  physician's failure to read or rely on the drug manufacturer's product information

10  to be dispositive.  In *Motus I*, this Court held:

11        Dr. Trostler stated that he did not read the package insert or PDR entry

12        for Zoloft until after Mr. Motus committed suicide.  It follows that the

13        inclusion of adequate warnings in that information would not have

14        affected his decision.  . . . [B]ecause Dr. Trostler did not rely on

15        information from Pfizer in making his decision to prescribe Zoloft to

16        Mr. Motus, Plaintiff cannot prove that adequate warnings would have

17        changed Dr. Trostler's decision to prescribe Zoloft to Mr. Motus.

18  196 F. Supp 2d at 996.  The Ninth Circuit agreed.  *Motus II*, 358 F.3d at 661

19  (affirming summary judgment based on lack of proximate causation where "the

20  doctor who prescribed *Zoloft* to [plaintiff's] husband failed to read Pfizer's

21  published warnings before prescribing the drug").[7]

22

23  [6] Sandoz, as a generic manufacturer, does not "detail" or send sales representatives
to meet with doctors, and consequently, Dr. Abend has no recollection of ever

24  having met with any Sandoz sales representatives.  SUF No. 56.

25  [7] *See also Latiolais*, 2007 WL 5861354 at *3 ("The prescribing physician, Dr.
Oppenheim, conclusively stated under oath that the [package] inserts played no role

26  in his decision to prescribe *Zocor* to Decedent, and that he otherwise could not
recall if he ever read the package insert, or warnings, regarding *Zocor*.  Further, Dr.

27  Oppenheim stated he could not recall being influenced in this regard by any
information from Merck or any other source concerning Zocor, aside from data on

28  the drug's efficacy in treating high-cholesterol conditions. . . . Therefore, under
*Motus,* there is *no conceivable causal connection* between the representations or

SANDOZ INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    The California appellate court since has affirmed this Court's and the Ninth

2  Circuit's construction of California law:

3        There can be no proximate cause where, as in this case, the

4        prescribing physician did not read or rely upon the allegedly

5        inadequate warnings promulgated by a defendant about a product.

6  *Conte v. Wyeth, Inc.*, 168 Cal App. 4th 89, 112, 85 Cal. Rptr. 3d 299 (2008) (*citing*

7  *Motus*).[8]

8        Finding an absence of proximate causation in these circumstances simply is

9  a matter of logic – if the prescribing doctor did not read the manufacturer's product

10 information, then the doctor would not have seen the hypothetical warning plaintiff

11 contends should have been included, and the absence of such proposed warning

12 cannot have been the cause of the doctor's decision to prescribe.  In accord with

13 this logic, Dr. Abend testified that no matter the hypothetical warning from Sandoz,

14 he would not have seen it:

15    Q:    So is it fair to say, then, that regardless of whatever warning

16          Sandoz might have put in its package insert or label, you would

17          not have seen that prior to writing the prescription for Mr.

18          Carrasco?

19                          *        *        *

20

---

21 omissions that accompanied the product and plaintiff's injury.'") (emphasis added);
22 *Huntman*, 1998 WL 663362 at *5 ("[I]n the absence of evidence that Dr.
   Thompson relied on defendant's misrepresentations, plaintiff's claims for failure to
23 warn, fraud and breach of warranty must be dismissed.").

24 [8] Courts in other jurisdiction hold likewise.  *See, e.g., Porterfield v. Ethicon, Inc.*,
   183 F.3d 464, 468 (5th Cir. 1999) (finding no proximate causation where plaintiff's
25 doctor "testified that at no time prior to [treatment] had he read [the manufacturer's]
   package insert"); *Bartlett v. Mut. Pharm. Co., Inc.*, No. 08-0358, 2010 WL
26 2765358 at *5 (D.N.H. July 12, 2010) (finding no proximate causation where
   prescribing physician "made clear that he never reviewed Mutual's *Sulindac* label .
27 . . [because] even assuming *arguendo* that Mutual had a duty to strengthen the
   SJS/TEN warning, that stronger warning would not have affected Dr. Ergin's
28 decision [to prescribe the drug] or prevented Bartlett's injuries.").

---

- 9 -

1    A:    That's correct.

2  *See* SUF No. 54 (Abend Dep. at 58:25-59:5).

3    Indeed, it would have been quite remarkable if Dr. Abend *had* looked at or

4  relied upon any Sandoz information in prescribing fluoxetine to Mr. Carrasco – he

5  testified that he did not specify any particular generic manufacturer of fluoxetine

6  when he wrote the prescription, nor did he even know that Sandoz was one such

7  manufacturer.  SUF Nos. 58-60.  Thus, prior to writing the prescription and Mr.

8  Carrasco's filling it, Dr. Abend could not have known that it is Sandoz's product

9  information to which he should be looking rather than the product information of

10  some other manufacturer of generic fluoxetine.

11    *Conte* is instructive regarding the unlikelihood that a prescribing physician

12  will rely on or even see product information from a generic manufacturer.  There

13  the doctor had read the Physician's Desk Reference ("PDR") entry for the drug,

14  which had been supplied by the brand manufacturer, and the court found a fact

15  issue whether the doctor relied on the PDR in prescribing to the plaintiff.  168 Cal.

16  App. 4th at 99-100.  But the plaintiff conceded that the only product information

17  disseminated by the generic manufacturers (as is true of generic manufacturers

18  generally) was "price lists (distributed to pharmacists) and package inserts,

19  distributed with wholesale shipments, as required by 21 C.F.R. § 201.100," and

20  there was no evidence the prescribing doctor read or relied on either.  *Id.* at 111-12.

21  Consequently, the court granted summary judgment in favor of the three generic

22  defendants.  *Id.*  The evidence here is similar – Dr. Abend never saw, read, or relied

23  upon any information from the generic manufacturer, Sandoz.[9]

24    Because it is uncontroverted that Dr. Abend did not read or rely on any

25  Sandoz information in prescribing fluoxetine to Mr. Carrasco, plaintiff has failed to

26

27  _____
[9] As in *Conte*, Sandoz, as a generic manufacturer, did not supply any of the fluoxetine product information contained in the 2004 PDR.  SUF No. 52 (although

28  in this case, Dr. Abend never read and unequivocally did not rely on the fluoxetine PDR entry at all.  SUF No. 50-51).

establish proximate causation, and summary judgment is appropriate under *Motus* and *Conte*.

**B.     Dr. Abend Already Knew About Fluoxetine's Suicide Risk.**

As discussed, Dr. Abend was fully aware from independent sources of fluoxetine's alleged increased risk of suicide.  *See* Section III, *supra*.  This fact, in addition to eliminating any duty by Sandoz to warn of a known risk, also precludes plaintiff from establishing proximate causation.  If Dr. Abend already knew of the risk, then *a fortiori*, he could not have relied on Sandoz's alleged failure to adequately warn of it, nor would an adequate warning by Sandoz have had any effect on his prescribing decision.  *See Plenger*, 11 Cal. App. 4th at 362 ("[I]f the risk of death from untreated infection is universally known in the medical profession, the failure to warn the physician of that risk cannot be the legal cause of the decedent's death."); *Rosburg*, 181 Cal. App. 3d at 735 ("[N]o harm could have been caused by failure to warn of a risk already known"); *Plummer v. Lederle Labs.*, 819 F.2d 349, 358-59 (2d Cir. 1987) (same) (applying California law).[10]

Consequently, because Dr. Abend was fully aware of the alleged suicide risk and even cautioned Mr. Carrasco about it, Sandoz's alleged failure to adequately warn Dr. Abend cannot have caused him to write the prescription.

---

[10] *See also In re  Ackermann v. Wyeth Pharms.*, 526 F.3d 203, 208 (5th Cir. 2008) (plaintiff cannot show that inadequate warning was proximate cause of injury where "the physician was aware of the possible risks involved in the use of the product but decided to use it anyway"); *In re Zyprexa Prods. Liab. Litig.*, Nos. 04-1596, 04-1612, 2009 WL 3596526 at *13 (E.D.N.Y. Oct. 16, 2009) (finding no proximate causation where prescribing physician had prior knowledge of risks); *Ebel v. Eli Lilly & Co.*, 536 F. Supp. 2d 767, 779-80 (S.D. Tex. 2008) (finding no proximate causation where prescribing physician was previously aware of "the very risks of which [p]laintiff argues that [the manufacturer] failed to adequately warn"); *Colville v. Pharmacia & Upjohn Co., LLC*, 565 F. Supp. 2d 1314, 1322 (N.D. Fla. 2008) (same); *Oliver v. Pharmacia & Upjohn Co., LLC*, No. 06-5737, 2008 WL 4691626 at *7 (E.D. La. Oct. 22, 2008) (same).

1

2      C.      **Dr. Abend's Assessment of Mr. Carrasco, His Positive Clinical**
              **Experience With Fluoxetine, and His Prescribing Practices**
3             **Indicate That a Different Warning (Even Had He Seen It) Would**
              **Not Have Changed His Prescribing Decision.**
4

5          As set forth below, Mr. Carrasco presented to Dr. Abend with no history of

6   depression and no signs that would contraindicate fluoxetine; Dr. Abend regularly

7   prescribes fluoxetine to patients with Mr. Carrasco's symptoms; he believes the

8   drug is "excellent" in such cases; he weighs the drug's risks, including suicide,

9   against the potential benefits before prescribing; and he did not alter his prescribing

10  practice with regard to fluoxetine even after black box suicide warnings were added

11  to the label in 2005 and 2007.  In the light of these facts, plaintiff cannot meet her

12  burden to show that a different warning by Sandoz in 2004, even assuming Dr.

13  Abend would have seen it, would have changed his decision to prescribe fluoxetine

14  to Mr. Carrasco.

15            1.      Dr. Abend Routinely Prescribes Fluoxetine Because of His
                      Positive Clinical Experience With the Drug.
16

17         Dr. Abend has prescribed fluoxetine in his career between 100 and 200 times

18  or maybe more, and he continues to prescribe it to this day.  SUF Nos. 9, 10.  Dr.

19  Abend has found in his practice that fluoxetine is effective and beneficial in treating

20  depression.  SUF  No. 7 (*see* Abend Dep. at 127:18-24 ("I'm aware that Prozac is

21  effective in treating moderate depression. . . . I've been in practice for a long time,

22  and I've had experience that shows it's been beneficial.")).  He regularly prescribes

23  fluoxetine to any of his patients manifesting characteristic symptoms of depression.

24  SUF No. 8.  Based on his clinical experience, on which he relies to make

25  prescribing decisions, Dr. Abend believes fluoxetine is an "excellent" drug to

26  alleviate the symptoms of depression.  SUF Nos. 7, 46, 49.   And in all his years of

27  practice and writing hundreds of prescriptions for fluoxetine and other SSRI

28  antidepressants, Dr. Abend has not had any patient other than Mr. Carrasco commit

SANDOZ INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  or attempt suicide or self-harm while taking antidepressants.  SUF No. 15.

2          In *Allgood v. GlaxoSmithKline PLC*, No. 06-3506, 2008 WL 483574 (E.D.

3  La. Feb. 20, 2008), another suicide case involving the SSRI antidepressant Paxil®,

4  the court based its finding of no proximate causation on similar testimony by the

5  prescribing doctor concerning his positive clinical experience with the drug.  *Id.* at

6  *5 (doctor testifying, "Over the last eight to ten years I have used SSRIs without

7  any problems.  I have had no patients, you know, other than [plaintiff's decedent],

8  commit suicide. . . . I have had one suicide in thousands."). [11]

9          As in *Allgood*, Dr. Abend's routine practice of prescribing fluoxetine in

10  patients like Mr. Carrasco, and his positive clinical experience with the drug –

11  including no other suicides – undercuts any claim that a different warning by

12  Sandoz would have altered his prescribing decision.

13              2.    Mr. Carrasco Had No Contraindications Indicating He Was An
                     Inappropriate Candidate for Fluoxetine.
14

15          The uncontroverted evidence is that Mr. Carrasco was a quintessential

16  candidate for fluoxetine and exhibited no warning signs for suicide or any other

17  contraindications.  Dr. Abend testified that,

18      • On July 15, 2004, Mr. Carrasco exhibited the classic symptoms of

19        depression and Dr. Abend believed he was depressed.  SUF Nos. 17-19;

20      • Dr. Abend believed Mr. Carrasco's depression was moderate, not major.

21        SUF No. 20;

22      • The depression was attributable to Mr. Carrasco's irritable bowel

23        syndrome.  SUF Nos. 16-17;

24      • Dr. Abend regularly prescribes fluoxetine to patients like Mr. Carrasco

25        with characteristic symptoms of depression.  SUF Nos. 7, 8; and

26  _____

27  [11] The court noted, "[I]t is this testimony that demonstrates to the Court the lack of
    a genuine factual dispute concerning causation in this case, and it is this testimony
28  upon which the Court principally relies in dismissing the Plaintiff's inadequate
    warning claims."  2008 WL 483574 at *5.

- 13 -

1    • Most importantly, Dr. Abend did not believe Mr. Carrasco was suicidal

2        in July 2004 or at any time during his prior visits.  SUF No. 21.

3        In *Motus,* this Court found a lack of proximate causation in part because the

4    decedent "did not disclose any contraindications to Dr. Trostler suggesting that he

5    was not a good candidate for Zoloft."  *Motus I,* 196 F. Supp. 2d at 995 (*citing*

6    *Thomas v. Hoffman LaRoche, Inc.,* 949 F.2d 806, 817 (5th Cir. 1992)); *see also*

7    *Latiolais,* 2007 WL 5861354 at *5 ("[N]o jury could reasonably conclude [different

8    conduct by the doctor was] likely given the Decedent's failure to exhibit any

9    detectible [*sic*] suicidal tendencies to treating medical professionals. . . .Decedent in

10   this case did not disclose or exhibit any mental-health symptoms that would suggest

11   he was not a good candidate for *Zocor* even had a black box warning existed.").[12]

12   Absent red flags in the patient's medical history or presentation, this Court found

13   that a doctor is unlikely to alter his prescribing decision even in the face of a strong

14   suicide warning.  The record is uncontroverted that Mr. Carrasco did not exhibit

15   any red flags.

16          3.    <u>Dr. Abend Weighed the Suicide Risk and Considered Other</u>
               <u>Options Before Prescribing Fluoxetine to Mr. Carrasco.</u>
17

18       Dr. Abend testified that,

19   • His practice is to conduct a risk-benefit analysis before prescribing

20        medication.  SUF Nos. 22-26;

21

22

23
─────────────────────────────
24   [12] *See generally Porter v. Eli Lilly & Co.,* No. 06-1297, 2008 WL 544739 at *11-12
     (N.D. Ga. Feb. 25, 2008) (in Prozac® suicide case, finding no proximate cause
25   where doctor did not consider decedent to be a suicide risk, noting, "Dr. Wolfberg
     never considered Mr. Porter to have had suicidal thoughts, so even were this
26   advisory to extend to adult patients, it would not have impacted Dr. Wolfberg's
     thinking because it refers to 'increases' in suicidal thinking."); *Thomas,* 949 F.2d at
27   817 (finding no proximate causation where "there was nothing in [plaintiff's] prior
     history to suggest that she would be the one person in so many thousands to suffer
28   an adverse reaction to Accutane.  Thus, [plaintiff] was a reasonable, though perhaps
     not ideal, choice for treatment with Accutane.").

SANDOZ INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

- In the case of fluoxetine, his calculation includes the risk of self-harm, and he will not prescribe fluoxetine unless he believes that the potential benefits outweigh the risk of self-harm.  SUF Nos. 25, 37-39;

- He believes that depression is a serious disease and itself a strong predictor of suicide.  SUF No. 41;

- He rarely prescribes the older tricyclic antidepressants because they have more side effects than fluoxetine, including sedation and tardive dyskinesia, a "terrible" motor problem, and Dr. Abend believes that SSRI antidepressants are more effective in treating depression.  SUF Nos. 11-14; and

- This is Dr. Abend's practice even though he understands (and did in 2004) that tricyclics do not induce suicides like he believes fluoxetine can.  SUF No. 32, 42.

Dr. Abend further testified that when he prescribed fluoxetine to Mr. Carrasco, he explained "in detail" the benefits and risks, including the risk of self-harm.  SUF No. 43.  After discussing the pros and cons, he discussed alternatives, including non-drug therapy (*i.e.*, psychotherapy).  SUF No. 44.  He prescribed fluoxetine to Mr. Carrasco because he believed it was an excellent drug to alleviate Mr. Carrasco's classic symptoms of depression.  SUF No. 40.  In short, the record establishes that Dr. Abend carefully considered, *in consultation with Mr. Carrasco*, the risks and benefits of fluoxetine, including the risk of self-harm, and possible alternative therapies.  The risk of suicide already was weighed and considered. There is no basis to conclude that a different warning would have had any impact.

    4.    <u>Dr. Abend Continued Prescribing Fluoxetine Without Altering His Practice After A Suicide Black Box Warning Was Added.</u>

After Dr. Abend wrote Mr. Carrasco's prescription, a black box warning was added to the fluoxetine label that expressly warns of the risk of suicidality in children, adolescents, and young adults above the age of 18.  SUF Nos. 63, 64.  Dr.

1   Abend is familiar with the black box suicide warning.  SUF No. 65.  Yet its

2   addition to the label did not cause Dr. Abend to change his prescribing practices

3   with respect to fluoxetine in any way, even though some of his patients to whom he

4   prescribes fluoxetine are young adults covered by the warning.  SUF Nos. 8, 66.

5   This is powerful evidence that a different suicide warning in 2004, even a

6   black box, would not have changed Dr. Abend's decision to prescribe fluoxetine to

7   Mr. Carrasco.  *See Colville v. Pharmacia & Upjohn  Co.*, 565 F. Supp. 2d 1314,

8   1322 (N.D. Fla. 2008) (finding no proximate causation where the prescribing

9   physician "testified that even after the black box warning was added to the Depo-

10  Provera label, she has continued prescribing Depo-Provera in the same manner");

11  *Thomas*, 949 F.2d at 817 (finding no proximate causation where "the release of the

12  seizure information had no effect on the overall level of Accutane use.  Since the

13  seizure warning in 1984, physicians have prescribed Accutane for hundreds of

14  thousands of patients, the vast majority of whom were, like Thomas, reasonable,

15  though perhaps not ideal, candidates for  Accutane treatment.").  Because an actual

16  black box suicide warning in 2005 and beyond has had no effect whatsoever on Dr.

17  Abend's prescribing practices, no jury can reasonably conclude that a hypothetical

18  warning in 2004 would have done so.

19                                    *       *       *

20  In the light of Dr. Abend's testimony that he routinely prescribes fluoxetine

21  in cases like Mr. Carrasco's; that Mr. Carrasco did not appear suicidal nor did he

22  exhibit any other signs to contraindicate fluoxetine; that Dr. Abend weighed the risk

23  of self harm and considered alternatives before writing the prescription; and that the

24  current black box warning has not caused him to change his prescribing practices,

25  there is no support in the record for the notion that Sandoz's supposedly inadequate

26  warning proximately caused plaintiff's injuries.

27

28

**D.** **Dr. Abend's Failure to Testify That A Different Warning Would Have Altered His Prescribing Decision Precludes Plaintiff From Meeting Her Burden to Present Affirmative Evidence Of Proximate Causation.**

Despite Herculean effort, plaintiff's counsel never obtained the testimony from Dr. Abend that his client needs, *i.e.*, that a different suicide warning by Sandoz likely would have altered his prescribing decision. The first problem is that plaintiff's counsel never presented Dr. Abend with an actual proposed warning. SUF No. 61. Instead, plaintiff's counsel showed Dr. Abend a myriad of documents, including internal Eli Lilly documents, documents from the German regulatory authorities, and published studies, and then asked Dr. Abend generally whether the "information contained in the document we just reviewed" would have impacted his treatment decisions. SUF No. 62. This vague query referencing a large quantity of poorly-specified information is not what this Court had in mind when it suggested in *Motus I* that the plaintiff's counsel should have asked the prescribing doctor whether "the *precise* warning regarding suicide that plaintiff considers necessary" would have made a difference. 196 F. Supp. 2d at 997 (emphasis added). There was nothing precise about the multiple pieces of information in multiple documents presented to Dr. Abend; consequently, plaintiff never asked, and thus never got an answer to the "right" question, *i.e.*, whether the warning she believes necessary would have impacted Dr. Abend.

Second, ignoring for the moment plaintiff's failure to show Dr. Abend an actual proposed warning, Dr. Abend did *not* testify that the information with which he *was* confronted would have altered his prescribing decision. Instead, he said, "I might have prescribed it, and I might not have prescribed it." SUF No. 62. This testimony is tantamount to nothing, and it is insufficient to support an inference, beyond pure speculation, that a different warning would have changed Dr. Abend's decision to prescribe fluoxetine to Mr. Carrasco. Plaintiff thus is precluded from meeting her burden to establish proximate causation. As this Court held in *Motus I*:

1        [T]here is precedent for the proposition that even if Dr. Trostler were

2        discredited at trial [concerning his testimony that a different warning

3        would not have affected his prescribing decision], Plaintiff still might

4        not be able to prove causation. *See Plummer*, 819 F.2d at 358 ("It

5        may be true that [the prescribing doctor] was an interested witness,

6        but *his was the only testimony on the issue of proximate cause.* Even

7        if the jury failed to credit him, [the plaintiff] has not proven an

8        essential element of his case."); *see also* the initial dissenting opinion

9        in *Strumph*, 606 A.2d at 1140, which the New Jersey Supreme Court

10       adopted, 133 N.J. 33, 626 A.2d 1090 (1993) ("[E]ven if there were a

11       basis for doubting the credibility of the doctors' deposition

12       testimony, *such doubts would not provide a sufficient foundation for*

13       *an affirmative jury finding that plaintiff established by a*

14       *preponderance of the evidence that more prominent warnings of the*

15       *risks in the PDR would have altered the doctors' decision to*

16       *prescribe Trilafon*.").

17 196 F. Supp. 2d at 998 (emphasis added). *See also Miller v. Pfizer Inc.*, 196 F.

18 Supp. 2d 1095, 1130 (D. Kan. 2002) (in SSRI suicide case, holding, "[P]laintiffs

19 seem to simply argue that a jury could disbelieve the testimony of Dr. Geenens and

20 that this possibility is sufficient to defeat an otherwise well-taken motion for

21 summary judgment. That, however, is not the law.").

22      The prospect of discredited unequivocal testimony in *Motus I*, *Plummer*,

23 *Strumph*, and *Miller* is materially the same as Dr. Abend's non-answer here that

24 additional information might or might not have made a difference. Since the

25 doctor's testimony is "the only testimony on the issue," and since "such doubts [by

26 Dr. Abend] would not provide a sufficient foundation" for an affirmative finding of

27 proximate cause, Dr. Abend's testimony ends the possibility of plaintiff's meeting

28 her burden.

## V.  CONCLUSION

For the foregoing reasons, plaintiff cannot establish two essential elements of her claims against Sandoz – duty and proximate causation.  Accordingly, Sandoz is entitled to judgment as a matter of law.

DATED:  October 25, 2010

Respectfully submitted,

By: /s/ Stephen A. Klein

_____

Richard A. Clark
rclark@pmcos.com
Natasha N. Dawood
ndawood@pmcos.com
PARKER, MILLIKEN, CLARK,
O'HARA & SAMUELIAN,
A Professional Corporation
555 S. Flower Street, 30th Floor
Los Angeles, CA  90071-2440
Telephone:    (213) 683-6685
Facsimile:    (213) 683-6669

Joe G. Hollingsworth, *pro hac vice*
jhollingsworth@hollingsworthllp.com
Stephen A. Klein, *pro hac vice*
sklein@hollingsworthllp.com
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC  20005-3305
Telephone:    (202) 898-5800
Facsimile:    (202) 682-1639

*Attorneys for Defendant Sandoz Inc.*