Michael L. Baum, Bar No. 119511
Bijan Esfandiari, Bar No. 223216
Kate E. Gillespie, Bar No. 227416
BAUM HEDLUND ARISTEI & GOLDMAN, PC
12100 Wilshire Blvd., Suite 950
Los Angeles, CA  90025
Tel: (310) 207-3233
Fax: (310) 207-4204

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

ROSEMARY DORSETT, individually and as successor-in-interest to NOE CARRASCO, deceased,

        Plaintiff,

        vs.

SANDOZ, INC., a Delaware Corporation; ELI LILLY AND COMPANY, an Indiana Corporation,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 2:06-cv-7821 AHM (AJWx)

**PLAINTIFF ROSEMARY DORSETT'S NOTICE OF MOTION AND MOTION TO AMEND THE COMPLAINT TO ADD A CAUSE OF ACTION FOR FRAUD AND PRAYER FOR PUNITIVE DAMAGES; MEMORANDUM OF POINTS AND AUTHORITIES**

Filed concurrently with:  Declaration of Bijan Esfandiari and (Proposed) Order. Proposed Third Amended Complaint Lodged Concurrently Herewith

Date:      December 6, 2010
Time:      10:00 a.m.
Courtroom:  14

Hon. A. Howard Matz

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

    **PLEASE TAKE NOTICE THAT** on Monday, December 6, 2010, at 10:00 a.m., in Courtroom 14 of the above-captioned court, located at 312 North Spring Street, Los Angeles, California, the Honorable Judge A. Howard Matz presiding, Plaintiff Rosemary Dorsett ("Plaintiff") will, pursuant to Federal Rules of Civil Procedure, Rule 15(a)(2), move this Court to allow Plaintiff to amend her complaint by (a) adding a cause of action

1

for fraud against defendants Sandoz, Inc. and Eli Lilly and Company; and (b) adding a prayer for punitive damages against both defendants.

This motion is made following a telephonic conference between Plaintiff's counsel and counsel for defendants pursuant to Local Rule 7-3. The parties were unable to informally resolve the issues presented in this motion. *See* Declaration of Bijan Esfandiari at ¶¶ 4-7.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Bijan Esfandiari, the *proposed* Third Amended Complaint lodged concurrently herewith; the Court's file and records in this case and all other matters of which the Court may take judicial notice, and any oral and further written arguments and evidence which may be submitted in support of this Motion.

                                                      Respectfully submitted,

October 25, 2010                                      BAUM HEDLUND ARISTEI & GOLDMAN, PC


                                                      /s/ Bijan Esfandiari
                                                      Bijan Esfandiari, Esq.

                                                      *Attorneys for Plaintiff*

1

# TABLE OF CONTENTS

2

**Page**

3

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4

II.     UNDER THE NINTH CIRCUIT'S LIBERAL STANDARDS
5       REGARDING AMENDMENTS TO PLEADINGS, PLAINTIFF
        SHOULD BE ALLOWED TO AMEND HER COMPLAINT . . . . . . . . . . . 3

6

III.    PLAINTIFF'S AMENDED COMPLAINT WILL SURVIVE A
7       MOTION TO DISMISS AND THUS WILL NOT BE FUTILE . . . . . . . . . . 4

8

IV.     MODERN DAY PHARMACEUTICAL INDUSTRY MARKETING
        PRACTICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

9

V.      PLAINTIFF'S PROPOSED COMPLAINT SUFFICIENTLY PLEADS
10      A PLAUSIBLE CAUSE OF ACTION FOR FRAUD AGAINST
        BOTH DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

11

        A.    Fraudulent Concealment As To Both Defendants . . . . . . . . . . . . . . . 9

12

        B.    Intentional and Negligent Misrepresentations as to Defendant Lilly . . 13

13

VI.     IN LIGHT OF DEFENDANTS' FRAUD AND CONSCIOUS
14      DISREGARD OF THE SAFETY OF OTHERS, PLAINTIFF IS
        ENTITLED TO PUNITIVE DAMAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

15

        A.    By Intentionally Failing to Warn Regarding The Suicide Risks
16            Associated With Prozac (fluoxetine), Defendants Consciously
              Disregarded the Safety of Consumers And Are Thus Guilty
17            of <u>Malice</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

18

        B.    Defendants' Have Engaged In Oppressive Conduct . . . . . . . . . . . . . . 22

19

        C.    Defendants' Fraudulent Conduct Warrants the Imposition of
20            Punitive Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

        VII.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**Page**

**Federal Cases**

*Al-Kidd v. Ashcroft*,
    580 F.3d 949 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Barker v. Riverside County Office of Educ.*,
    584 F.3d 821 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S.Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Bureerong v. Uvawas*,
    922 F.Supp. 1450 (C.D.Cal. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Cancellier v. Federated Dept. Stores*,
    672 F.2d 1312 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Dang v. Cross*,
    422 F.3d 800 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*DCD Programs, Ltd. v. Leighton*,
    833 F.2d 183 (9th Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Dorsett v. Sandoz, Inc.*,
    699 F.Supp.2d 1142 (C.D.Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Eli Lilly & Co. v. Natural Answers, Inc.*,
    86 F.Supp.2d 834 (S.D.Ind. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Forst v. SmithKline Beecham*,
    602 F.Supp.2d 960 (E.D.Wis. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Forsyth v. Eli Lilly & Co.*,
    1998 WL 35152135 (D.Haw. Jan, 5, 1998) . . . . . . . . . . . . . . . . . . . 2, 22, 23

*Griggs v. Pace American Group, Inc.*,
    170 F.3d 877 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Guillen v. Kuykendall*,
    470 F.2d 745 (5th Cir.1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Eli Lilly & Co. Prozac Products Liab. Lit.*,
    789 F.Supp. 1448 (S.D.Ind. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ii

Pltff's Mot. to Amend Complaint to Add Cause
of Action for Fraud & Prayer for Punitive Damages

*In Re Zyprexa Products Liability Lit.*,
    253 F.R.D. 69 (E.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

*Knipe v. SmithKline Beecham*,
    583 F.Supp.2d 602 (E.D.Pa. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mason v. SmithKline Beecham*,
    596 F.3d 387 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Miller v. Rykoff-Sexton, Inc.*,
    845 F.2d 209 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*SAES Getters S.p.A., v. Aeronex, Inc.*,
    219 F.Supp.2d 1081 (S.D.Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Senza-Gel Corp. v. Seiffhart*,
    803 F.2d 661 (Fed.Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Sterling Drug, Inc. v. Yarrow*,
    408 F.2d 978 (8th Cir. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*UFCW Local 1776 v. Eli Lilly and Co.*,
    __ F.3d __, 2010 WL 3516183 (2nd Cir. Sept. 10, 2010) . . . . . . . . . . . . . . 5

*Witczak v. Pfizer*,
    377 F. Supp. 2d 726 (D. Minn 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**State Cases**

*American T. Co. v. California etc. Ins. Co.*,
    15 Cal.2d 42 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Conte v. Wyeth, Inc.*,
    168 Cal.App.4th 89 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 16

*Gagne v. Bertran*,
    43 Cal.2d 481 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*Godfrey v. Steinpress*,
    128 Cal.App.3d 154 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Grimshaw v. Ford Motor Co.*,
    119 Cal.App.3d 757 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Lazar v. Superior Court*,
    12 Cal.4th 631 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Lingsch v. Savage*,
    213 Cal.App.2d 729 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Lovejoy v. AT & T Corp.*,
    119 Cal.App.4th 151 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

iii

Pltff's Mot. to Amend Complaint to Add Cause
of Action for Fraud & Prayer for Punitive Damages

*Major v. Western Home Ins. Co.*,
    169 Cal.App.4th 1197 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Miller v. National Am. Life Ins.*,
    54 Cal.App.3d 331 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Monge v. Superior Court*,
    176 Cal.App.3d 503 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Pearson v. Norton*,
    230 Cal.App.2d 1 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Rosener v. Sears, Roebuck & Co.*,
    110 Cal.App.3d 740 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Seimon v. Southern Pac. Transp. Co.*,
    67 Cal.App.3d 600 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Stevens v. Parke, Davis & Co.*,
    9 Cal.3d 51 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Stevens v. Superior Court*,
    180 Cal.App.3d 605 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Taylor v. Superior Court*,
    24 Cal.3d 890 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Toole v. Richardson-Merrell Inc.*,
    251 Cal.App.2d 689 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Varwig v. Anderson-Behel Porsche/Audi, Inc.*,
    74 Cal.App.3d 578, 141 Cal.Rptr. 539 (1977) . . . . . . . . . . . . . . . . . . . . . . . . 16

*West v. Johnson & Johnson Products, Inc.*,
    174 Cal.App.3d 831 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-22

### Federal Statutes

21 C.F.R. § 201.80(e) (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

21 C.F.R. § 201.57(e)(2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed.R.Civ.P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed.R.Civ.P. 12(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed.R.Civ.P. 12(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Fed.R.Civ.P. 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed.R.Civ.P. 54(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Pltff's Mot. to Amend Complaint to Add Cause
of Action for Fraud & Prayer for Punitive Damages

**State Statutes**

Cal.Civ.Code § 1709  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Cal.Civ.Code § 1710  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 13

Cal.Civ.Code § 3294  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20, 22, 23

Pltff's Mot. to Amend Complaint to Add Cause
of Action for Fraud & Prayer for Punitive Damages

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

While still in the prime of his life, twenty-six-year-old Noe Carrasco tragically committed suicide under the influence of the antidepressant drug fluoxetine (generic Prozac).  Following Noe's suicide, his mother, Rosemary Dorsett, timely filed this wrongful death action against the generic manufacturer of fluoxetine, Sandoz Inc. ("Sandoz") and the name-brand manufacturer, Eli Lilly and Company ("Lilly") alleging, *inter alia*, that defendants failed to warn the medical community or the public regarding the suicide risks associated with fluoxetine, concealed the suicide risks and made misrepresentations concerning the risks of using fluoxetine.  See Dkt. No. 62, Second Amended Complaint.

Following the Court's denial of defendants preemption motions, *see Dorsett v. Sandoz, Inc*., 699 F.Supp.2d 1142 (C.D.Cal. 2010), on May 27, 2010, Plaintiff moved to amend her pleading to add a cause of action for fraud and prayer for punitive damages against both defendants.  See Dkt No. 167.  On June 29, 2010, the Court denied the motion without prejudice due to plaintiff's failure to state her allegations with sufficient particularity. Dkt No. 179.  Specifically, the Court requested additional facts regarding the prescribing physician's reliance upon the defendants' misrepresentations and omissions.  The Court encouraged plaintiff to take the treating physician's deposition so as to elicit the necessary facts.  During the scheduling hearing, the Court also informed defendants that they should stipulate to the revised complaint if the necessary facts were "adduced, elicited or developed during discovery." See Exh A at 7.

The deposition of the treating physician, Robert Abend, M.D., took place on September 1, 2010.  Dr. Abend testified that, prior to prescribing fluoxetine to Noe, he met with Lilly sales representatives, received and reviewed Lilly's promotional material, received Prozac samples which he distributed to his patients, read and relied upon medical journal articles, treatment guidelines and literature favorably discussing fluoxetine (including articles written by Lilly employees, agents and consultants or which

1

Pltff's Mot. to Amend Complaint to Add Cause of Action for Fraud & Prayer for Punitive Damages

relied upon information provided by Lilly, its agents and consultants), and attended continuing medical education (CME) seminars during which Prozac was discussed. As a result of reading these favorable reports, Dr. Abend began to prescribe fluoxetine to his patients, including Noe Carrasco.  Dr. Abend also testified that he routinely relies upon "Dear Doctor" letters that discuss new information and warnings and that, had Lilly or Sandoz informed him of the true suicide risks associated with fluoxetine, he would not have prescribed the drug and probably "would have prescribed another medication."  Dr. Abend testified that he expected drug companies to provide him with accurate information regarding the risks and benefits of their drugs.

Dr. Abend's testimony, as well as the plausible inferences that can be drawn from his testimony, establish that Dr. Abend relied directly and indirectly upon information he received from Lilly and, more importantly, had Lilly or Sandoz utilized the appropriate and proper channels of communication available to them to warn Dr. Abend regarding the true suicide risks associated with Prozac, he would not have prescribed Prozac and probably would have prescribed another medication.  Following Dr. Abend's deposition, Plaintiff met and conferred with counsel for defendants and asked them if they would stipulate to allow Plaintiff to amend the complaint to add fraud allegations.  Both defendants refused to stipulate, thus necessitating the filing of the instant motion.

Defendants' refusal to consent is unjustified.  Under Ninth Circuit authority, permission to amend the complaint should be freely given by the Courts.  Plaintiff's proposed amended complaint sufficiently alleges a cognizable cause of action for fraud against both defendants and the jury should be allowed to determine whether defendants' fraudulent actions and concealment warrant the imposition of punitive damages. Courts in similar Prozac suicide cases have allowed these issues to be determined by the jury. *Forsyth v. Eli Lilly & Co.*, 1998 WL 35152135, *7-8 (D.Haw. Jan, 5, 1998) (denying Lilly's summary judgment motion and allowing Plaintiff's claims for fraud and punitive damages to be tried to a jury); *see also In re Eli Lilly & Co. Prozac Products Liab. Lit.*, 789 F.Supp. 1448, 1456-57 (S.D.Ind. 1992) (applying California law and holding that

2

Pltff's Mot. to Amend Complaint to Add Cause of Action for Fraud & Prayer for Punitive Damages

plaintiff properly alleged a cause of action for fraud against Lilly arising out of its misrepresentations about Prozac and suicide).

## II.   UNDER THE NINTH CIRCUIT'S LIBERAL STANDARDS REGARDING AMENDMENTS TO PLEADINGS, PLAINTIFF SHOULD BE ALLOWED TO AMEND HER COMPLAINT

The Federal Rules provide that leave to amend a complaint should be *freely given* when justice so requires. Fed.R.Civ.P 15(a)(2). Rule 15 embodies a strong federal policy in favor of deciding cases on their merits. The policy of freely granting leave to amend a pleading is to be applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal citations omitted). In considering whether to grant leave to amend, courts consider various traditional factors including: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, and/or (4) futility. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987). This determination is performed "with all inferences in favor of granting the motion." *Griggs v. Pace American Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). The burden is on *defendants* to show why amendment should not be granted. *Senza-Gel Corp. v. Seiffhart*, 803 F.2d 661, 666 (Fed.Cir.1986) (applying 9th Circuit procedural law).

In denying the previous motion to amend without prejudice, the Court noted that it was denying the motion *solely* due to "futility" and instructed Plaintiff that she needed to obtain additional evidence from the treating physician to establish her fraud allegations. Dkt No. 179. The Court specifically and implicitly ruled out all of the other traditional factors as a basis for denying the motion:

> I made it clear I hope at the hearing this morning what I thought was missing, and if it is adduced, elicited or developed during discovery, then I would undoubtedly grant a motion under 15(a) to amend the complaint to assert fraud claims certainly against Lilly, possibly against Sandoz; and, therefore, the usual grounds for opposing such a motion, I already ruled out, such as, undue delay or prejudice.

3

Pltff's Mot. to Amend Complaint to Add Cause of Action for Fraud & Prayer for Punitive Damages

1  See Exh A, Scheduling Order Transcript at 7.  Accordingly, plaintiff's motion will focus

2  exclusively on the futility issue.

3  ### III.   PLAINTIFF'S AMENDED COMPLAINT WILL SURVIVE A MOTION TO DISMISS AND THUS WILL NOT BE FUTILE

4  It is well recognized that "an amendment is 'futile' only if it would clearly be

5  subject to dismissal." *SAES Getters S.p.A.*, *v. Aeronex, Inc.*, 219 F.Supp.2d 1081, 1086

6  (S.D.Cal. 2002) (citing *DCD Programs*, *Ltd.*, 833 F.2d at 188).  The defendants' futility

7  argument must therefore be judged under the prism of a Rule 12(b)(6) motion to dismiss.

8  *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

9  Applying the Rule 12(b)(6) standard, the Court must construe all facts alleged in

10  the proposed complaint as true and must draw all inferences in the light most favorable

11  to the plaintiff.  *Barker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir.

12  2009).  The proposed amended complaint contains sufficient and specific facts to state

13  a plausible claim for fraud and punitive damages as to both defendants.  *Ashcroft v. Iqbal*,

14  129 S.Ct. 1937, 1949 (2009) (a complaint survives a motion to dismiss if, taking all

15  well-pleaded factual allegations as true, it contains "enough facts to state a claim to relief

16  that is plausible on its face."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127

17  S.Ct. 1955 (2007). In construing the detail required in a complaint under the Supreme

18  Court's pleading standard, the Ninth Circuit has held:

19  
20  > *Twombly* and *Iqbal* do not require that the complaint include all facts
21  > necessary to carry the plaintiff's burden.  'Asking for plausible grounds to
22  > infer' the existence of a claim for relief 'does not impose a probability
23  > requirement at the pleading stage; it simply calls for enough fact to raise a
24  > reasonable expectation that discovery will reveal evidence' to prove that
25  > claim.

25  *Al-Kidd v. Ashcroft*, 580 F.3d 949 (9th Cir. 2009).  Plaintiff's current proposed amended

26  complaint contains detailed allegations regarding defendants' misrepresentations and

27  omissions, as well as the treating physician's reliance upon defendants' misrepre-

28  

4

sentations and omissions.  Thus, the current proposed amended complaint states a plausible claim for fraud and punitive damages.

## IV.    MODERN DAY PHARMACEUTICAL INDUSTRY MARKETING PRACTICES

In order to place Plaintiff's claims and allegations into context, a brief overview regarding the extensive marketing practices of the pharmaceutical industry is warranted. Over the past few decades, pharmaceutical companies have increasingly engaged in multi-tiered, well calculated and often times disguised marketing campaigns designed to encourage physicians to prescribe and patients to demand their respective advertised drugs.  The avenues through which the pharmaceutical industry sells, promotes and influences physician, pharmacist and consumer behavior include, among others: clinical trials, the medical literature, drug labeling, key opinion leaders ("KOLs"), drug "detailing" (personal sales visits with physicians), continuing medical education (CME) courses, advertising to physicians in medical journals and direct to consumer advertising through internet, television, and magazines.  In a very detailed opinion, the Honorable Jack B. Weinstein, outlines some of these marketing avenues and explains how Lilly utilized these avenues to promote and market its anti-psychotic drug Zyprexa. *See In Re Zyprexa Products Liability Lit.*, 253 F.R.D. 69 (E.D.N.Y. 2008), *rev'd on other grounds by UFCW Local 1776 v. Eli Lilly and Co.*, __ F.3d __, 2010  WL 3516183 (2nd Cir. Sept. 10, 2010).  Lilly utilized these very same avenues and others to promote its first blockbuster drug Prozac.

It has been estimated that the pharmaceutical industry spends tens of billions of dollars every year to influence the prescribing habits of doctors and the consumption by consumers of their specific products.  Through various means, "the pharmaceutical industry has gained enormous control over how doctors evaluate and use its own products.  Its extensive ties to physicians, particularly senior faculty at prestigious medical schools, affect the results of research, the way medicine is practiced, and even the definition of what constitutes a disease."  Dr. Marcia Angell, "Drug Companies &

1  Doctors: A Story of Corruption," *The New York Review of Books*, January 15, 2009. (Dr.

2  Angell is the former editor of the New England Journal of Medicine and currently a

3  senior lecturer in the department of social medicine at Harvard Medical School.)

4       Dr. Angell explains that these "highly influential faculty physicians – referred to

5  by the industry as 'thought-leaders' or 'key opinion leaders' (KOLs) ... write textbooks

6  and medical journal papers, issue practice guidelines (treatment recommendations), sit

7  on FDA and other governmental advisory panels, head professional societies, and speak

8  at the innumerable meetings and dinners that take place every year to teach clinicians

9  about prescription drugs ..." .  She argues that "[c]onflicts of interest ... directly shape the

10  way medicine is practiced, through their influence on practice guidelines issued by

11  professional and governmental bodies, and through their effects on FDA decisions ..."

12  *Id.*

13       In this case, Lilly both directly and indirectly influenced Noe Carrasco's physician,

14  Dr. Abend, through a combination of overt and disguised marketing tactics, to prescribe

15  Prozac to his patients, including Noe.   Prior to Prozac's arrival on the market in 1987,

16  Dr. Abend used other antidepressants to treat his depressed patients.  He testified that he

17  began to prescribe Prozac as a result of favorable reports "in the medical literature and

18  journals" stating that its benefits were greater and it had less side effects than the tricyclic

19  antidepressants he had previously prescribed.  The "medical literature and journals" on

20  which Dr. Abend relied included The Medical Letter, the Annals of Internal Medicine

21  published by the American College of Physicians, treatment guidelines published by

22  these two organizations, the Journal of the American Medical Association, the New

23  England Journal of Medicine and the Mayo Clinic Proceedings.  Dr. Abend could "not

24  specifically" recall whether he had read the label for fluoxetine in the Physicians' Desk

25  Reference (PDR), but testified that he had access to the PDR and had previously

26  consulted it for some drugs, the names of which he could not recall.  Dr. Abend also

27  utilized an online medical information resource called "UpToDate" for information

28  concerning the efficacy and safety of prescription drugs, which included access to drug

6

Pltff's Mot. to Amend Complaint to Add Cause
                                of Action for Fraud & Prayer for Punitive Damages

labels and prescribing information.  When shown the suicide precaution contained in the fluoxetine label in effect in 2004, Dr. Abend testified that the precaution was consistent with what he then understood to be the risks associated with fluoxetine. TAC ¶¶ 87 (s).

As part of its covert marketing campaign, Lilly utilized key opinion leaders to draft articles in well respected scientific journals promoting the safety and efficacy of Prozac and denying that Prozac was associated with a suicide risk. TAC  ¶¶ 87(n)-(v).[1]  An article written by one of Lilly's consultants and key opinion leaders was cited by The Medical Letter, a primary source of medical information for Dr. Abend and which helped form his impression of  the safety of Prozac.  The article stated that reports that Prozac may increase the risk of suicide "are unconvincing."  ¶¶ 87(o)-(s).  Lilly's own employees and scientists also wrote "scientific" articles touting the benefits of Prozac and downplaying Prozac's suicide risks in various publications which again appeared in and were referenced in other journals, guidelines and publications which Dr. Abend routinely read and relied upon. TAC  ¶¶ 23-25; 87(q)-(t).  Thus, through the use of its own employees and key opinion leaders, Lilly was able to convince Dr. Abend that Prozac was safe and effective.

Lilly also promoted the safety of Prozac directly to Dr. Abend though its sales representatives who regularly visited Dr. Abend and his staff to promote Prozac.  TAC ¶¶ 87(w)-(aa). Lilly's sales representatives provided Dr. Abend with free Prozac samples and left behind promotional material which Dr. Abend sometimes read and reviewed. *Id*.[2] Lilly's sales representatives also provided Dr. Abend and his medical staff with free lunches and other free items.  *Id.*  As Judge Weinstein pointed out, and which Dr. Abend

---

[1]  These key opinion leaders did not openly disclose their financial relationship with Lilly and thus physicians were lead to believe they were "independent" authors.

[2]  Dr. Abend also testified that he learned about Prozac through the continuing medical education ("CME") courses he attended.  Plaintiff has propounded discovery on the applicable CME providers to determine if their speakers had any ties with Lilly or if their speakers obtained their information directly or indirectly from Lilly.  Plaintiff has also served similar discovery on Lilly but Lilly has sought an extension to respond and, to date, has not responded to Plaintiff's discovery requests.

Pltff's Mot. to Amend Complaint to Add Cause
                                               of Action for Fraud & Prayer for Punitive Damages

1  specifically confirmed during his deposition, "Physicians, despite what most claim, are

2  influenced both consciously and unconsciously by commercial promotional messages."

3  TAC  ¶ 87(aa); *In Re Zyprexa*, 253 F.R.D. at 105.  The California Supreme Court has

4  likewise held that physicians can be "consciously or subconsciously" induced to prescribe

5  promoted drugs. *Stevens v. Parke, Davis & Co.*, 9 Cal.3d 51, 69 (1973).

6      Lilly's promotional activities were not limited to the medical community but also

7  included direct-to-consumer advertising through television commercials, print

8  advertisements, the internet, and product placement on popular television shows.  TAC

9  ¶ 87(dd).  In fact, Noe's family members were exposed to Prozac's advertising and recall

10  seeing Prozac advertisements prior to Noe's suicide. *Id.*  Lilly's unprecedented

11  promotional campaign paid off handsomely as Prozac became Lilly's top selling

12  blockbuster drug. "Prozac is the best-selling prescription antidepressant in the United

13  States...Prozac sales in the United States have alone totaled more than $12 billion since

14  1988." *Eli Lilly & Co. v. Natural Answers, Inc.*, 86 F.Supp.2d 834, 836 (S.D.Ind. 2000).

15  Indeed, recently the Seventh Circuit commented: "Prozac... is quite well known. Anyone

16  who has ever watched The Sopranos knows it's the drug Dr. Jennifer Melfi prescribed

17  for Tony Soprano..." *Mason v. SmithKline Beecham*, 596 F.3d 387, 395 (7th Cir. 2010).

18      As a Senior Minnesota U.S. District Court Judge, the Honorable James M.

19  Rosenbaum, eloquently stated:

20      [P]rescription drugs were once marketed primarily to trained health care

21      providers-sophisticated and discerning intermediaries.  Today, on the other

22      hand, pill-rolling apothecaries and the mortar and pestle have disappeared.

23      They have been replaced by drug manufacturers who urge the use of their

24      drugs in mass-market print and television advertisements targeted directly

25      at the public.  Defendant, for example, advertises the drug involved in this

26      case by personifying it as a happy, bouncing-oval cartoon character.

27  *Witczak v. Pfizer*, 377 F. Supp. 2d 726, 732 (D. Minn 2005) (Zoloft).

28

8

Pltff's Mot. to Amend Complaint to Add Cause
                                                    of Action for Fraud & Prayer for Punitive Damages

In sum, through its multi-tiered marketing campaign, Lilly was able to convince the medical community and the public that Prozac was a safe and effective drug and, more specifically, was able to convince Dr. Abend that he should initiate prescribing Prozac to his patients, including Noe Carrasco, and was able to convince Noe's family members that Prozac was a safe and effective drug. With these general principals in mind, Plaintiff now turns to discuss California's substantive law as to fraud and fraudulent concealment and its application to the facts of this case.

## V.   PLAINTIFF'S PROPOSED COMPLAINT SUFFICIENTLY PLEADS A PLAUSIBLE CAUSE OF ACTION FOR FRAUD AGAINST BOTH DEFENDANTS

California Civil Code Section 1710 identifies four distinct categories for fraud (deceit).  Three of these categories are applicable in the present case, they include: (1) concealment of a fact (Civil Code §1710(3)), (2) negligent misrepresentation (§1710(2)), and (3) intentional misrepresentation (§1710(1)).  As outlined *infra*, as well as in the proposed complaint, Lilly is liable for fraud based upon all three categories and Sandoz is liable for fraud based upon its concealment of the suicide risks.

### A.   Fraudulent Concealment As To Both Defendants

Under California law, fraud does not consist only of affirmative lies, but also consists of deliberate silence with respect to information that ought to be revealed. *Lovejoy v. AT & T Corp.*, 119 Cal.App.4th 151 (2004); *Lingsch v. Savage*, 213 Cal.App.2d 729,735 (1963) ("The principle is fundamental that deceit may be negative as well as affirmative; it may consist of suppression of that which it is one's duty to declare as well as of the declaration of that which is false."); *see also* Cal.Civ.Code §§1709 and 1710(3).

To plead a cause of action for fraud based on concealment, a plaintiff is required to allege facts which show that: (1) the defendant concealed or suppressed a material fact, (2) the defendant was under a duty to disclose the fact, (3) the defendant concealed or suppressed the fact with the intent to defraud (that is, to induce reliance), (4) the plaintiff was unaware of the fact and would not have acted as he did if he had known of the

9

1   concealed or suppressed fact, and (5) as a result of the concealment or suppression of

2   fact, the plaintiff sustained damages. *Stevens v. Superior Court*, 180 Cal.App.3d 605,

3   609, n.3 (1986); *Lovejoy*, 119 Cal.App.4th at 157. Plaintiff's proposed complaint

4   sufficiently pleads a cause of action for fraud based upon concealment.

5       *First*, the proposed complaint alleges that both Lilly and Sandoz intentionally

6   failed to warn regarding the suicide risks associated with Prozac (fluoxetine). TAC ¶¶

7   83-92; 98-119. For example, both manufacturers had access to Lilly's clinical trials

8   which showed that patients on fluoxetine experienced more suicidal events than patients

9   given competing antidepressants. TAC at ¶¶ 83-87; 104-108. This data showed that the

10  suicide attempt incidence rate for fluoxetine was significantly higher than the other

11  competing antidepressants. TAC at ¶¶ 13-63, 83-87, 98-114. Both manufacturers had

12  access to and knew of the various reports and articles which had likewise found that

13  fluoxetine was associated with an increased risk of suicidality. *Id*. Both manufacturers

14  had access to and knew that, during clinical trials, certain fluoxetine patients were co-

15  administered sedatives to offset the increased suicide risks. TAC at ¶¶87(a)-(g), 98-104.

16  Both manufacturers had access to and knew that, as a result of fluoxetine's suicide risks,

17  the German government initially rejected Lilly's fluoxetine new drug application and

18  only permitted it to be marketed following Lilly's agreement to issue a warning

19  regarding the need to co-administer sedatives to offset the suicide risks. TAC at ¶¶ 32-43,

20  87(d)-(f), (y), 104.[3]  Despite knowledge of this information, Sandoz and Lilly failed to

21  issue any suicide warnings or instructions regarding co-administration of sedatives to Dr.

22  Abend or the medical community. TAC at ¶¶ 87(a)-(h), 101-108.[4]

23

24

_____

25  [3] Sandoz is a German pharmaceutical company and has its global headquarters in Germany. TAC at ¶¶ 2, 104.

26

27  [4] Lilly went as far as to instruct its sales force not to discuss any negative articles that mentioned Prozac's suicide risks, and Dr. Abend confirmed that Lilly's sales representatives never discussed any suicide related risks with him. TAC at ¶¶ 87(h), 87(y).

28

2:06-cv-7821 AHM (AJWx)                    Pltff's Mot. to Amend Complaint to Add Cause
                                           of Action for Fraud & Prayer for Punitive Damages

*Second*, this Court has already recognized that, under California law, both generic and name-brand drug manufacturers have an affirmative duty to warn regarding known risks. *Dorsett v. Sandoz, Inc.*, 699 F.Supp.2d 1142, 1162-63 (C.D.Cal. 2010); *Stevens v. Parke Davis & Co.,* 9 Cal.3d 51, 65 (1973) (drug manufacturer has affirmative duty to warn); *Conte v. Wyeth, Inc.*, 168 Cal.App.4th 89 (2008) (name-brand drug manufacturer has affirmative duty to warn even though patient was eventually prescribed a generic version of the drug); *see also* 21 C.F.R. §201.57(e)(2004); *and* 21 C.F.R. §201.80(e) (2010).  In the present case, notwithstanding their affirmative duty to issue a proper warning to at the very least Noe's treating physician, Dr. Abend, both Lilly and Sandoz remained silent and failed to disclose to Dr. Abend the grave suicide risks associated with fluoxetine and the other necessary warnings and instructions related to alleviating the suicide risks.  TAC at ¶¶ 3, 87(bb), 104-114. Lilly and Sandoz had a myriad of avenues available to them to inform Dr. Abend of the suicide risks and related co-administration instructions. For example, they could and should have revised their label and directly notified physicians, including Dr. Abend, of the labeling changes through Dear Doctor letters, *see e.g.*, *Dorsett*, 699 F.Supp.2d at 1158 (discussing how two other antidepressant manufacturers, Wyeth and GlaxoSmithKline voluntarily sent Dear Doctor letters to physicians to warn them regarding suicide related risks).[5] Alternatively, Lilly should have utilized its sales force, which was already visiting Dr. Abend's office regulalry, to convey a warning.[6] *See Stevens*, 9 Cal.3d at 67.  In *Stevens*, the California Supreme Court held that salesmen who are sent to promote drugs should likewise be utilized to provide warnings because physicians may not come into contact

---

[5] After Noe's suicide, defendants sent a letter to pharmacists in 2007 notifying them of the new Medication Guide to be given to each individual patient along with a copy of the Medication Guide. TAC at ¶ 75.

[6] Sandoz is the generic pharmaceutical division of Novartis – one of the world's largest pharmaceutical companies. While Sandoz may claim that it does not have an independent sales force, its parent company Novartis does have a sales force and Sandoz could have utilized Novartis' sales force to relay information to physicians with whom they were already visiting to promote Novartis products. TAC at ¶¶ 9, 105.

with package inserts and may not see Dear Doctor letters – "if detail men are an effective means of selling a product and explaining its nature, a jury could find that they also afforded an effective medium of conveying a warning." *Stevens*, 9 Cal.3d at 67 (internal quotes and citations omitted); *see also Sterling Drug, Inc. v. Yarrow*, 408 F.2d 978, 991-92 (8th Cir. 1969) (drug manufacturer should have utilized its sales representatives to warn physicians of serious dangers associated with its drug).

*Third*, the proposed complaint alleges that defendants concealed the suicide risks with intent to induce reliance.  TAC at ¶¶ 88, 92, 115, 119.  Moreover, California law is clear that intent to defraud can be *inferred* when one fails to disclose that which one has a duty to disclose. *Lovejoy*, 119 Cal.App.4th at 160-61 ("the failure to disclose the switch as required by [law] supports an inference of an intent to defraud").

*Fourth*, the proposed complaint sufficiently alleges that, had Noe's physician, Dr. Abend, been adequately warned regarding the gravity of the suicide risks and the need for co-administration of sedatives, he would not have prescribed fluoxetine and instead "probably would have prescribed another medication." TAC at ¶¶ 3-4, 87(bb)-(cc), 90, 106-108, 117.  Thus, had defendants not concealed the true suicide risks associated with fluoxetine, he would not have prescribed fluoxetine to Noe and Noe would not have taken fluoxetine, which is only available by prescription.[7]

*Finally*, the proposed complaint alleges that, as a result of the concealment, the decedent was prescribed and ingested fluoxetine, which caused him to commit suicide. TAC at ¶¶ 87(bb)-(dd), 89-91, 106-108, 117-118.  The untimely death of her son has caused Plaintiff to, among other things,  sustain pecuniary loss resulting from the loss of her son's love, comfort society, companionship and support. TAC at ¶¶ 96-97, 122-123.

---

[7] Moreover, even if fluoxetine had been prescribed (which Dr. Abend testified he would not have prescribed), the proposed complaint alleges that, had Lilly provided accurate information in its direct to consumer marketing material (to which Noe's family was exposed) or in the Suicide Medication Guides that were subsequently issued by Sandoz and Lilly to patients and families, Noe would not have taken fluoxetine, his family  would not have allowed him to take it, or, at the very least, his family would have more closely monitored him.  TAC ¶¶ 73-74, 87(bb)-(dd), 91, 118.

12

Pltff's Mot. to Amend Complaint to Add Cause
of Action for Fraud & Prayer for Punitive Damages

These detailed and specific allegations as well as the plausible inferences that can be drawn from them satisfy the pleading requirements set forth in the Federal Rules of Civil Procedure and the elements of fraud (based upon concealment) under California law. *See* Fed.R.Civ.P. 9(b); Civ.Code §1710(3) (deceit constitutes "[t]he suppression of a fact, by one who is bound to disclose it..."); *Lovejoy*, 119 Cal.App.4th at 160-62; *Stevens*, 180 Cal.App.3d at 609 (discussing allegations required for fraud based upon concealment). Accordingly, Plaintiff's proposed complaint sufficiently pleads a valid cause of action for fraud based upon concealment and, thus, Plaintiff's proposed complaint would not be futile.

**B.    Intentional and Negligent Misrepresentations as to Defendant Lilly**

In addition to fraud through concealment, California also recognizes a cause of action for fraud based upon negligent and/or intentional misrepresentations. *See* Civ.Code §§ 1710(1), and 1710(2). The elements for intentional and negligent misrepresentation are to some extent overlapping and are as follows: (1) a false representation of a material fact; (2) made with knowledge of its falsity (for intentional misrepresentation) or made without sufficient knowledge on the subject to warrant representation (for negligent misrepresentation); (3) with the intent to induce the person to whom it is made to act on it, (4) and an act by that person in justifiable reliance on the representation, (5) to that person's damage. *Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996) (identifying elements for intentional misrepresentation); *Gagne v. Bertran*, 43 Cal.2d 481, 488 (1954) (discussing elements for negligent misrepresentation); *Toole v. Richardson-Merrell Inc.,* 251 Cal.App.2d 689, 707 (1967) (drug manufacturer is liable for fraud if it makes misrepresentations regarding the safety of its drug); *see also Conte*, 168 Cal.App.4th at 101, n.7 (drug manufacturer may be liable for fraud based upon intentional and negligent misrepresentations). Plaintiff's proposed complaint lists a plethora of facts establishing intentional and negligent misrepresentations made by Lilly regarding the safety of Prozac, including the time, place, and content of the false representations as well as the identity of the perpetrators.

13

Pltff's Mot. to Amend Complaint to Add Cause of Action for Fraud & Prayer for Punitive Damages

*First,* the proposed complaint specifically alleges that, prior to Noe's suicide (a) Lilly knew through its clinical trials that Prozac is associated with an increased risk of suicidal behavior (TAC at ¶¶ 13-72, 84-87(b)-(f)); despite this knowledge, Lilly failed to issue any warnings regarding this grave risk (TAC at ¶¶ 53-55, 87(w),(y),(aa),(ii)) ; (c) Lilly refused to issue a suicide warning despite being apprised of the risk and advised to warn of the risk by the FDA (TAC at ¶¶ 53-55, 87(a)-(h), (y), (bb)); (d) Lilly further concealed this risk by falsifying its clinical trial results (TAC at ¶ 87(m)); (e) through intimidation and coercion, Lilly suppressed the publication of unfavorable studies regarding the suicide risks (TAC at ¶¶ 64-67); (f) Lilly falsely touted the safety of Prozac to the medical community, including Dr. Abend, through advertisements, letters, brochures, sales representatives and other material (TAC at ¶¶ 87(i)-(j), 87(n)-(dd)); (g) Lilly sales representatives met with Dr. Abend on a regular basis to promote Prozac (TAC at ¶¶ 87(w)-(cc)); (h) Lilly sales representatives provided Dr. Abend with promotional literature regarding Prozac which he reviewed (TAC at ¶¶ 87(w)-(aa)); (i) Lilly sales representatives provided Dr. Abend with free samples of Prozac which he distributed to his patients (TAC at ¶87(z)); and (j) Lilly's key opinion leaders and consultants wrote favorable articles regarding Prozac's safety which appeared in and were referenced and quoted in journals that Dr. Abend read and relied upon in making his prescribing decisions (TAC at ¶¶ 87(n)-(u)).

*Second*, the proposed complaint alleges that these misrepresentations were made with knowledge of their falsity.  For example, Lilly's own employees admitted that Prozac induced suicidal behavior and recommended that clinical trial patients should be given sedatives to offset the increased suicide risks. TAC at ¶¶ 32-44, 87(e), 87(k).  Other Lilly employees internally complained that they were being asked by Lilly executives to manipulate the suicide data and to conceal the suicide risks. TAC at ¶ 87(m).  Lilly's own consultant and key opinion leader, Dr. Montgomery, privately told Lilly that the suicide risk would become an issue and he was disappointed that Lilly was ignoring the issue and failing to properly analyze it. TAC at ¶87(o).  However, notwithstanding his private

14

Pltff's Mot. to Amend Complaint to Add Cause of Action for Fraud & Prayer for Punitive Damages

criticism, Dr. Montgomery thereafter wrote articles praising the safety of Prozac and downplaying the suicide risk.  TAC at ¶87(p)-(s).  Dr. Montgomery failed to mention that he had financial ties to Lilly or that he had previously privately criticized Lilly on this very issue.  *Id.*  Dr. Montgomery's articles were used by other experts and publications as proof that Prozac did not pose a suicide risk.  *Id.*  Importantly, The Medical Letter, a publication Dr. Abend utilized to educate himself about the risks and benefits of drugs, referenced Dr. Montgomery's article to state that  "[r]eports that fluoxetine may increase the risk of suicide are unconvincing (SA Montgomery...)" TAC at ¶¶ 87(q).[8]

*Third*, the complaint alleges that Lilly made these false representations in order to induce doctors to prescribe and patients, such as decedent, to purchase Prozac.  TAC at ¶¶ 88, 92.  Lilly's internal documents produced in discovery to date confirm that Lilly knew its sales visits with physicians resulted in increased sales. TAC at ¶¶87(aa). Moreover, Lilly's utilization of key opinion leaders and their publication of favorable articles regarding Prozac and its utilization of direct to consumer marketing (to which Noe's family was exposed), all were aimed at encouraging physicians to prescribe Prozac and further encouraging patients to take Prozac. TAC at ¶¶ 87(n)-(dd), 88-92.  *See also Gagne*, 43 Cal.2d at 488, n.5 ("Defendant's intent to induce plaintiffs to alter their position can be *inferred* from the fact that he made the representations with knowledge that plaintiffs would act in reliance on them."); *Pearson v. Norton*, 230 Cal.App.2d 1, 7 (1964) ("Fraud may be proved by direct evidence *or it may be inferred* from all of the circumstances in the case."); *Toole*, 251 Cal.App.2d at 707  (jury entitled to *infer* that doctor relied upon drug manufacturer's representations).

*Fourth*, Dr. Abend directly and indirectly relied upon Lilly's misrepresentations. Dr. Abend testified that he began to prescribe Prozac to his patients as a result of information that he had read and relied upon "in the literature and journals." TAC at ¶¶

---

[8]  Dr. Abend testified that he has "always" subscribed to the Medical Letter and that, throughout his career, it has been one of the primary sources he relied upon to learn about drugs. TAC at ¶¶87(q)

87(s).  These journals and literature included, among others, The Medical Letter and The Annals of Internal Medicine. *Id.* As previously discussed, Lilly utilized its paid key opinion leaders, including Dr. Montgomery, to draft articles in well respected scientific journals to promote the safety and efficacy of Prozac. TAC at ¶¶87(n)-(s).   Dr. Montgomery's favorable article regarding the safety of Prozac was directly referenced and quoted in the Medical Letter, a primary source Dr. Abend utilized to learn about drugs. TAC at ¶¶ 87(q). Thus, Dr. Abend directly and indirectly relied upon Lilly and its paid (yet undisclosed) consultants.[9]

Dr. Abend was also directly exposed to and influenced by Lilly's sales representatives who touted the safety of Prozac and provided Dr. Abend with promotional literature (which he reviewed) and free Prozac samples (which he dispensed to patients). TAC at ¶¶ 87(w)-(z).  During his deposition, Dr. Abend agreed that physicians "are influenced both consciously and unconsciously by commercial promotional messages." TAC at ¶¶ 87(aa).  The California Supreme Court has likewise held that physicians can

---

[9]  California law permits a Plaintiff to establish fraud under the *agency* principle and through *indirect* reliance. With regard to the agency principle, *see Toole v. Richardson-Merrell, Inc.*, 251 Cal.App.2d 689, 707 (1967) (finding actionable fraud since jury could infer that plaintiff's *physician* relied upon promotional materials directed at him by the pharmaceutical company's sales representatives).  With regard to the indirect reliance principle, see *American T. Co. v. California etc. Ins. Co.* 15 Cal.2d 42, 67 (1940) (holding that fraud can be established through indirect reliance); *Varwig v. Anderson-Behel Porsche/Audi, Inc.*, 74 Cal.App.3d 578, 581, 141 Cal.Rptr. 539 (1977) (same); *Conte v. Wyeth*, 168 Cal.App.4th 89, (2009) (applying Section 310 of Restatement Second and holding that in pharmaceutical products liability cases, fraud can be established through indirect reliance).  Here, articles written by Lilly and its key opinion leaders were placed in prominent journals with the intention that they would be repeated in other medical journal articles and relied upon by other scientists and, as expected, Lilly's articles were referenced and relied upon by other publications and journals (including the Medical Letter) which Noe's physician, Dr. Abend, read and which influenced him to prescribe Prozac to his patients.  Thus, Lilly directly and indirectly influenced Dr. Abend and caused him to begin treating his patients, including Noe Carrasco, with Prozac (fluoxetine).  For a discussion of this principal in another antidepressant induced suicide case, please see *Knipe v. SmithKline Beecham*, 583 F.Supp.2d 602, 621 (E.D.Pa. 2008) (allowing plaintiff's fraud claims to be tried to the jury because, even though the prescribing physician had never been directly exposed to the drug manufacturer's promotional material, he relied upon "other sources," including other physicians and colleagues, which "may have considered Paxil promotional material" and that any of these sources "could have resulted in him relying upon in some attenuated fashion, the substance of [drug manufacturer's] alleged misrepresentation regarding Paxil").

16

be "consciously or subconsciously induced to prescribe" medication that is being promoted to them and held it is for the jury to determine whether the physician was influenced:

> There is adequate circumstantial evidence in the record before us to support a reasonable inference by the jury that Dr. Beland was induced to prescribe the drug for Mrs. Stevens because of Parke, Davis' overpromotion. Like many others of the profession, he had been exposed to the promotional tactics employed by Parke, Davis. It is reasonable to assume that the company's efforts consciously or subconsciously influenced him...The jury could reasonably infer from the above circumstantial evidence that Dr. Beland was induced by the manufacturer's activities to prescribe the drug and were entitled to reject Dr. Beland's testimony to the contrary.

*Stevens*, 9 Cal.3d at 55-56, n.16. In *Stevens*, the prescribing physician testified that he obtained his information regarding drugs from articles in medical journals and fellow physicians.  He testified that he was visited by drug sales representatives but could not recall any specific discussion and apparently testified that he was *not* influenced by these sales visits.  Notwithstanding the doctor's testimony that he was not influenced by the sales visits, the Supreme Court, as the above quoted language demonstrates, held that there was a reasonable inference and permissible assumption that he was "consciously or subconsciously influenced" and, thus, permitted the issue to be decided by the jury. The facts of the present case are far more convincing.  *First*, Dr. Abend testified that he was influenced and relied upon the medical literature, including The Medical Letter and discovery has shown that Lilly was involved in the editorial process concerning articles involving Prozac.  In at least one instance, The Medical Letter relied upon a Lilly paid consultant to conclude that Prozac did not pose a suicide risk to patients taking it.  TAC at ¶¶ 87(r).  *Second*, Dr. Abend was also visited by Lilly's sales representatives, he read their promotion literature, accepted their free samples, dispensed their samples to his patients and further agreed that physicians can be consciously and unconsciously

17

influenced by promotional messages. TAC at ¶¶ 87(w)-(aa). Thus, just like the California Supreme Court's *Stevens* case, Plaintiff has alleged sufficient facts and elicited sufficient evidence to allow the jury to draw a reasonable inference that Dr. Abend was directly and indirectly influenced by Lilly's promotional messages.

Also instructive is *Toole v. Richardson-Merrell, Inc.* In *Toole*, the manufacturer, through its clinical trials and adverse event reports, knew that its drug was associated with various eye injuries. The manufacturer, however, failed to inform the medical community regarding these risks, it falsified its clinical trial data and promoted its drug to the medical community as safe and effective. *Toole*, 251 Cal.App.2d at 706. In upholding the jury's verdict, the Court held that the drug manufacturer, which had superior knowledge regarding the subject matter, made misrepresentations of fact regarding its product and the jury could *infer* that the plaintiff's doctor relied upon these misrepresentations. *Toole*, 251 Cal.App.2d at 707. The prescribing physician had died by the time of trial and the only evidence elicited from him was his deposition testimony in which he had testified that he had "talked with appellant's salesmen more than once about MER/29 and that its promotional literature had come to his attention." *Id.* at 708.[10] In this case, Dr. Abend has testified (and discovery obtained from Lilly thus far has shown) that Lilly was having monthly visits with Dr. Abend to promote Prozac, Lilly gave Dr. Abend free Prozac samples which he distributed to his patients, and he reviewed promotional literature that sales representatives left behind. As discussed at length *supra*, Dr. Abend was also influenced by the medical literature that *Lilly's* scientists and consultants wrote regarding the safety of Prozac. TAC at ¶¶ 87(n)-(aa). Like *Toole* and *Stevens*, the jury should be allowed to determine whether Dr. Abend relied upon Lilly's misrepresentations.

---

[10] In denying the previous motion to amend (Docket No. 179), the Court referenced the *Toole* case and the prescribing physician's testimony and held that Plaintiff's fraud allegations would survive if "Carrasco's physician will provide such testimony in this case." Dkt No. 179. As outlined herein, Noe Carrasco's physician has provided not only similar evidence but far more detailed evidence regarding this issue, and the discovery thus far has shown that Lilly influenced Dr. Abend through its key opinion leaders and journal articles. TAC at ¶¶ 87(n)-(bb).

18

1    *Finally*, the proposed complaint sufficiently alleges that, Plaintiff and Noe suffered

2    damage as a result of Lilly's misrepresentations given that Dr. Abend testified that, had

3    Lilly told him the truth regarding the gravity of the suicide risks and the need for co-

4    administration of sedatives, he would not have prescribed fluoxetine and instead

5    "probably would have prescribed another medication."  TAC at ¶¶ 87(bb), 88-92, 96.

6    Thus, had Lilly not misrepresented the suicide risks to Dr. Abend, Dr. Abend  would not

7    have prescribed fluoxetine to Noe and Noe would not have taken fluoxetine which is only

8    available by prescription, and he would not have committed suicide.

9    **VI.   IN LIGHT OF DEFENDANTS' FRAUD AND CONSCIOUS DISREGARD**
10   **OF THE SAFETY OF OTHERS, PLAINTIFF IS ENTITLED TO PUNITIVE**
     **DAMAGES**

11       A complaint need not include a specific prayer for punitive damages in order to

12   allow a jury to award such damages. Fed.R.Civ.P 54(c); *Cancellier v. Federated Dept.*

13   *Stores*, 672 F.2d 1312, 1319 (9th Cir. 1982) ("No specific prayer for emotional distress

14   *or punitive damages* is needed.  A final judgment must grant the relief to which the

15   prevailing party is entitled, 'even if such party has not demanded such relief in his

16   pleadings.'"); *Guillen v. Kuykendall*, 470 F.2d 745, 748 (5th Cir.1972) (same); *see also*

17   *Godfrey v. Steinpress*, 128 Cal.App.3d 154, 183 (1982) ("The fact that exemplary

18   damages finds no express mention in the prayer of the complaint does not preclude the

19   allowance of such damages upon a contested trial.").[11]

20       Notwithstanding the fact that a specific prayer for punitive damages is not required,

21   in an abundance of caution, Plaintiff seeks to amend her complaint to add a specific

22   prayer for punitive damages.[12]  The facts alleged in the proposed complaint, which

23   include allegations of fraudulent concealment, fraudulent misrepresentations and

24

25   [11]  Moreover, the current operative complaint includes a prayer for "all damages
     as allowed by law" – which is broad enough to encompass punitive damages.

26

27   [12]  The only way defendants could argue that a proposed prayer for punitive
     damages is futile is to argue it would be subject to a motion to strike pursuant to
     FED.R.CIV.P. 12(f).  Motions to strike, however, are regarded with *disfavor* and usually
28   denied. *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1478 (C.D.Cal. 1996) (denying motion
     to strike punitive damages).

19

malicious conduct, confirm that Plaintiff is entitled to seek punitive damages under California law.

"Determinations related to the assessment of punitive damages have traditionally been left to the discretion of the jury." *West v. Johnson & Johnson Products, Inc.*, 174 Cal.App.3d 831, 867 (1985) (internal quotes omitted). California law provides three *separate* bases for the imposition of punitive damages, they include: malice, oppression *or* fraud. See Civil Code §3294; *see also Stevens*, 180 Cal.App.3d at 610-611. Defendants here are guilty of malice, oppression and fraud and are thus subject to punitive damages under each category.

**A.   By Intentionally Failing to Warn Regarding The Suicide Risks Associated With Prozac (fluoxetine), Defendants Consciously Disregarded the Safety of Consumers And Are Thus Guilty of Malice**

California law defines "Malice" as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant *with a willful and conscious disregard of the rights or safety of others*." Civil Code §3294(c)(1) (emphasis added). Importantly, malice, for purposes of punitive damages, does not require an intent by defendants to injure plaintiffs. *Taylor v. Superior Court*, 24 Cal.3d 890, 894 (1979) (plaintiff is not required to show any actual intent of defendant to harm plaintiff or others).

To establish conscious disregard, the plaintiff must show that "the defendant was aware of the probable dangerous consequences of his conduct, and that he wilfully and deliberately failed to avoid those consequences." *Taylor*, 24 Cal.3d at 895. The facts alleged in Plaintiff's proposed complaint, all of which must be accepted as true, provide that both Lilly and Sandoz knew through clinical studies, foreign regulatory concerns and published literature that Prozac (fluoxetine) increased the risk of suicidality in patients, that they intentionally failed to warn regarding these grave risks, that, once reports of suicidality emerged, they failed to conduct any additional testing to determine the safety risks, and that their conduct exhibited a conscious disregard for the safety of their consumers. Under established California law, such allegations support a prayer for

20

Pltff's Mot. to Amend Complaint to Add Cause of Action for Fraud & Prayer for Punitive Damages

punitive damages.  *See Toole*, 251 Cal.App.2d at 713-715 (drug manufacturer that promoted its drug as safe and failed to warn of known risks was properly held liable for punitive damages); *West*, 174 Cal.App.3d at 867 (drug manufacturer's inadequate testing of its drug established defendant's awareness of probable dangerous consequences, deliberate failure to avoid those consequences, and conscious disregard of user's safety); *Grimshaw v. Ford Motor Co.*, 119 Cal.App.3d 757, 808 (1981) (upholding punitive damages award against car manufacturer who through the result of crash tests knew that the car's fuel tank would expose consumers to serious injury or death but failed to correct the defect – court also held that plaintiff need not show that defendant intended to cause injury); *Seimon v. Southern Pac. Transp. Co.*, 67 Cal.App.3d 600, 607 (1977) (malice was inferred from evidence that heavily traveled railroad crossing was particularly dangerous because of restricted view and absence of warnings).

Of these cases, *Toole* and *West* are instructive.  In *Toole*, the court upheld the jury's punitive damages award because it found the drug manufacturer intentionally failed to issue warnings regarding eye risks and hair loss associated with its drug and thus had engaged in reckless conduct without regard to its injurious consequences. *Toole*, 251 Cal.App.2d at 713-715.  A jury in this case should likewise be allowed to adjudicate whether Lilly and Sandoz's intentional failure to issue warnings regarding a far more dangerous and fatal risk (suicide) exhibited reckless disregard for the safety of patients warranting the imposition of punitive damages.  In *West*, the court affirmed a punitive damages award against a tampon manufacturer which had failed to adequately test its product after receiving more than 150 consumer complaints.  *West*, 174 Cal.App.3d at 847, 867-69.  In the instant case, despite receiving thousands of suicide related adverse event reports,[13] Lilly and Sandoz never conducted a single safety oriented study to examine the suicide risk nor did they issue a proper warning regarding the true suicide

---

[13] Within one decade of entering the market, there were more than 30,000 adverse event reports about Prozac that were sent to MedWatch.  A number of these adverse event reports were attributed to suicides and suicide events.  There were more adverse event reports received about Prozac in its first two years on the market than had been reported on the leading tricyclic antidepressant in 20 years.  TAC at ¶72.

2:06-cv-7821 AHM (AJWx)                    Pltff's Mot. to Amend Complaint to Add Cause of Action for Fraud & Prayer for Punitive Damages

risks associated with Prozac (fluoxetine).  As provided by *West*, the jury should be allowed to determine whether defendants' intentional failure to conduct any further testing on this issue constitutes conscious disregard of the safety of others and warrants the imposition of punitive damages.

Finally, at least one district court in a Prozac induced suicide case has already held that Lilly's conduct, including its failure to report adverse events, its falsification of clinical trial results and suppression of unfavorable studies constituted malice and warranted the potential imposition of punitive damages. *Forsyth*, 1998 WL 35152135 at *7-8 ("the Court finds that Plaintiffs have presented sufficient evidence to show that Lilly may have acted wantonly, oppressively, or with such malice as implies a spirit of mischief or criminal indifference.").[14]

## B.    Defendants' Have Engaged In Oppressive Conduct

Punitive damages can also be imposed for oppressive conduct.  Oppression has been defined as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's right." Civil Code §3294(c)(2). Punitive damages can be based on a finding of oppression even absent a finding of malice.  *Major v. Western Home Ins. Co.*, 169 Cal.App.4th 1197, 1225 (2009).  Further, like malice and fraudulent intent, oppression may be *inferred* from the circumstances of a defendant's conduct.  *Monge v. Superior Court*, 176 Cal.App.3d 503, 511 (1986).  Defendants' concealment of the suicide risks and continuous promotion of Prozac (fluoxetine) for the sole purpose of enhancing sales, constitutes despicable conduct which subjected the decedent to unjust hardship and caused him to tragically end his life at the young age of 26. The jury should be allowed to determine whether such conduct constitutes oppression warranting the imposition of punitive damages.  *Dang v. Cross*, 422 F.3d 800 (9th Cir.

_____

[14]  In another antidepressant induced suicide case, the court likewise allowed the issue of punitive damages to be presented to the jury. *Forst v. SmithKline Beecham*, 602 F.Supp.2d 960, 974 (E.D.Wis. 2009) (involving Paxil, an antidepressant drug in the same class as Prozac) ("A reasonable jury may find that [drug manufacturer] knew Paxil increased the risk for suicidality, based on its earlier clinic results...as a result, the jury may also find that [drug manufacturer's] conduct was substantially certain to result in plaintiffs' rights being disregarded.")

2005) (error not to instruct jury that it could award punitive damages if it found defendant had acted in oppressive manner in denying civil rights); *Forsyth*, 1998 WL 35152135 at *8 ("the Court finds that Plaintiffs have presented sufficient evidence to show that Lilly may have acted...oppressively...").  There is no reason why a jury in this case should not be given the same opportunity.

### C.   Defendants' Fraudulent Conduct Warrants the Imposition of Punitive Damages

California law also permits the award of punitive damages in cases in which the defendant has engaged in fraud.   The statute defines "fraud" as "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."  As previously explained, "'intent,' in the law of torts, denotes not only those results the actor desires, but also those consequences which he knows are *substantially certain* to result from his conduct."  *Rosener v. Sears, Roebuck & Co.*, 110 Cal.App.3d 740, 748 (1980) (emphasis added); *Miller v. National Am. Life Ins.*, 54 Cal.App.3d 331, 338 (1976) (fraud that establishes punitive damages may be proved by inferences).

Here, as explained supra, both defendants engaged in intentional fraudulent concealment and Lilly engaged in intentional misrepresentations.  California law is clear that fraudulent concealment, on its own, is sufficient to warrant the imposition of punitive damages.  Civil Code §3294(c)(3); *Stevens*, 180 Cal.App.3d at 610-11.  In *Stevens*, the Court allowed a plaintiff to seek punitive damages based on allegations that the defendant fraudulently concealed material information.  *Stevens*, 180 Cal.App.3d at 610-11.  ("A fraud cause seeking punitive damages need not include allegation that the fraud was motived by malicious desire to inflict injury upon the victim.  The pleading of fraud is sufficient.")  Similar to *Stevens*, defendants' intentional concealment and failure to warn of the increased suicide related risks associated with Prozac (fluoxetine) warrants the imposition of punitive damages against both Sandoz and Lilly.

23

Pltff's Mot. to Amend Complaint to Add Cause of Action for Fraud & Prayer for Punitive Damages

Furthermore, Lilly's intentional misrepresentations regarding the safety of Prozac, which are detailed in the proposed complaint (see TAC at ¶87) and summarized supra, also warrant the imposition of punitive damages.  In *Toole*, the Court upheld the imposition of punitive damages because the defendant manipulated the data and concealed the safety risks.  *Toole*, 251 Cal.App.2d at 712.  Similarly, in this case, high level Lilly executives intentionally ordered subordinates to mis-code adverse events, concealed safety information from the medical community and falsely touted the safety of Prozac. TAC at ¶87(a)-(ii).  Lilly's fraudulent conduct and misrepresentations were substantially certain to cause patients, such as decedent in this case, to be prescribed Prozac (fluoxetine) without sufficient warnings and monitoring and tragically cause certain patients to be at an increased risk of experiencing suicidal behavior.  Like the manufacturer in *Toole*, the jury in this case should be allowed to determine whether Lilly's intentional misrepresentations warrant the imposition of punitive damages.

## VII.  CONCLUSION

A bedrock of our judicial system is that cases should be adjudicated on their merits – it is for that reason Federal Rule of Civil Procedure Rule 15 and the Supreme Court provide that permission for leave to amend pleadings be "freely given."  In light of these policies and the detailed facts outlined in the proposed complaint,  Plaintiff should be allowed to amend her complaint to add a cause of action for fraud and a prayer for punitive damages.  Sandoz and Lilly's concealment of the suicide risks constitutes fraud under California law and their conscious disregard for the safety of others warrants the imposition of punitive damages.  Moreover, Lilly's intentional misrepresentations regarding the safety of Prozac likewise constitutes fraud and warrants the imposition of punitive damages.  Other courts analyzing Lilly's handling of its Prozac safety data have held that the jury should be allowed to decide whether Lilly engaged in misrepre-sentation and whether it should be subject to punitive damages – there is no reason why a jury in this case should not be given the same opportunity nor is there any reason to deny Plaintiff the opportunity to proceed with litigation on the merits of these issues.

Pltff's Mot. to Amend Complaint to Add Cause
of Action for Fraud & Prayer for Punitive Damages

1

2   October 25, 2010

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

BAUM HEDLUND ARISTEI & GOLDMAN, PC


/s/ Bijan Esfandiari
Bijan Esfandiari, Esq.

*Attorneys for Plaintiff*

25

Pltff's Mot. to Amend Complaint to Add Cause
of Action for Fraud & Prayer for Punitive Damages

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 25, 2010, a copy of the foregoing **PLAINTIFF ROSEMARY DORSETT'S NOTICE OF MOTION AND MOTION TO AMEND THE COMPLAINT TO ADD A CAUSE OF ACTION FOR FRAUD AND PRAYER FOR PUNITIVE DAMAGES; MEMORANDUM OF POINTS AND AUTHORITIES** was filed electronically.  Notice of this filing will be sent to the following by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  As indicated below, service by US Mail, First Class postage prepaid, has been effected on those individuals who are non-participants in the ECF Filing system.

*Attorneys for Defendant, Sandoz*
Richard A. Clark, Esq.
Natasha N. Dawood, Esq.
Parker Milliken Clark O'Hara Samuelian
555 So. Flower St., 13th Floor
Los Angeles, CA 90071
Tel: (213) 683-6500   Fax: (213) 683-6669
Rclark@pmcos.com
Ndawood@pmcos.com

Joe G. Hollingsworth, Esq.
Eric G. Lasker, Esq.
Kirby T. Griffis, Esq.
Stephen A. Klein, Esq.
HOLLINGSWORTH LLP
1350 I Street, NW
Washington, DC  20005
Tel: (202) 898-5800   Fax: (202) 682-1639
Kgriffis@spriggs.com
Sklein@hollingsworthllp.com
csloane@spriggs.com

*Attorneys for Deft., Eli Lilly and Company*
Michelle M. Fujimoto, Esq.
Natasha L. Mosley, Esq.
SHOOK HARDY & BACON LLP
5 Park Plaza, Suite 1600
Irvine, CA 92614
Tel: (949) 475-1500   Fax: (949) 475-0016
Mfujimoto@shb.com
Nmosley@shb.com

Christopher Gramling, Esq.
Andrew See, Esq.
SHOOK HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, MO 64108-26123
Tel: (816) 474-6500   Fax: (816) 421-5547
Cgramling@shb.com

/s/ Bijan Esfandiari
Bijan Esfandiari, Esq.
BAUM HEDLUND ARISTEI & GOLDMAN, PC
12100 Wilshire Boulevard, Suite 950
Los Angeles, California  90025-7106
Telephone:  310.207.3233
Facsimile:  310.207.4204
E-Mail: besfandiari@baumhedlundlaw.com

2:06-cv-7821 AHM (AJWx)

Pltff's Mot. to Amend Complaint to Add Cause of Action for Fraud & Prayer for Punitive Damages