1   Frank C. Rothrock (SBN: 54452)
    frothrock@shb.com
2   Natasha L. Mosley (SBN: 246352)
    nmosley@shb.com
3   SHOOK, HARDY & BACON L.L.P.
    Jamboree Center
4   5 Park Plaza, Suite 1600
    Irvine, California 92614-2546
5   Telephone: (949) 475-1500
    Facsimile:  (949) 475-0016
6
7   Andrew See (*admitted pro hac vice*)
    asee@shb.com
8   Christopher Gramling (*admitted pro hac vice*)
    cgramling@shb.com
9   SHOOK, HARDY & BACON L.L.P.
    255 Grand Boulevard
10  Kansas City, Missouri 64108-2613
    Telephone: (816) 474-6550
11
12  Attorneys for Defendant Eli Lilly and Company
13
                UNITED STATES DISTRICT COURT
14
                CENTRAL DISTRICT OF CALIFORNIA
15
16  ROSEMARY DORSETT, individually       )   Case No. 2:06-cv-7821 AHM (AJWx)
    and as successor-in-interest to the Estate  )
17  of NOE CARRASCO, deceased,           )   Judge: Hon. A. Howard Matz
                                          )   Courtroom: 14
18          Plaintiff,                    )
                                          )   ELI LILLY AND COMPANY'S
19      vs.                               )   MEMORANDUM OF POINTS AND
                                          )   AUTHORITIES IN OPPOSITION TO
20  SANDOZ, INC., a Delaware corporation;)   PLAINTIFF'S MOTION TO AMEND
    ELI LILLY AND COMPANY, an            )   THE COMPLAINT TO ADD A
21  Indiana Corporation (formerly DOE 1);)   CAUSE OF ACTION FOR FRAUD
    and DOES 2-50,                        )   AND PRAYER FOR PUNITIVE
22                                        )   DAMAGES
            Defendants.                   )   _____
23                                        )
                                          )   (Filed concurrently with Declaration of
24                                        )   Frank C. Rothrock)
                                          )
25                                        )   Date:     December 6, 2010
                                          )   Time:     10:00 a.m.
26                                        )   Dept:     14
                                          )
27  _____ )   Second Amd. Compl. filed 1/6/09
28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ....................................................................................1

II.  DR. ABEND'S TESTIMONY DEMONSTRATES THE
     FUTILITY OF PLAINTIFF'S PROPOSED FRAUD CLAIM .........................2

III. PLAINTIFF FAILS IN HER ATTEMPTS TO AVOID THE
     IMPACT OF DR. ABEND'S TESTIMONY.......................................................5

     A.   Plaintiff Mischaracterizes Dr. Abend's Testimony ......................5

     B.   The Reliance Element Of Plaintiff's Proposed Fraud
          Claim Must Be Pleaded With Particularity..............................12

     C.   Plaintiff Cannot Show Reliance Through Speculation ...........14

     D.   Plaintiff Cannot Carry Her Burden By Asserting General
          Fraud-On-The-Market Type Allegations.................................19

     E.   Plaintiff Cannot Carry Her Burden By Reference To
          Direct-To-Consumer Advertising ..........................................20

     F.   Plaintiff's Argument That A Hypothetical Warning
          Would Have Changed Dr. Abend's Prescribing Decision
          Lacks Foundation And Is Irrelevant Speculation....................21

IV.  PLAINTIFF'S PROPOSED FRAUD CLAIM IS FUTILE
     BECAUSE DR. ABEND WAS AWARE OF THE ALLEGED
     RISK OF SELF HARM AND ADVISED THE DECEDENT
     OF THIS PURPORTED RISK......................................................................23

V.   PLAINTIFF'S PROPOSED PUNITIVE DAMAGES CLAIM
     IS FUTILE..............................................................................................24

VI.  CONCLUSION .......................................................................................25

ii

80989 v1

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Ashcroft v. Iqbal,*
129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ..........................................2, 14

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ........................1, 2, 14, 16

*Carlin v. Superior Court,*
13 Cal. 4th 1104, 56 Cal. Rptr. 2d 162 (1996) ..........................................20

*Conte v. Wyeth, Inc.,*
168 Cal. App. 4th 89, 85 Cal. Rptr. 3d 299 (2008) ..........................................2, 5, 25

*Huntman v. Danek Medical, Inc.,*
No. 97-2155, 1998 WL 663362 (S.D. Cal. July 24, 1998) ..........................14, 24

*In re Actimmune Mktg. Litig.,*
614 F. Supp. 2d 1037 (N.D. Cal. 2009) ..........................................13, 16, 17, 20

*In re Actimmune Mktg. Litig.,*
No. C 08-02376, 2009 U.S. Dist. LEXIS 103408
(N.D. Cal. Nov. 6, 2009) ..........................................13

*Latiolais v. Merck & Co., Inc.,*
No. 06-02208, 2007 WL 5861354 (C.D. Cal. Feb. 6, 2007) ..........................5, 21, 22

*Medo v. Superior Court,*
205 Cal. App. 3d 64, 251 Cal. Rptr. 924 (1988) ..........................................24

*Motus v. Pfizer Inc.,*
196 F. Supp. 2d 984 (C.D. Cal. 2001) ..........................................5, 14, 20, 21

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003) ..........................................24

*Stevens v. Parke, Davis & Co.,*
9 Cal. 3d 51, 107 Cal. Rptr. 45 (1973) ..........................................13, 14

*Toole v. Richardson-Merrell Inc.,*
251 Cal. App. 2d 689, 60 Cal. Rptr. 398 (1967) ..........................................13, 14

**Rules**

Fed. R. Evid. 9 ..........................................1, 2, 13, 16, 17

# I.    INTRODUCTION

The Court denied plaintiff's first attempt to amend her complaint to assert fraud claims against defendant Eli Lilly and Company ("Lilly") because plaintiff "failed to plead the fraud claim with the requisite particularity" under Federal Rule of Evidence 9(b), and found her prayer for punitive damages was futile because it was dependent on the improperly pleaded fraud claim.  (*See* June 29, 2010 Order (Doc. 179) p. 7.) The Court rejected plaintiff's prior fraud claim because the allegations neither established – nor supported a plausible inference – that Dr. Abend, the prescribing physician, "reviewed and relied upon the fluoxetine warning label before prescribing fluoxetine to Decedent." (*Id.* at p. 6.)  The Court gave plaintiff instructions on what she would need to do to plead a viable fraud claim.  (*See* June 28, 2010 Transcript of Hearing on Motion for Leave to Amend pp. 8-9; attached as Exhibit C to the Declaration of Frank C. Rothrock ("Rothrock Decl.") filed with this brief.)

Despite the Court's explicit directions, plaintiff's new Motion to Amend and proposed Third Amended Complaint (PTAC) re-allege most of the same laundry list of supposed misrepresentations and omissions that the Court had found "extremely imprecise," "vague," and "stale." (*Id.* at p. 10.)  Plaintiff again fails to plead sufficient facts to connect these alleged misrepresentations or omissions to Dr. Abend's prescribing decision.  The only "new" allegations consist of plaintiff's effort to pepper the PTAC with mischaracterized testimony from Dr. Abend's deposition in an attempt to plead reliance without citing to or attaching the transcript of the deposition. Moreover, plaintiff's motion ignores Dr. Abend's undisputed testimony that he did not read or rely on the Prozac® package insert or the PDR entry for Prozac® prior to or in connection with his decision to prescribe generic fluoxetine to Noe Carrasco ("the decedent").

The Court has explained that plaintiff's proposed amended complaint must be evaluated under the pleading standards in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544,

1

80989 v1

1  127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173

2  L. Ed. 2d 868 (2009), as well as the heightened pleading requirements contained in

3  Rule 9(b) of the Federal Rules of Civil Procedure.  Because plaintiff's proposed fraud

4  claim once again falls short of these requirements, plaintiff's motion for leave to

5  amend should be denied as futile, this time with prejudice.

6

7  **II.    DR. ABEND'S TESTIMONY DEMONSTRATES THE FUTILITY OF**

8  **PLAINTIFF'S PROPOSED FRAUD CLAIM.**

9         Lilly was added to this case following the California Court of Appeal's decision

10  in *Conte v. Wyeth, Inc.,* 168 Cal. App. 4th 89, 85 Cal. Rptr. 3d 299 (2008).  Plaintiff

11  has conceded she can only assert claims against Lilly to the extent those claims are

12  authorized by *Conte*.  (*See* Plaintiff's Opp'n to Lilly's Motion for Judgment on the

13  Pleadings (Doc. 109) p. 1.)

14         *Conte* held that a brand-name manufacturer of a prescription medication may be

15  liable for negligent and intentional misrepresentation only if the prescribing physician

16  relies on its product information in prescribing a generic version of the brand-name

17  medication.  *Id.* at 101, 102, 108.  Under *Conte*, reliance is an essential element of a

18  misrepresentation-based claim against a brand-name manufacturer.  The *Conte* court

19  repeatedly emphasized that the brand-name manufacturer's liability is tethered to a

20  showing that the prescriber ***relied on*** its product information.  *Id.* at 94, 105, 107.

21         Thus, plaintiff must plead and prove that Dr. Abend relied on product

22  information about Prozac® from Lilly in making his prescribing decision.  Dr.

23  Abend's undisputed testimony demonstrates that plaintiff cannot meet this burden.

24  He testified that he has no recollection of reading any package inserts for Prozac® on

25  or before July 15, 2004, and that he ***did not rely*** on anything stated in any package

26  insert for Prozac® in making his decision to prescribe fluoxetine for the decedent:

27

28                                                 2

1   Q:   Do you have any recollection of reading the package insert or any

2   of the package inserts for Prozac at any time before July 15, 2004?

3   **A:   No.**

4   Q:   Do you have any recollection of reading the package insert or any

5   of the package inserts for Prozac on July 15, 2004?

6   **A:   No.**

7   Q:   Did you rely on anything stated in any of the package inserts for

8   Prozac in making your decision to prescribe fluoxetine for Noe Carrasco

9   on July 15, 2004.

10  **A:   No.**

11  (Abend Dep. 55:6-17; *see also* 57:21-25; 317:16-20; cited excerpts from Dr. Abend's

12  deposition are attached as Exhibit A to Rothrock Decl.)

13       Dr. Abend also testified that he has no recollection of reading the Physician's

14  Desk Reference ("PDR") monographs regarding Prozac® at any time before July 15,

15  2004, and that he did not rely on anything in the PDR when making his decision to

16  prescribe fluoxetine for the decedent:

17  Q:   Do you have any recollection of reading the PDR on Prozac –

18  **A:   No.**

19  Q:    – at any time before July 15, 2004?

20  **A:   No.**

21  Q:   Did you rely on anything you may have read in the PDR –

22  understanding that you don't recall looking at it.  But did you rely on

23  anything you may have read in the PDR about Prozac prior to July 15,

24  2000, or on that date in making you decision to prescribe Fluoxetine to

25  Noe Carrasco?

26  **A:   No.**

27  (Abend Dep. 49:17-50:5; *see also* 57:8-11; 317:11-15.)

28

80989 v1

Dr. Abend further testified that he has no recollection of any discussions with Lilly sales representatives about Prozac® and did not rely on any information he may have received from Lilly sales representatives or any other Lilly representatives in making his decision to prescribe fluoxetine for decedent on July 15, 2004:

> Q:    Do you have any recollection of having a discussion with an Eli Lilly sales representative about Prozac?
>
> **A:    No.**
>
> Q:    And when you made the decision to prescribe Fluoxetine for Noe Carrasco, did you rely on any information you had received from an Eli Lilly sales representative about Prozac?
>
> **A:    No.**

(*Id.* at 49:8-16; *see also* 52:15-21; 316:18-317:1.)

Dr. Abend also confirmed that, when prescribing fluoxetine to decedent, he did not rely on ***anything*** Lilly said or provided to him:

> Q:    And would I be correct that, to the best of your recollection, you did not rely on anything said to you or any written materials provided to you by any Eli Lilly & Company representative in making your decision to prescribe fluoxetine for Noe Carrasco; is that correct?
>
> . . . .
>
> **A:    That's correct.**

(*Id.* at 317: 2-10.)

In light of this testimony, none of which is cited or referred to in the Motion to Amend or PTAC, plaintiff's proposed amendment is futile and should be denied.

80989 v1

## III.   PLAINTIFF FAILS IN HER ATTEMPTS TO AVOID THE IMPACT OF DR. ABEND'S TESTIMONY.

Dr. Abend's deposition testimony is dispositive of the issues raised in the Motion to Amend and, under *Conte*, *Motus v. Pfizer Inc.,* 196 F. Supp. 2d 984 (C.D. Cal. 2001), and *Latiolais v. Merck & Co., Inc.*, No. 06-02208, 2007 WL 5861354 (C.D. Cal. Feb. 6, 2007), is dispositive of this case.  Rather than citing to or attempting to distinguish this testimony, plaintiff ignores or mischaracterizes it.  She also makes several arguments in an effort to avoid the force of Dr. Abend's testimony. None of these arguments is persuasive and none changes the fact that plaintiff's proposed fraud claim is futile.

### A.   Plaintiff Mischaracterizes Dr. Abend's Testimony.

Plaintiff describes Dr. Abend's testimony as follows:

> Dr. Abend testified that, prior to prescribing fluoxetine to Noe, he met with Lilly sales representatives, received and reviewed Lilly's promotional material, received Prozac® samples which he distributed to his patients, read and relied upon medical journal articles, treatment guidelines and literature favorably discussing fluoxetine (including articles written by Lilly employees, agents and consultants or which relied upon information provided by Lilly, its agents and consultants), and attended continuing medical education seminars during which Prozac was discussed.  As a result of reading those favorable reports Dr. Abend began to prescribe fluoxetine to his patients, including Noe Carrasco.  Dr. Abend also testified that he routinely relies upon "Dear Doctor" letters that discuss new information and warnings and that, had Lilly or

5

80989 v1

1   Sandoz informed him of the true suicide risks associated
2   with fluoxetine, he would not have prescribed the drug
3   and probably "would have prescribed another
4   medication."

5   (Mot. to Amend (Doc. 195) pp. 1-2.)  Plaintiff's summary is inconsistent with

6   Dr. Abend's unequivocal testimony that he did not rely on anything said to him or

7   provided to him by Lilly or by a Lilly representative when making his prescribing

8   decision.  His actual testimony exposes plaintiff's summary as inaccurate.

9       Plaintiff's summary begins by stating that Dr. Abend "met with Lilly sales

10  representatives" and leaves the impression that Dr. Abend discussed Prozac® with

11  them and relied on those discussions in prescribing fluoxetine to the decedent.

12  Plaintiff goes on to repeat this theme throughout her brief.  (Mot. to Amend p. 7

13  ("Lilly also promoted the safety of Prozac directly to Dr. Abend through its sales

14  representatives who regularly visited Dr. Abend and his staff to promote Prozac.");

15  p. 16 ("Dr. Abend was also directly exposed to and influenced by Lilly's sales

16  representatives who touted the safety of Prozac and provided Dr. Abend with

17  promotional literature (which he reviewed) and free Prozac samples (which he

18  dispensed to patients).")  But, Dr. Abend's actual testimony regarding his interactions

19  with sales representatives proves this is not correct.  (Abend Dep. 49:8-16 (quoted on

20  page 4, *supra*).)

21      Plaintiff then states that Dr. Abend "received and reviewed Lilly's promotional

22  material," again creating the misimpression that Dr. Abend relied on promotional

23  material relating to Prozac® when prescribing to fluoxetine to the decedent.  (Mot. to

24  Amend p. 1.)  Dr. Abend's testimony demonstrates plaintiff's characterization of his

25  testimony is incorrect:

26
27
28                                6

80989 v1

1    Q:    Do you recall receiving any promotional materials or any literature

2    about Prozac or selective serotonin reuptake inhibitors from any detail

3    people or other personnel with Eli Lilly & Company?

4    **A:    No.**

5 (Abend Dep. 52:15-21; *see also* 317:2-10 (quoted on page 4, *supra*).)

6        Plaintiff next claims that Dr. Abend "received Prozac® samples which he

7 distributed to his patients," again creating the misimpression that the receipt of

8 Prozac® samples played a role in Dr. Abend's decision to prescribe fluoxetine to the

9 decedent.  (Mot. to Amend p. 1.)  Dr. Abend actually testified as follows about

10 Prozac® samples:

11    Q:    Okay.  Have you ever had a chance of receiving samples of drugs

12    from drug representatives?

13    **A:    Sometimes.   We generally don't recommend that physicians**

14    **accept samples nowadays.  But in the past, yes.**

15    Q:    In the past, yes.  So in the 1990s, do you recall receiving samples

16    of Prozac from Lilly representatives?

17    **A:    I don't specifically recall samples of Prozac, but I did accept**

18    **samples . . . back then.**

19    Q:    And would you subsequently distribute those samples to your

20    patients?

21    **A:    Only sometimes.**

22 (Abend Dep. 88:5-19.)  Later in his deposition, Dr. Abend confirmed that he received

23 samples of Prozac® in 1995, but did not recall ever receiving Prozac® samples in

24 2004.  (Abend Dep. 279:3-280:11.)  There is no basis for plaintiff's suggestion that

25 Dr. Abend's receipt of Prozac® samples in 1995 had anything to do with the

26 prescription of generic fluoxetine to the decedent in 2004.

27

28

80989 v1

1        Plaintiff then claims Dr. Abend testified that he "read and relied upon medical

2   journal articles, treatment guidelines and literature favorably discussing fluoxetine

3   (including articles written by Lilly employees, agents and consultants or which relied

4   upon information provided by Lilly, its agents and consultants), . . ." (Mot. to Amend

5   p. 1.)  While Dr. Abend did testify that he read and relied on assorted unidentified

6   medical literature (Abend Dep. 52:15-21), he never testified that he relied on "articles

7   written by Lilly employees, agents and consultant or which relied upon information

8   provided by Lilly, its agents and consultants."  Plaintiff simply speculates, without

9   foundation, that because Dr. Abend relied upon unspecified medical literature, he

10  must have relied upon literature written by Lilly employees, agents, or consultants.

11  Plaintiff's counsel had ample opportunity to develop such testimony during Dr.

12  Abend's extensive deposition.  He failed to do so.

13       Plaintiff also claims Dr. Abend testified that he attended "continuing medical

14  education seminars during which Prozac was discussed." (Mot. to Amend p. 2.)

15  While Dr. Abend testified that he obtained information about medications from CME

16  courses, this did not extend specifically to Prozac®:

17      Q:    Have you attended any CMEs in which antidepressants were

18           discussed?

19      **A:**    **Yes.**

20      Q:    When?

21      **A:**    **My general recollection, I'd say, two or three years ago.**

22      Q:    Two or three years ago.  Did you attend any during the 1990s?

23      **A:**    **I am sure I did, but I can't give you specifics.**

24      Q:    Okay.  Do you recall Prozac or fluoxetine being discussed at any

25           of these CME's that you attended?

26      **A:**    **I think the term was SSRIs.  The general category of drugs.**

27

28
8

80989 v1

(Abend Dep. 70:11-24.)  Dr. Abend never testified that he had a specific memory of attending a CME where Prozac® or fluoxetine was discussed.

Plaintiff then states that "Dr. Abend also testified that he routinely relies upon 'Dear Doctor' letters that discuss new information and warnings."  (Mot. to Amend p. 2.)  But again, this is not consistent with Dr. Abend's testimony:

Q:     Have you ever received "Dear Doctor" letters from pharmaceutical companies?

A:     **I'm not sure what you mean by "Dear Doctor" letters.**

Q:     Pharmaceutical companies occasionally will write what's called a "Dear Doctor" or "Dear Health Care Professional" letter to the medical community informing doctors of new risks, new benefits and the like.

A:     **If there's a black box, usually I get a letter at the beginning.**

Q:     So if you receive a communication from a pharmaceutical company advising you of new risks associated with this drug, do you find that important?

A:     **Sometimes.**

Q:     And is that something you would rely upon?

A:     **Sometimes.**

(Abend Dep. 84:20-85:10.)  When Dr. Abend was shown copies of "Dear Doctor" letters from the early 1990s that discussed Prozac®, he testified that he did not recall seeing those letters.  (Abend Dep. 192:25-193:9; 198:14-199:4.)  Dr. Abend also explained that he was skeptical of information provided by pharmaceutical companies and noted: "that's one of the reasons why I have very little [interaction] with drug reps."  (Abend Dep. 85:11-86:12.)

Plaintiff next argues Dr. Abend testified that, "had Lilly or Sandoz informed him of the true suicide risks associated with fluoxetine, he would not have prescribed the drug and probably 'would have prescribed another medication,' " creating the

80989 v1

impression that Dr. Abend believes Lilly (and Sandoz) concealed from him the "true suicide risks" allegedly associated with fluoxetine, which he now believes to be unacceptably high. (Mot. to Amend p. 2.)  Again, Dr. Abend's testimony contradicts plaintiff.  The one hypothetical question in response to which Dr. Abend indicated he might have prescribed a different medication failed to ask him what he would have done had he been given a stronger warning about suicide risks.  It asked, instead, what he would have done had the label instructed him to co-prescribe a tranquilizer with fluoxetine:

> Q:      Okay.  Doctor, this is for the purposes of clarifying the record for the previous question that we just asked.  And my question was: If Prozac's label indicated that it should be administered – coadministered with a tranquilizer to offset the suicide risks inherent in Prozac, and the labels and the instructions for the other antidepressants that you commonly utilize did not have such a requirement, would you still have prescribed Prozac or would you have prescribed a medication that didn't require the coadministration?

> A:      **I probably would have prescribed another medication.**

(Abend Dep. 275:10-24.)

Dr. Abend made clear that the reason he "probably" would have considered another medication was not because he believed that Lilly had obscured from him the "true suicide risks" associated with fluoxetine.  Instead, it was because "I would never coadminister another central nervous system drug with the one that was prescribed." (Abend Dep. 272:22-23.)  After answering this hypothetical question, Dr. Abend also clarified that he has known about the alleged risk of self harm purportedly associated with Prozac® since the 1990s and had more than enough information to fully warn his patients of this potential risk:

DEFENDANT LILLY'S OPPOSITION TO
PLAINTIFF'S MOTION TO AMEND COMPLAINT

80989 v1

1   Q:   So regardless of the additional information in the documents that

2   Mr. Esfandiari showed you, regardless of whether that information could

3   be characterized as new information or not, you certainly had enough

4   information as of the 1990s to warn your patients of the risk of self harm

5   in connection with Prozac; is that correct?

6   . . . .

7   **A:   Correct.**

8   (Abend Dep. 331:21-332:5.)

9   Plaintiff's summary paints an inaccurate picture of Dr. Abend's deposition

10   testimony. And plaintiff's brief contains a number of other mischaracterizations.

11   Plaintiff claims that "Lilly's sales representatives also provided Dr. Abend and his

12   medical staff with free lunches and other free items." (Mot. to Amend p. 7.) But

13   Dr. Abend testified he did not recall receiving any free items related to Prozac®:

14   Q:   Do you recall ever receiving or sales representatives distributing,

15   you know, note pads, pencils, other type of material that would bear the

16   insignia or the name brand of the company or the drug that they were

17   detailing?

18   **A:   Yes.**

19   Q:   Do you ever recall anything specific to Prozac or other

20   antidepressants?

21   **A:   Not off the top of my head, no.**

22   (Abend Dep. 285:11-19.)

23   Dr. Abend also testified that, while "drug companies" would "sponsor" lunches

24   at office meetings, representatives who brought the lunch and left promotional

25   materials were not allowed to attend the meetings. And he could not recall Prozac®

26   being discussed at any meeting where lunch had been "sponsored" by a drug

27   company. (Abend Dep. 286:3-287:20.)

28

11

80989 v1

1    Plaintiff claims "Dr. Abend could 'not specifically' recall whether he had read

2   the label for fluoxetine in the Physicians' Desk Reference (PDR), but testified that he

3   had access to the PDR and had previously consulted it for some drugs, the names of

4   which he could not recall." (Mot. to Amend p. 6.)  When asked during his deposition

5   about his use of the PDR to obtain information about medications generally and

6   Prozac specifically, however, Dr. Abend testified as follows:

7    Q:    Do you have access to a PDR, Doctor?

8    **A:    There's one in my office that's gathering dust probably.**

9    Q:    Have you ever reviewed it?

10    **A:    No.**

11    Q:    You've never looked at the PDR for any drug?

12    **A:    No.**

13   (Abend Dep. 73:22- 74:3.)

14    Q:    And am I also correct that you have no recollection of looking at

15        the labeling for Prozac in the PDR, the Physicians' Desk Reference, at

16        any time before you prescribed Fluoxetine for Noe Carrasco?

17    **A:    That's correct.**

18   (Abend Dep. 317:11-15.)

19    Plaintiff's mischaracterizations of Dr. Abend's testimony permeate the Motion

20   to Amend and the PTAC.  They did not form a credible foundation for plaintiff's

21   proposed fraud claim and they do not defeat or obviate Dr. Abend's testimony that

22   establishes he did not rely on any product information from Lilly in prescribing

23   fluoxetine for the decedent.

12

80989 v1

**B.**   **The Reliance Element Of Plaintiff's Proposed Fraud Claim Must Be Pleaded With Particularity.**

Plaintiff attempts to avoid the effect of Dr. Abend's testimony by arguing that she is not required to plead the reliance element of her proposed fraud claim with particularity. Plaintiff relies heavily on *Stevens v. Parke, Davis & Co.*, 9 Cal. 3d 51, 107 Cal. Rptr. 45 (1973) and *Toole v. Richardson-Merrell Inc.*, 251 Cal. App. 2d 689, 60 Cal. Rptr. 398 (1967). (Mot. to Amend pp. 16-18.) Plaintiff argues the reliance element of a fraud claim may be inferred and that doctors, such as Dr. Abend, may rely "unconsciously" on unspecified representations from a drug company. (Mot. to Amend p. 16.) Plaintiff's argument fails because it ignores the pleading standard under Rule 9(b), which requires plaintiff to plead with specificity a nexus between the alleged misrepresentation and the alleged injury. *In re Actimmune Mktg. Litig.*, No. C 08-02376, 2009 U.S. Dist. LEXIS 103408, at *34 (N.D. Cal. Nov. 6, 2009) ("Without some link connecting the doctors' alleged beliefs that [the medication] was efficacious for the treatment . . . to some fraudulent representation or omission made by [the manufacturer], the plaintiffs' allegations cannot satisfy Rule 12(b)(1), Rule 12(b)(6) or Rule 9(b)").

To plead third-party reliance by a prescribing physician, a plaintiff must allege facts showing the prescriber relied on the alleged misrepresentation or omission in deciding to prescribe the medication. *In re Actimmune Mktg. Litig.,* 614 F. Supp. 2d 1037, 1051 (N.D. Cal. 2009) (to plead reliance, "[p]laintiffs need to allege what specific information the individual plaintiffs or their physicians had about the drug [and] the extent to which they relied upon that information . . . ."). This requirement exists irrespective of whether the fraud is based on a claim for intentional misrepresentation, negligent misrepresentation, or fraudulent concealment.

Plaintiff's reliance on *Stevens* and *Toole* is misplaced. These are state-court cases that do not address the heightened standards for pleading fraud with particularity

13

1   under Rule 9(b) or the heightened standards for pleading a plausible claim under

2   *Twombly* and *Iqbal*.  And they involved facts that are readily distinguishable.  In

3   *Toole*, the evidence supported the jury's finding that the plaintiff's physicians had

4   relied on the manufacturer's representations about the drug's safety.  *Toole,* 251 Cal.

5   App. 2d at 707.  In *Stevens*, the court noted that a limited exception to the learned

6   intermediary doctrine exists in cases involving "overpromotion" claims.  There, the

7   evidence was undisputed that the defendant-manufacturer had disseminated

8   promotional material in medical journals without including an FDA-mandated

9   warning and that the labeling in the drug's PDR monograph omitted the mandated

10  warning.  The defendant's sales representatives had also provided doctors with

11  promotional material that omitted the FDA-mandated warning.  *Stevens*, 9 Cal. 3d at

12  58.

13         Here, in contrast, plaintiff does not and cannot allege that Lilly disseminated

14  promotional material on Prozac® without the FDA's mandated label.  Plaintiff does

15  not assert a cause of action for "overpromotion," or cite to evidence that Lilly's

16  marketing of Prozac® constitutes "overpromotion."  Finally, as this Court observed in

17  *Motus,* 196 F. Supp. 2d at 999, where – as here – a prescriber's unequivocal testimony

18  demonstrates he did not rely on a manufacturer's warnings or promotional material in

19  deciding to prescribe a medication, a plaintiff cannot prove that overpromotion

20  influenced the prescribing decision.  *See also Huntman v. Danek Medical, Inc.*, No.

21  97-2155, 1998 WL 663362, at *6 (S.D. Cal. July 24, 1998) (plaintiff could not prove

22  that overpromotion caused doctor to use screws for pedicle fixation because there was

23  "no evidence that [the physician] relied on any statements by defendant in determining

24  the appropriate course of action for [the] plaintiff's treatment.").

25

26

27

28                                          14

1  **C.   Plaintiff Cannot Show Reliance Through Speculation.**

2      Plaintiff next attempts to evade the standards for pleading reliance and

3  Dr. Abend's testimony by speculating that Dr. Abend may have relied "directly or

4  indirectly" on unspecified Lilly representations from reviewing various medical

5  publications in which articles favoring Prozac allegedly appeared over the years.

6  (Mot. to Amend p. 6.)  Plaintiff also argues that Lilly may have "consciously and

7  unconsciously" influenced Dr. Abend to prescribe fluoxetine to decedent based on

8  promotional material provided by its sales representatives. (Mot. to Amend p. 17.)

9      Plaintiff makes the unwarranted assumption that because Dr. Abend read

10  medical publications in which Lilly-sponsored articles may have appeared, or that

11  may have contained articles that cited from Lilly-sponsored articles, he must have

12  seen and in fact relied on information provided by Lilly – whether directly or

13  indirectly, consciously or unconsciously – when prescribing generic fluoxetine to the

14  decedent.  (*See* Mot. to Amend pp. 7, 14-16; PTAC ¶ 87.)  The fallacy of this

15  approach is illustrated by plaintiff's allegations concerning Dr. Montgomery, who she

16  claims was a "key opinion leader" hired by Lilly to "draft articles in well respected

17  scientific journals to promote the safety and efficacy of Prozac."  (Mot. to Amend

18  p. 16, PTAC ¶ 87.)

19      Plaintiff begins by pointing to Dr. Abend's testimony that he reviews various

20  medical journals in order to keep updated on the medications he prescribes, including

21  publications such as the "the Medical Letter and The Annals of Internal Medicine."

22  (Mot. to Amend p. 16.)  Plaintiff then notes that Dr. Montgomery published an article

23  discussing Prozac® in *1992*, 12 years before Dr. Abend prescribed fluoxetine to the

24  decedent that was "quoted in the Medical Letter, a primary source Dr. Abend utilized

25  to learn about drugs."  (*Id.*)  Plaintiff concludes:  "Thus, Dr. Abend directly and

26  indirectly relied upon" a misrepresentation from Lilly.  (*Id.*; *see also* p. 16 n.9

27  (arguing "articles written by Lilly and its key opinion leaders were placed in

28

15

80989 v1

prominent journals with the intention that they would be repeated in other medical journals [] which Noe's physician, Dr. Abend, read and which influenced him to prescribe Prozac to his patients").

Plaintiff's counsel had the opportunity to question Dr. Abend on whether he relied on (or even saw) Dr. Montgomery's article – or any other article citing to, relying on, or discussing Dr. Montgomery's article – when prescribing fluoxetine.  He did not.  Instead, plaintiff simply presumes that Dr. Abend saw and relied on the article, or some other article referencing or quoting from it, because such articles may or may not have appeared in medical publications Dr. Abend read over the course of his 40-year career.  This provides no plausible basis from which a reasonable inference of reliance may be drawn.  *Twombly*, 550 U.S. at 555 (the law requires a plaintiff to allege sufficient facts to "raise a right to relief ***above the speculative level*** on the assumption that all the allegations in the complaint are true") (emphasis added) (internal citations omitted); *see also* June 28, 2010 Transcript of Hearing on Motion for Leave to Amend, Rothrock Decl., Ex. C at p. 8 ("You think it's plausible for me, drawing all inferences in your favor, to assume that Dr. Abend . . . relied on a Dear Doctor letter that was sent out 14 years before?").  "The court need not accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact or unreasonable inferences." *In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d at 1047-48 (citations omitted).

Plaintiff attempts to avoid the Rule 9(b) standard with allegations that Dr. Abend "consciously and unconsciously" relied on information he received from Lilly sales representatives.  (Mot. to Amend p. 17.)  Plaintiff argues there is "a reasonable inference that Dr. Abend was directly and indirectly influenced by Lilly's promotional messages."  (Mot. to Amend p. 18; *see also* p. 17 ("Dr. Abend was also visited by Lilly's sales representatives, he read their promotion literature, accepted their free samples, dispensed their samples to patients . . . .").)  Again, plaintiff's claim is at

16

odds with Dr. Abend's testimony and the heightened standards for pleading fraud
under Rule 9(b).

Plaintiff ignores Dr. Abend's testimony that he does not recall discussing
Prozac® with any Lilly representative and that he did not rely on anything they said or
gave to him in prescribing generic fluoxetine to the decedent. (*See* Abend Dep. 49: 8-
16; 52:15-21; 316:18-317:10.)  This testimony is consistent with his description of his
relationship with sales representatives. (Abend Dep. 49:1-7; *see also* 228:21-229:8
(when asked what he does with promotional material left behind by sales
representatives, Dr. Abend stated that it his practice to "scan it and throw it in the
trash").)

In essence, plaintiff's argues that because Dr. Abend had access to and may
have seen Lilly promotional material, she has met her burden of pleading reliance in
this case.  She has not. (*See* June 29, 2010 Order (Doc. 179 at p. 6) (finding plaintiff's
general allegations that Dr. Abend relied on Lilly's alleged misrepresentations and
omissions insufficient because "this does not constitute an allegation that the doctor
reviewed and relied upon the fluoxetine warning label before prescribing fluoxetine to
Decedent")); *In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d at 1054 (finding
allegations that physicians relied on defendant's promotional material insufficient
under 9(b) because plaintiffs failed to allege the *specific* information plaintiff's
physicians actually relied upon).  Even assuming plaintiff could prove Dr. Abend was
exposed to Lilly's promotional material, there is no basis for then presuming he
prescribed generic fluoxetine to the decedent because of any representations contained
in such materials – especially in light of his unequivocal testimony to the contrary.

Plaintiff seeks refuge from Dr. Abend's undisputed testimony by suggesting
discovery is necessary to determine whether Dr. Abend somehow might have been
exposed to and influenced by some unspecified information at a CME course that may
have originated from Lilly.  (Mot. to Amend p. 7, n.2.)  Plaintiff is proposing a fishing

17

80989 v1

expedition.  Plaintiff seeks to assert a fraud claim based on speculation that perhaps Dr. Abend was at a CME course where perhaps one of the speakers perhaps relied on a piece of information that perhaps came from Lilly.  But claims of fraud and intentional or negligent misrepresentation may not be premised on such vague, unsubstantiated speculation.  Actual reliance is required.  (*See* June 29, 2010 Order (Doc. 179) pp. 3-4.)

Dr. Abend testified he could not remember when he attended a CME where antidepressants were discussed or who the speakers were.  But Dr. Abend did note that he knew the speakers were not representatives of drug manufacturers:

Q:   Did you attend any [CMEs] during the 1990s?

**A:   I'm sure I did, but I can't give you specifics.**

. . . ;

Q:   Who sponsored the CME or these CMEs that you attended?

**A:   The CME was sponsored – there's a series of continuing medical education lectures sponsored by the hospital that I attended, that I attend regularly.**

Q:   And who were the speakers?

**A:   It was – I don't recall.**

Q:   Do you know if the speakers were representatives from the various SSRI manufacturers?

**A:   No.  These were psychiatrists that were giving the discussion who are the staff members of the hospital, or sometimes they got guest lecturers from USC or UCLA, some professors.**

(Abend Dep. 70:11-72:2.)

The documents provided by the American College of Physicians ("ACP") in response to plaintiff's third-party subpoena demonstrate how plaintiff's proposed discovery will cast no light on the issue of reliance.  Among the documents produced

18

1   by the ACP are documents indicating Lilly sponsored three CME symposia relating to

2   depression at the ACP's 2004 national meeting and one symposia relating to

3   depression at the 2003 national meeting.  (*See* ACP Symposia Agendas; Rothrock

4   Decl., Ex. B.)  There is no evidence, however, that Dr. Abend attended these national

5   meetings.  Dr. Abend testified that he would attend the ACP national meetings "from

6   time to time.  I wouldn't go every year, but I would go to the National one every two

7   years or every three years."  (Abend Dep. 89:24-90:1.)  Assuming Dr. Abend attended

8   these ACP national meetings, there is no evidence he attended the specific CME

9   symposia that were sponsored by Lilly.  And even assuming Dr. Abend attended one

10  of the Lilly-sponsored CME symposia, there is no evidence that Lilly exercised any

11  influence over the content of the symposia.  There is also no evidence that Prozac®

12  (which was long off-patent) was even discussed at these symposia.

13        As illustrated by the ACP discovery, plaintiff's proposed and ongoing discovery

14  can only establish that Lilly from time to time sponsored CME programs.  It does not

15  establish that Lilly controlled the content of the CMEs. And it does not connect those

16  CMEs to Dr Abend or his prescribing decision.  Plaintiff's ongoing discovery does not

17  provide the necessary particularity to support the reliance element of her claims.  The

18  only witness who could provide such evidence is Dr. Abend.  He did not.  Given Dr.

19  Abend's testimony about his lack of recollection of the CME courses he attended,

20  further discovery will not connect Dr. Abend's prescribing decision with any alleged

21  fraudulent statement or omission from Lilly.  Nor can plaintiff credibly plead the

22  reliance element of her claims with the required particularity.  Plaintiff's proposed

23  fraud claim is futile and leave to amend should be denied.

24

25

26

27

28
                                        19

80989 v1

**D.   Plecintiff Cannot Carry Her Burden By Asserting General**
**Fraud-On-The-Market Type Allegations.**

Plaintiff attempts to evade the requirements for pleading reliance and the effect
of Dr. Abend's testimony by alleging the supposed misrepresentations and omissions
were relied on by the general medical community (including Dr. Abend) and the
general public (including the decedent).  PTAC ¶ 87, 88 (alleging Lilly defrauded the
medical profession, the general public, etc.).  Plaintiff cannot "escape [her] burden to
plead and prove the element of reliance by using a market-based fraud theory to
handwave the requirement that there be a connection between the misdeed complained
of and the loss suffered under state law." *In re Actimmune Mktg. Litig.*, 614 F. Supp.
2d at 1054.  Plaintiff has failed to plead the element of reliance with the required
particularity.

**E.   Plaintiff Cannot Carry Her Burden By Reference To**
**Direct-To-Consumer Advertising.**

Plaintiff complains of allegedly inaccurate information in Lilly's direct-to-
consumer advertising.  (*See* Mot. to Amend p. 12, n.7.)  She argues that "had Lilly
provided accurate information . . . Noe would not have taken fluoxetine, his family
would not have allowed him to take it, or, at the very least, his family would have
more closely monitored him." (*Id.*)  In California, the learned intermediary doctrine
applies "regardless of whether the warning reaches the patient." *Motus*, 196 F. Supp.
2d at 991; *Carlin v. Superior Court*, 13 Cal. 4th 1104, 1116, 56 Cal. Rptr. 2d 162
(1996).

Whatever marketing decedent's family may or may not have seen (and none is
identified in the PTAC) is irrelevant.  To the extent Lilly had a duty to warn, that duty
ran to Dr. Abend, and not to the decedent or his family.  Discovery requests related to
television and print ads shown prior to August 2004 are also of no consequence.

80989 v1

1  Ultimately, only Dr. Abend can testify about what he knew and relied upon when he
2  prescribed fluoxetine to the decedent.
3        During his deposition, Dr. Abend did not identify a single television, radio, or
4  print advertisement upon which he claimed to rely.  He did not identify any Lilly
5  promotional materials, whether handouts, fliers, pamphlets or brochures, upon which
6  he relied.  Instead, he explained that he did not rely on such information.  Given
7  Dr. Abend's testimony that he did not rely on any Prozac® product information in
8  prescribing fluoxetine for the decedent, plaintiff's proposed fraud claims are futile.

9   **F.   <u>Plaintiff's Argument That A Hypothetical Warning Would Have</u>**
10        **<u>Changed Dr. Abend's Prescribing Decision Lacks Foundation</u>**
11        **<u>And Is Irrelevant Speculation.</u>**

12       Plaintiff attempts to manufacture reliance by citing to Dr. Abend's testimony
13  that under certain circumstances he " 'would have proposed another medication.' "
14  (Mot. To Amend p. 2.)  This testimony is taken out of context and is irrelevant.  In
15  *Motus*, the Court held that because the prescriber did not rely on information from
16  Pfizer in making his decision to prescribe Zoloft, plaintiff could not prove that an
17  adequate warning would have changed his prescribing decision.  *Motus*, 196 F. Supp.
18  2d at 996.  In *Latiolais*, the Court described the plaintiff's attempt to raise a
19  "hypothetical inquiry about a stronger black box warning's expected effect on" the
20  prescriber as an attempt to "circumvent the dispositive fact of the [treater's] actual
21  failure to read any production information or warning from Merck."  *Latiolais*, 2007
22  WL 5861354, at *4.
23       Here, the testimony of Dr. Abend demonstrates that any attempt to pursue such
24  a hypothetical inquiry should fail for the same reasons identified in *Motus* and
25  *Latiolais*: the prescriber did not read or rely on any product information from Lilly.
26  Any warning would not have been read or relied on by Dr. Abend and would not have
27  made a difference in his prescribing decision.  Even if the Court considers
28

                                         21

80989 v1

1   Dr. Abend's responses to the hypothetical questions posed by plaintiff's counsel,

2   however, they fail to support a plausible inference of reliance.

3         Despite asking numerous hypothetical questions, plaintiff's counsel was only

4   once able to come close to an answer from Dr. Abend that a different warning would

5   probably have made a difference in his prescribing decision.  But this hypothetical

6   warning did not address suicide.  Instead, plaintiff's counsel inquired whether

7   Dr. Abend would have made another prescribing decision if the "label or instructions

8   for Prozac mandated that it be coadministrered with a tranquilizer," and if no other

9   antidepressant medication carried such an instruction.  Dr. Abend responded: "I

10  probably would have."  Abend Dep. 271:11-272:14.[1]  At most this is speculation, and

11  just as in *Latiolais*, 2007 WL 5861354, at *4, there is no foundation to support the

---

[1]  Plaintiff mischaracterizes Dr. Abend's testimony that he would "probably prescribe
another medication" in response to plaintiff's unsupported and unwarranted
hypothetical question.  (Mot. to Amend p. 2.)  Here is the full context of that
exchange:

> Q:    [I]f Prozac's label indicated that it should be administered –
> coadministered with a tranquilizer to offset the suicide risks inherent in
> Prozac, and the labels and the instructions for other antidepressants that
> you commonly utilize did not have such a requirement, would you still
> have prescribed Prozac or would you have prescribed a medication that
> didn't require the coadministration?
>
> . . . .
>
> A:    I probably would have prescribed another medication.

(Abend Dep. 275: 10-24.)  Dr. Abend's answer was based on the presumption that (1)
a sedative would have to be administered with Prozac®, (2) to offset an alleged
"inherent" risk of suicide from Prozac use, and that (3) other antidepressants would
not have had the same warning.  This is a bogus hypothetical that is based on a
mischaracterization of Germany's Prozac package insert.  The German package insert
for Prozac®, to which plaintiff's counsel refers, **did not contain** a contraindication
addressing the "inherent" risk of suicidality with the lack of sedative effect.  (*See*
Lilly's Responses to Plaintiff's Additional Facts, Ex. C (Doc. 137-5.).)

28

DEFENDANT LILLY'S OPPOSITION TO
PLAINTIFF'S MOTION TO AMEND COMPLAINT

80989 v1

1  hypothetical question.  Accordingly, this testimony is insufficient to save plaintiff's

2  proposed fraud.

3          This testimony does not establish the reliance element for any of plaintiff's

4  claims.  Because Dr. Abend did not review Lilly's Prozac® label or any product

5  information from Lilly before prescribing fluoxetine for decedent, he was not aware of

6  the information that was provided and necessarily did not rely upon the fact that the

7  allegedly omitted information was not provided.  Dr. Abend's responses to plaintiff's

8  hypothetical questions do not establish the reliance element of plaintiff's fraud-by-

9  omission claim and do not undercut Dr. Abend's unequivocal testimony that he did

10  not rely on any product information from Lilly in deciding to prescribe fluoxetine for

11  the decedent.

12

13  **IV.    PLAINTIFF'S PROPOSED FRAUD CLAIM IS FUTILE BECAUSE**

14  **        DR. ABEND WAS AWARE OF THE ALLEGED RISK OF SELF HARM**

15  **        AND ADVISED THE DECEDENT OF THIS PURPORTED RISK.**

16          Plaintiff's fraud claim is premised on allegations that Lilly did not warn

17  Dr. Abend about the "true suicide risks associated with Prozac" and that – if it had –

18  he would have made a different prescribing decision.  (PTAC ¶ 90.)  These allegations

19  are belied by Dr. Abend's testimony.  Dr. Abend testified that he aware of the alleged

20  link between suicide and fluoxetine before prescribing the medication to the decedent

21  in 2004, and was aware of this purported risk as far back as the 1990s.  (Abend Dep.

22  214:21-215:7; 238: 7-17.)  He attended CMEs in the 1990s at which the risk of self

23  harm with SSRI use was discussed.  (Abend Dep. 70:11-71:13; 89:12-21; 330:16-

24  331:4.)  It has been Dr. Abend's custom since the 1990s to inform his patients that

25  fluoxetine can cause them to engage in self harm.  (Abend Dep. 113:15-19; 331:14-

26  20.)  When Dr. Abend prescribed fluoxetine to the decedent on July 15, 2004, he

27

28                                           23

80989 v1

1    explained the benefits and side effects of the medication, including the risk of self
2    harm.  (Abend Dep. 41:6-42:21; 98:8-16.)

3         Given Dr. Abend's testimony, Plaintiff's proposed fraud claim is futile.
4    Plaintiff cannot establish that Dr. Abend was unaware of the alleged risk of self harm.
5    She cannot establish that any alleged misrepresentation or omission regarding the risk
6    of suicide was a proximate cause of decedent's suicide.  *See Huntman*, 1998
7    WL663362, at *5 (applying learned intermediary doctrine to plaintiff's fraud claim
8    and holding that "[T]he adequacy of the warnings is immaterial where the doctor
9    knows of the specific risks.")

10

11   **V.    PLAINTIFF'S PROPOSED PUNITIVE DAMAGES CLAIM IS FUTILE.**

12        The PTAC includes a request for punitive damages.  (PTAC ¶¶ 93-95; Prayer
13   ¶ 3.)  This request fails because it is based on her futile fraud claim.  (June 29, 2010
14   Order (Doc. 179) p. 7 ("Because plaintiff's fraud claims are inadequately pled, there is
15   no basis for imposing punitive damages on Defendants, so an amendment to add
16   punitive damages would also be futile.").)  Under California law, "[p]unitive damages
17   are not simply recoverable in the abstract.  They must be tied to oppression, fraud, or
18   malice in the conduct which gave rise to liability in the case."  *Medo v. Superior*
19   *Court,* 205 Cal. App. 3d 64, 68, 251 Cal. Rptr. 924 (1988) (emphasis in original).
20   Plaintiff's request for punitive damages is based on her proposed fraud claim and fails
21   for the same reasons.

22        Plaintiff's proposed punitive damages claim is also futile because Lilly did not
23   manufacture, market, or sell the generic fluoxetine at issue.  For this reason, any
24   award of punitive damages would violate due process.  The Due Process Clause of the
25   Fourteenth Amendment to the United States Constitution places limits on both the
26   availability and amount of punitive damages.  *See State Farm Mut. Auto. Ins. Co. v.*
27   *Campbell*, 538 U.S. 408, 417, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003).  These

28                                          24

80989 v1

1    limits include the rule that a defendant may only be subject to punitive damages for its

2    own conduct.  *Id.*[2]

3            It is uncontested that Lilly did not manufacture, market, or sell the generic

4    fluoxetine prescribed to the decedent.  Subjecting a defendant to punitive damages for

5    injuries alleged to have been caused by a product that it did not control is a violation

6    of due process.  Lilly cannot have received fair notice in 2004 that it might be subject

7    to punitive damages for another company's product based on a novel court decision

8    issued in 2008.  Nor can companies "order their behavior" to avoid punitive damages

9    in a situation where they might be subject to punitive damages based on products they

10   do not manufacture, market, or sell.

11

12   **VI.     CONCLUSION**

13           Dr. Abend's testimony severs any link between the alleged misrepresentations

14   by Lilly and Dr. Abend's decision to prescribe fluoxetine for the decedent.  Lilly

15   respectfully asks the Court to enter an order denying plaintiff's Motion to Amend.

16

17   Dated:  November  8 , 2010              Respectfully submitted,

18                                          SHOOK, HARDY & BACON L.L.P.

19

20                                          By:

21                                              Frank C. Rothrock
                                            Attorneys for Defendant Eli Lilly and
22                                          Company

23

24

25   _____
     [2]  *Conte,* 168 Cal. App. 4th 89, does not change this.  While California courts may
26   modify California's common law to create a cause of action against a brand name
     prescription drug manufacturer in situations where a generic equivalent of that
27   medication was used, they may not change or modify the Constitution's due process
     protections against arbitrary punitive damages awards.

28                                       25

                                            DEFENDANT LILLY'S OPPOSITION TO
                                            PLAINTIFF'S MOTION TO AMEND COMPLAINT
     80989 v1

1

## **PROOF OF SERVICE**

2

  I am employed in the County of Orange, State of California.  I am over the age of

3

18 and not a party to the within action.  My business address is 5 Park Plaza, Suite 1600,
Irvine, California  92614.

4

5

  On November 8, 2010, I served on the interested parties in said action the within:

6

**LILLY'S OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT**

7

by placing a true copy thereof in a sealed envelope(s) addressed as stated on the

8

attached mailing list.

9

☐  (MAIL) I am readily familiar with this firm's practice of collection and processing
correspondence for mailing.  Under that practice it would be deposited with the

10

U.S. postal service on that same day in the ordinary course of business.  I am
aware that on motion of party served, service is presumed invalid if postal

11

cancellation date or postage meter date is more than 1 day after date of deposit for
mailing in affidavit.

12

☐  (FAX) I caused such document(s) to be served via facsimile on the interested

13

parties at their facsimile numbers listed above.  The facsimile numbers used
complied with California Rules of Court, Rule 2003, and no error was reported by

14

the machine.  Pursuant to California Rules of Court, Rule 2006(d), I caused the
machine to print a report of the transmission.

15

☒  (ELECTRONIC FILING) I provided the document(s) listed above electronically

16

through the CM/ECF system pursuant to the instructions set forth in the Local
Rules for the United States District Court for the Central District of California.

17

☐  (HAND DELIVERY) By placing a true and correct copy of the above

18

document(s) in a sealed envelope addressed as indicated above and causing such
envelope(s) to be delivered by hand to the addressee(s) designated.

19

  I declare that I am employed in the office of a member of the bar of this court at

20

whose direction the service was made.

21

  Executed on November 8, 2010, at Irvine, California.

22

23

24

_____          _____
  Deborah Hohmann                                        *D. Hohmann*
  (Type or print name)                                        (Signature)

25

26

27

28

72143

## SERVICE LIST

Michael L. Baum, Esq.
Kate E. Gillespie, Esq.
Bijan Esfandiari, Esq.
Baum Hedlund Aristei & Goldman
12100 Wilshire Blvd., Suite 950
Los Angeles, CA  90025-7106

Tel:  (310) 207-3233
Fax:  (310) 207-4204
mbaum@baumhedlundlaw.com
besfandiari@baumhedlundlaw.com
kgillespie@baumhedlundlaw.com
**Counsel for Plaintiff**

Richard A. Clark, Esq.
Natasha N. Dawood, Esq.
Parker Milliken Clark, et al.
555 South Flower Street, 30th Floor
Los Angeles, CA  90071

Tel:  (213) 683-6500
Fax: (213) 683-6669
rclark@pmcos.com
ndawood@pmcos.com
**Counsel for Sandoz, Inc**

Arnold Anderson Vickery, Esq.
Paul Waldner, Esq.
Vickery, Waldner & Mallia, LLP
One Riverway Drive, Suite 1150
777 S. Post Oak Lane
Houston, TX  77056

Tel:  (713) 526-1100
Fax:  (713) 523-5939
**Co-counsel for Plaintiff**

Joe G. Hollingsworth, Esq.
Eric G. Lasker, Esq.
Stephen A. Klein, Esq.
Michael R. Keenan, Esq.
Hollingsworth LLP
1350 I Street, N.W.
Washington, DC  20005

Tel:  (202) 898-5800
Fax:  (202) 682-1639
kgriffis@hollingsworthllp.com
sklein@hollingsworthllp.com
mkeenan@hollingsworth.com
**Counsel for Sandoz, Inc.**

72143