1  Frank C. Rothrock (SBN: 54452)
   frothrock@shb.com
2  Natasha L. Mosley (SBN: 246352)
   nmosley@shb.com
3  SHOOK, HARDY & BACON L.L.P.
   Jamboree Center
4  5 Park Plaza, Suite 1600
   Irvine, California 92614-2546
5  Telephone: (949) 475-1500
   Facsimile: (949) 475-0016
6
7  Andrew See (*admitted pro hac vice*)
   asee@shb.com
8  Christopher Gramling (*admitted pro hac vice*)
   cgramling@shb.com
   SHOOK, HARDY & BACON L.L.P.
9  255 Grand Boulevard
   Kansas City, Missouri 64108-2613
10 Telephone: (816) 474-6550

11 Attorneys for Defendant Eli Lilly and Company
12

13                    UNITED STATES DISTRICT COURT

14                    CENTRAL DISTRICT OF CALIFORNIA

15 ROSEMARY DORSETT, individually      )  Case No. 2:06-cv-7821 AHM (AJWx)
   and as successor-in-interest to the Estate )
16 of NOE CARRASCO, deceased,           )  Judge: Hon. A. Howard Matz
                                        )
17              Plaintiff,              )  **ELI LILLY AND COMPANY'S**
                                        )  **REPLY BRIEF IN SUPPORT OF ITS**
18      vs.                             )  **MOTION FOR SUMMARY**
                                        )  **JUDGMENT**
19 SANDOZ, INC., a Delaware corporation; )
   ELI LILLY AND COMPANY, an           )  (Filed concurrently with Supplemental
20 Indiana Corporation (formerly Doe 1); )  Declaration of Frank C. Rothrock;
   and DOES 2-50,                       )  Responses to Plaintiff's Statement of
21                                       )  Genuine Issues; and Objections to
              Defendants.               )  Plaintiff's Declarations)
22                                       )
                                        )  Date:    December 6, 2010
23                                       )  Time:    10:00 a.m.
                                        )  Dept:    14
24                                       )
                                        )  Second Amd. Compl. filed 1/6/09
25                                       )

26

27

28
                                              DEFENDANT LILLY'S REPLY BRIEF
                                        IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
   81837 v1

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................... 1

II.   PLAINTIFF MISSTATES THE SUMMARY JUDGMENT STANDARD........................................................... 1

III.  LILLY IS ENTITLED TO SUMMARY JUDGMENT BECAUSE DR. ABEND DID NOT RELY ON ANY STATEMENT FROM LILLY........................................................... 2

IV.  PLAINTIFF'S ASSUMPTIONS AND SPECULATION DO NOT CREATE A TRIABLE ISSUE OF FACT. ........................................... 6

    A.   Plaintiff Asks The Court To Assume That Dr. Abend Relied On Information From Lilly Sales Representatives. ................. 6

    B.   Plaintiff Asks The Court To Assume That Dr. Abend "Unconsciously" Relied On Statements From Lilly. ........................... 7

    C.   Plaintiff Asks The Court To Assume That Dr. Abend Relied On Unspecified Statements From Lilly In Medical Journals And CMEs........................................................... 8

    D.   Plaintiff's Suggestion That The PDR Is Not A "Litmus Test" Ignores The Factual Basis For Lilly's Summary Judgment Motion........................................................... 10

    E.   Plaintiff Asks The Court To Assume That Dr. Abend Relied On The PDR Entry For Prozac. ............................................. 11

    F.   Plaintiff Asks The Court To Assume That Dr. Abend "Indirectly" Relied On Information He Received From Other Unspecified Physicians Who May Have Reviewed The PDR Entry For Prozac®........................................................... 13

    G.   Plaintiff Asks To Court To Assume That Dr. Abend's Response To A Question About A Hypothetical Warning Creates A Material Issue Of Fact. ............................................. 15

ii

V.   PLANTIFF'S "STATEMENT OF FACTS" MISCHARACTERIZES DR. ABEND'S TESTIMONY. ........................... 17

VI.   PLAINTIFF'S ARGUMENTS AGAINST APPLICATION OF THE LEARNED INTERMEDIARY DOCTRINE IGNORE THE FACT THAT RELIANCE BY DR. ABEND IS AN ESSENTIAL ELEMENT OF HER CLAIMS AGAINST LILLY. ................................................................. 21

VII.   CONCLUSION ................................................................. 25

iii

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*American Trust Co. v. California Western States Life Ins. Co.,*
  15 Cal. 2d 42, 98 P.2d 497 (1940) ................................................................ 14

*Carlin v. Superior Court,*
  13 Cal. 4th 1104, 56 Cal. Rptr. 2d 162 (1996) ........................................... 22

*Conte v. Wyeth, Inc.,*
  168 Cal. App. 4th 89, 85 Cal. Rptr. 3d 299 (2008) ............................... passim

*Grinnell v. Charles Pfizer & Co.,*
  274 Cal. App. 2d 424, 79 Cal. Rptr. 369 (1969) ......................................... 14

*Huntman v. Danek Medical, Inc.,*
  No. 97-2155-IEG, 1998 WL 663362 (S.D. Cal. July 24, 1998) ..................... 8

*In re Norplant Contraceptive Prods. Liab. Litig.,*
  215 F. Supp. 2d 795, 803 (E.D. Tex. 2002) ................................................ 24

*Knipe v. SmithKline Beecham,*
  583 F. Supp. 2d 602 (E.D. Pa. 2008) .................................................. 14, 15

*Latiolais v. Merck & Co.,*
  302 Fed. Appx. 756 (9th Cir. 2008) ........................................................... 16

*Latiolais v. Merck & Co., Inc.,*
  No. 06-02208, 2007 WL 5861354 (C.D. Cal. Feb. 6, 2007) .................... passim

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
  475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ............................. 2

*Merrill v. Navegar, Inc.,*
  26 Cal. 4th 465, 110 Cal. Rptr. 2d 370 (2001) ............................................ 3

*Mirkin v. Wasserman,*
  5 Cal. 4th 1082, 23 Cal. Rptr. 2d 101 (1993) ............................................ 14

*Motus v. Pfizer Inc.,*
  196 F. Supp. 2d 984 (C.D. Cal. 2001) ................................................... passim

*Motus v. Pfizer, Inc. (Roerig Div.)*
  358 F.3d 659 (9th Cir. 2004) ....................................................... 2, 10, 15

*Nelson v. Pima Community Coll.,*
  83 F. 3d 1075 (9th Cir. 1996) ...................................................................... 2

*O.S.C. Corp. v. Apple Computer, Inc.,*
  792 F.2d 1464 (9th Cir. 1986) ..................................................................... 1

iv

*Perez v. Wyeth Labs.,*
  734 A.2d 1245, 161 N.J. 1 (N.J. 1999) .......................................................... 24

*Ramirez v. Plough, Inc.,*
  6 Cal. 4th 539, 25 Cal. Rptr. 2d 97 (1993) .................................................... 16

*Rimbert v. Eli Lilly & Co.,*
  577 F. Supp. 2d 1174 (D.N.M. 2008) ...................................................... 23, 24

*State ex rel. Johnson & Johnson Corp. v. Karl,*
  647 S.E.2d 899, 220 W.Va 463 (W.Va. 2007) ......................................... 23, 24

*Stevens v. Parke, Davis & Co.,*
  9 Cal. 3d 51, 107 Cal. Rptr. 45 (1973) ....................................................... 7, 22

*Toole v. Richardson-Merrell Inc.,*
  251 Cal. App. 2d 689, 60 Cal. Rptr. 398 (1967) ............................................. 7

*Varwig v. Anderson-Behel Porsche/Audi, Inc.,*
  74 Cal. App. 3d 578, 141 Cal. Rptr. 539 (1977) .......................................... 14

*Villiarimo v. Aloha Island Air, Inc.,*
  281 F.3d 1054 (9th Cir. 2002) ....................................................................... 1, 6

**Regulations**

63 Fed. Reg. 66,378 (Dec. 1, 1998) ................................................................... 23

81837 v1

# I.     INTRODUCTION

Plaintiff's opposition to Eli Lilly and Company's ("Lilly") Motion for Summary Judgment ignores controlling authority and Dr. Abend's uncontradicted testimony that he did not rely on any statement from Lilly or its representatives in prescribing generic fluoxetine for the decedent, Noe Carrasco.  Instead of coming forward with facts that demonstrate the existence of a genuine dispute of material fact, plaintiff has thrown up a smokescreen of disjointed, unrelated, and unsupported allegations in an effort to create a fact issue.  Plaintiff's attempt falls short because she has not identified, and cannot identify, any evidence that Dr. Abend relied on information from Lilly when he decided to prescribe generic fluoxetine to the decedent.  Dr. Abend's testimony is dispositive of the issues in this case and supports summary judgment for Lilly under *Conte v. Wyeth, Inc.,* 168 Cal. App. 4th 89, 85 Cal. Rptr. 3d 299 (2008); *Motus v. Pfizer Inc.,* 196 F. Supp. 2d 984 (C.D. Cal. 2001); and *Latiolais v. Merck & Co., Inc.*, No. 06-02208, 2007 WL 5861354 (C.D. Cal. Feb. 6, 2007).  The Court should enter an order granting Lilly's Motion for Summary Judgment.

# II.     PLAINTIFF MISSTATES THE SUMMARY JUDGMENT STANDARD.

Plaintiff claims that on summary judgment, "all inferences must draw in plaintiff's favor." (*See* Plt's Opposition (Doc. 200) p. 4.)  This is not the standard. *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1065 n.10 (9th Cir. 2002) (at summary judgment, a court need not draw all possible inferences in plaintiffs favor, but only all reasonable ones) (*citing O.S.C. Corp. v. Apple Computer, Inc.*, 792 F.2d 1464, 1466-1467 (9th Cir. 1986) ("We scrutinize the *evidence* and *reasonable inferences* to determine whether there is sufficient probative evidence to permit 'a finding in favor of the opposing party based on more than mere speculation, conjecture, or fantasy.' ") (emphasis added).

1      To survive summary judgment, the non-moving party must "come forward with

2  specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus.*

3  *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538

4  (1986). "[M]ere allegation and speculation do not create a factual dispute for

5  purposes of summary judgment." *Nelson v. Pima Community Coll.*, 83 F. 3d 1075,

6  1081-82 (9th Cir. 1996).

7      In prescription drug cases, courts applying California law have consistently

8  granted summary judgment for defendants where the prescribing physician's

9  unequivocal testimony demonstrates that he neither saw nor relied upon the

10  defendant's product information. *See, e.g., Motus,* 196 F. Supp 2d at 996, *aff'd,*

11  *Motus v. Pfizer, Inc. (Roerig Div.)* 358 F.3d 659, 661 (9th Cir. 2004); *Conte,* 168 Cal.

12  App. 4th at 112 (citing *Motus*); *Latiolais,* 2007 WL 5861354 at *3.  Because

13  Dr. Abend testified he did not rely on product information from Lilly in making his

14  prescribing decision, Lilly is entitled to summary judgment.

15

16  **III.   LILLY IS ENTITLED TO SUMMARY JUDGMENT BECAUSE**

17       **DR. ABEND DID NOT RELY ON ANY STATEMENT FROM LILLY.**

18      Lilly was added to this case following the California Court of Appeal's decision

19  in *Conte,* 168 Cal. App. 4th 89.  Plaintiff concedes she can only assert claims against

20  Lilly to the extent those claims are authorized by *Conte.* (*See* Plaintiff's Opp'n to

21  Lilly's Motion for Judgment on the Pleadings (Doc. 109) p. 1.)  It is undisputed that

22  the decedent, Noe Carrasco, was not prescribed and did not use Lilly's product,

23  Prozac®, but rather was prescribed and used generic fluoxetine.  *Conte* held that a

24  brand-name manufacturer of a prescription medication may be liable for negligent and

25  intentional misrepresentation only if the prescribing physician relies on its product

26  information in prescribing a generic version of the brand-name medication.  *Id.* at 101,

27  102, 108.

28                                              2

1   Under *Conte*, reliance is an essential element of a claim against a brand-name

2   manufacturer.  The *Conte* court repeatedly emphasized that the brand-name

3   manufacturer's liability is tethered to a showing that the prescriber **relied on** its

4   product information.  *Id.* at 94, 105, 107.  *See also Merrill v. Navegar, Inc.*, 26 Cal.

5   4th 465, 490, 110 Cal. Rptr. 2d 370 (2001) ("Although evidence of causation may be

6   circumstantial, 'it must be substantial'; it is insufficient where … it leaves the

7   question of causation 'in the realm of mere speculation and conjecture' ") (citations

8   omitted).

9   Thus, in order to carry her burden under *Conte*, plaintiff must prove that

10   Dr. Abend relied on product information about Prozac® from Lilly in making his

11   prescribing decision.   Dr. Abend's undisputed testimony demonstrates that plaintiff

12   cannot make this showing.  Dr. Abend testified that he has **no recollection** of reading

13   any package inserts for Prozac® on or before July 15, 2004, and that he specifically

14   **did not rely** on anything stated in any package insert for Prozac® in making his

15   decision to prescribe fluoxetine for the decedent:

16   Q:   Do you have any recollection of reading the package insert or any

17   of the package inserts for Prozac at any time before July 15, 2004?

18   **A:   No.**

19   Q:   Do you have any recollection of reading the package insert or any

20   of the package inserts for Prozac on July 15, 2004?

21   **A:   No.**

22   Q:   Did you rely on anything stated in any of the package inserts for

23   Prozac in making your decision to prescribe fluoxetine for Noe Carrasco

24   on July 15, 2004.

25   **A:   No.**

26

27

28

3

81837 v1

1   (Abend Dep. 55:6-17; *see also* 57:21-25; 317:16-20.)[1]

2          Dr. Abend also testified that he had no recollection of reading the Physician's

3   Desk Reference ("PDR") monographs regarding Prozac® at any time before July 15,

4   2004, and that he did not rely on anything in the PDR when making his decision to

5   prescribe fluoxetine for decedent:

6          Q:    Do you have any recollection of reading the PDR on Prozac –

7          **A:    No.**

8          Q:     -- at anytime before July 15, 2004?

9          **A:    No.**

10         Q:    Did you rely on anything you may have read in the PDR –

11   understanding that you don't recall looking at it.   But did you rely on

12   anything you may have read in the PDR about Prozac prior to July 15,

13   2000 [sic], or on that date in making you decision to prescribe Fluoxetine

14   to Noe Carrasco?

15         **A:    No.**

16   (Abend Dep. 49:17-50:5; *see also* 57:8-11; 317:11-15.)

17         He further testified that he has no recollection of any discussions with Lilly

18   sales representatives about Prozac® and did not rely on any information he may have

19   received from Lilly sales representatives or any other Lilly representatives in making

20   his decision to prescribe fluoxetine for decedent on July 15, 2004:

21         Q:    Do you have any recollection of having a discussion with an Eli

22   Lilly sales representative about Prozac?

23         **A:    No.**

24

25

---

26   [1]  The portions of Dr. Abend's deposition cited in this Reply Brief are attached as

27   Exhibit A to the Supplemental Declaration of Frank C. Rothrock.

28                                           4

1      **Q:**    And when you made the decision to prescribe Fluoxetine for Noe

2      Carrasco, did you rely on any information you had received from an Eli

3      Lilly sales representative about Prozac?

4      **A:**    **No.**

5 *(Id.* at 49:8-16; *see also* 52:15-21; 316:18-317:1.)

6      Dr. Abend also confirmed that, when prescribing fluoxetine to the decedent, he

7 did not rely on anything Lilly said or provided to him:

8      **Q:**    And would I be correct that, to the best of your recollection, you

9      did not rely on anything said to you or any written materials provided to

10      you by any Eli Lilly & Company representative in making your decision

11      to prescribe fluoxetine for Noe Carrasco; is that correct?

12      ….

13      **A:**    **That's correct.**

14 *(Id.* at 317: 2-10.)

15      Plaintiff's *Conte*-created cause of action requires her to show that Dr. Abend

16 actually relied on Lilly's product information when deciding to prescribe generic

17 fluoxetine to the decedent.  It is an essential element of her claims against Lilly.

18 Plaintiff's claims fail because the testimony of Dr. Abend demonstrates she cannot

19 establish the essential elements of reliance and causation.

20

21

22

23

24

25

26

27

28                               5

## IV. PLAINTIFF'S ASSUMPTIONS AND SPECULATION DO NOT CREATE A TRIABLE ISSUE OF FACT.

Plaintiff's opposition takes the remarkable position that this Court should ignore the dispositive testimony of the prescribing physician, and disregard the line of cases – *Conte*, *Motus*, and *Latiolais* – in which such testimony supported summary judgment.   Plaintiff urges the Court to deny summary judgment despite Dr. Abend's undisputed testimony that he did not rely on any statements or information from Lilly in prescribing fluoxetine for the decedent.  Without citing any evidence that demonstrates Dr. Abend relied on any product information from Lilly, or any evidence that even connects any statement from Lilly to Dr. Abend, plaintiff invites the Court to make a series of unwarranted assumptions in the hope of creating a fact issue.  These assumptions amount to guesswork and speculation, which are insufficient to defeat summary judgment.  *Villiarimo*, 281 F.3d at 1065-66 n.10.

### A. Plaintiff Asks The Court To Assume That Dr. Abend Relied On Information From Lilly Sales Representatives.

Plaintiff first suggests that Dr. Abend was influenced to prescribe generic fluoxetine by his interaction with Lilly sales representatives.  (Doc. 200 pp. 4-5.) While plaintiff sets forth a number of bullet points purporting to detail Dr. Abend's alleged contacts with Lilly sales representatives, she ignores Dr. Abend's undisputed testimony that he does not recall discussing Prozac® with Lilly representatives and that he did not rely on anything they may have said or given to him in prescribing generic fluoxetine to the decedent.  (Abend Dep. 49: 8-16; 52:15-21; 316:18-317:10.) This testimony is consistent with Dr. Abend's description of his relationship with sales representatives. (Abend Dep. 49:1-7; *see also* 228:21-229:8.)

Plaintiff nonetheless assumes, and asks the Court to hold, that because Dr. Abend may have exchanged pleasantries with sales representatives, she has sufficient evidence to create a jury issue with respect to reliance.  As demonstrated by

6

81837 v1

1   *Motus*, however, this is not correct. *Motus*, 196 F. Supp. 2d at 987-88. In *Motus*, this

2   Court granted summary judgment to the defendant (Pfizer) because the prescribing

3   physician testified he did not rely on any statements from the defendant in making his

4   prescribing decision. *Id.* at 999. The Court did so despite testimony from the

5   prescriber that he "probably" did have conversations about the prescribed drug

6   (Zoloft) with Pfizer representatives. *Id.* at 987. Plaintiff's proffered evidence here

7   falls short of the evidence that was presented and found insufficient in *Motus*.

8   Plaintiff fails to contradict Dr. Abend's testimony that he did not rely on any product

9   information he may have received from Lilly's sales representatives.

10   **B.   Plaintiff Asks The Court To Assume That Dr. Abend**

11   **"Unconsciously" Relied On Statements From Lilly.**

12          Plaintiff next argues that she can avoid summary judgment because Dr. Abend

13   may have "unconsciously" or "subconsciously" relied on some unspecified statement

14   from Lilly. (Doc. 200 p. 6.) Plaintiff relies erroneously on two state court decisions

15   that apply appellate standards of review in support of her argument that the reliance

16   element may be inferred: *Id.*, citing *Stevens v. Parke, Davis & Co.*, 9 Cal. 3d 51, 107

17   Cal. Rptr. 45 (1973) and *Toole v. Richardson-Merrell Inc.*, 251 Cal. App. 2d 689, 60

18   Cal. Rptr. 398 (1967).[2] Neither case helps plaintiff. In *Toole*, the evidence supported

19   the jury's finding that the plaintiff's physicians **had** relied on the manufacturer's

20   representations about the drug's safety. *Toole,* 251 Cal. App. 2d at 707. And in

21   *Stevens*, there was "adequate circumstantial evidence in the record . . . to support a

22   reasonable inference by the jury that [plaintiff's physician] was induced to prescribe

23   the drug for [plaintiff] because of [defendant's] overpromotion." 9 Cal. 3d at 68.

24

25

26   [2] By relying on these cases, plaintiff invokes inapplicable state appellate review standards. Lilly has shown that these cases involved different factual and procedural postures. (Lilly's Opp. To Plaintiff's Motion to Amend (Doc. 197) pp. 13-14.) As this Court previously explained, *Toole* involved testimony from the prescribing physician that he relied on the defendant's statements. (*See* Order (Doc. 179) p. 6.)

27

28

7

These cases presented what is missing here:  evidence of a prescriber's ***actual reliance*** on a statement from the manufacturer.  Moreover, as this Court observed in *Motus,* 196 F. Supp. 2d at 999, where a prescriber's undisputed testimony shows he did not rely on the manufacturer's warnings or promotional material in deciding to prescribe a medication to a patient, a plaintiff cannot prove that alleged overpromotion influenced the prescribing decision.  *See also Huntman v. Danek Medical, Inc.*, No. 97-2155-IEG, 1998 WL 663362, at *6 (S.D. Cal. July 24, 1998) (plaintiff could not prove that overpromotion caused doctor to use screws for pedicle fixation because there was "no evidence that [the doctor] relied on any statements by defendant in determining the appropriate course of action for [the] plaintiff's treatment.").

**C.**   **Plaintiff Asks The Court To Assume That Dr. Abend Relied On Unspecified Statements From Lilly In Medical Journals And CMEs.**

Plaintiff argues that because Dr. Abend read medical publications in which Lilly-sponsored articles may have appeared, or which may have contained articles that quoted to or cited from Lilly-sponsored articles, he must have seen and relied on information provided by Lilly in prescribing generic fluoxetine to the decedent.  (Doc. 200 pp. 7-10.)  Plaintiff alleges that Lilly used paid consultants and "key opinion leaders" to disseminate information about Prozac® in medical journals, including those that Dr. Abend reviewed during the course of his 40-year career.  But plaintiff does not connect any article to Dr. Abend or his decision to prescribe generic fluoxetine to decedent.

Plaintiff offers only one unconvincing and irrelevant example.  She cites to Dr. Abend's testimony that he has subscribed to and reviewed "The Medical Letter" and then notes that in 1992 (12 years before Dr. Abend prescribed generic fluoxetine to the decedent) the Medical Letter published an article that quoted another article written by Dr. Stuart Montgomery, who plaintiff describes as a Lilly "key opinion leader." (Doc. 200 pp. 7-8.)  But plaintiff offers no evidence that Dr. Abend read or

8

81837 v1

1    relied upon either article.  Nor does plaintiff identify any evidence that Dr. Abend read

2    or relied on any other article that purportedly relied on Dr. Montgomery's article.

3          Plaintiff's counsel had the opportunity to question Dr. Abend on whether he

4    relied on (or even saw) Dr. Montgomery's article – or any other article citing to,

5    relying on, or discussing Dr. Montgomery's article – when prescribing generic

6    fluoxetine to the decedent.  He did not.  Instead, plaintiff asks the Court to assume that

7    Dr. Abend saw and relied on this article from 1992, or some other article referencing

8    or quoting from it, because such articles may or may not have appeared in medical

9    publications over the course of Dr. Abend's 40-year career.  This unsupported

10   assumption is not sufficient to create a genuine issue of fact.

11         Plaintiff's suggestion that Dr. Abend may have been "influenced" by Lilly

12   representatives who may have given presentations at meetings or Continuing Medical

13   Education ("CME") courses (Doc. 200 p. 8.) also fails to create an issue of fact.

14   Plaintiff asks the Court to presume that Dr. Abend relied on statements from Lilly

15   based on (1) his testimony that he relies on information he obtains from CMEs and

16   (2) plaintiff's allegation that Lilly hired "key opinion leaders" and "paid consultants"

17   who may have presented on Prozac® at unidentified CMEs.  But plaintiff fails to cite

18   any evidence connecting Dr. Abend to any CME or presentation given by Lilly, let

19   alone evidence that any information disseminated by Lilly or its representatives at any

20   CME in any way influenced Dr. Abend to prescribe fluoxetine to the decedent.  In

21   fact, Dr. Abend testified that "as far as I recall," none of the speakers at any CMEs he

22   attended were representatives of drug manufacturers.  (Abend Dep. 70:11-72:9.)

23         Plaintiff presents no evidence that Dr. Abend attended a CME at which Lilly

24   representatives provided information about Prozac®.  And *Motus* illustrates that there

25   is a significant difference between merely attending a presentation given by

26   representatives of a drug company and actually relying on information from a drug

27   company when making a prescribing decision.   The prescriber in *Motus* testified he

28                                          9

1  had attended "drug company meetings," meaning "physician meetings such as

2  seminars, lectures or conferences, where information was delivered by various people,

3  including drug company representatives." 196 F. Supp. 2d at 987. Despite this

4  testimony, the Court granted summary judgment and the Ninth Circuit affirmed. *Id.* at

5  999; *Motus*, 358 F.3d at 661.

6      *Motus* calls for the same result here. There is no evidence that Dr. Abend

7  attended any CME at which a Lilly representative presented any information, much

8  less any inaccurate, incomplete, or misleading information, about Prozac®. Even

9  assuming that such evidence might exist, plaintiff could not establish a genuine issue

10  of material fact because there is no evidence that Dr. Abend relied on any such

11  information in prescribing generic fluoxetine for the decedent.

12      **D.**    **Plaintiff's Suggestion That The PDR Is Not A "Litmus Test" Ignores**

13             **The Factual Basis For Lilly's Summary Judgment Motion.**

14      Plaintiff argues the PDR (or package insert) is not a "litmus test" and

15  Dr. Abend's testimony that he "could not specifically recall" reading the Prozac®

16  entry in the PDR is irrelevant because prescription drug manufacturers have a "myriad

17  of [other] venues and forums" to communicate warnings to physicians. (Doc. 200

18  pp. 8-9.) This argument misconstrues Lilly's Motion for Summary Judgment, which

19  is not limited to Dr. Abend's failure to review or rely on the PDR and Prozac®

20  package insert. Lilly's motion is based on Dr. Abend's failure to review and rely

21  upon ***any*** product information from Lilly – from the Prozac® package insert, PDR,

22  Lilly sales or other representatives, CMEs, or other sources.

23      Plaintiff claims Lilly had a "myriad of venues and forums" through which it

24  could have communicated with doctors like Dr. Abend. (Doc. 200 p. 8.) The issue is

25  not whether these venues were available for Lilly to convey warnings. Instead, the

26  relevant question is whether Dr. Abend reviewed and relied upon any of these

27  warnings in prescribing generic fluoxetine to the decedent. This is where plaintiff's

28

1   argument fails. *Conte* recognized that a brand-name manufacturer's liability is

2   tethered to a showing that the prescriber actually relied upon its product information.

3   *Conte,* 168 Cal. App. 4th at 94, 101-02, 105-08. Irrespective of whether a

4   medication's labeling constitutes a "litmus test" or whether there are a "myriad" of

5   forums available to warn a prescriber, plaintiff must present evidence of a specific

6   statement from Lilly that Dr. Abend relied upon to prescribe generic fluoxetine to the

7   decedent. *Conte,* 168 Cal. App. 4th at 94, 101-02, 105-08. Plaintiff does not and

8   cannot make such a showing. *See Latiolais,* 2007 WL 5861354 at *4 ("Plaintiff

9   cannot credibly urge that a doctor who finds it unnecessary to determine whether or

10   not a warning is present would be likely to take into account the new warning once it

11   is provided").

### E.     Plaintiff Asks The Court To Assume That Dr. Abend Relied On The PDR Entry For Prozac.

14        Plaintiff contends there is a genuine issue of fact whether Dr. Abend consulted

15   the PDR entry for Prozac®. (Doc. 200 p. 10.) Plaintiff argues that Dr. Abend's

16   testimony about not consulting the PDR for Prozac® is somehow contradicted by

17   subsequent testimony that is sufficient to create a fact question. (*Id.*) Plaintiff asserts

18   this argument in the face of Dr. Abend's unequivocal testimony that he ***did not rely*** on

19   the PDR entry for Prozac® when deciding to prescribe generic fluoxetine for the

20   decedent. (Abend Dep. 49:17-50:5.) Later in his deposition, Dr. Abend again

21   confirmed that he has no recollection of looking at the PDR for Prozac® before

22   prescribing fluoxetine to the decedent:

23   Q:    And am I also correct that you have no recollection of looking at

24         the labeling for Prozac in the PDR, the Physicians' Desk

25         Reference, at any time before you prescribed Fluoxetine for Noe

26         Carrasco?

27   A:    **That's correct.**

28                                            11

1    (Abend Dep. 317:11-15.).

2        In spite of this testimony, plaintiff suggests a fact issue may exist because

3    Dr. Abend, when "asked whether he consulted the PDR for Prozac to review its

4    warnings . . . testified that he could not *specifically recall*."  (Doc. 200 p. 10.)

5    Plaintiff then argues that similar testimony was held to create a fact issue in *Conte*.

6    (*Id*.)  In support of this argument, plaintiff cites the following portion of Dr. Abend's

7    deposition:

8        Q:    What other side effects have – what side effects have patients

9              complained to you regarding Prozac prior to 2004?  Prior to you

10             prescribing to Noe Carrasco, what other side effects have been

11             complained to you?

12       **A:    Do you want me to list every side effect that I can recall?**

13       Q:    For Prozac, yes, sir, Doctor.

14       **A:    Sedation, decreased libido, agitation, some people describe**

15             **perspiration, sweatiness, anxiety increased.  Those are the ones**

16             **that come to mind.**

17       Q:    And did you, any time, go back and look at the PDR to see whether

18             these side effects were warned about?

19       **A:    Not specifically.**

20       Q:    What do you mean "not specifically"?

21       **A:    I don't recall.**

22   (Abend Dep. 130:17-131:5; Pl's Statement of Genuine Issues (Doc. 200-1) p. 13.)

23       This testimony fails to create a fact issue about whether Dr. Abend consulted

24   the PDR entry for Prozac® or relied on any information in the PDR when making his

25   decision to prescribe fluoxetine to the decedent.  There is no evidence that Dr. Abend

26   consulted the PDR to familiarize himself with Prozac®, its indications, benefits, or

27   warnings in making his prescribing decision.  The only evidence is Dr. Abend's

28                                          12

1   testimony that he did not.

2       Dr. Abend's testimony about his use of the PDR is dramatically different from

3   the testimony that the Court of Appeal held was sufficient to create a fact issue in

4   *Conte*.   As the Court of Appeal explained, the prescribing physician in *Conte* testified

5   "that the PDR was one of the sources he generally refers to in his clinical practice

6   when he considers prescribing Reglan for his patients" and that he had "probably"

7   read the PDR monograph for Reglan. *Conte*, 168 Cal. App. 4th at 99. The Court of

8   Appeal also explained that were it not for the testimony that the *Conte* prescriber had

9   "generally" referred to the PDR in his practice and had probably read the PDR entry

10   for Reglan, the prescriber's declaration that he had not relied on information from

11   Wyeth when making his prescribing decision "would prevent Conte from proving he

12   relied on Wyeth's alleged misrepresentations in its product information." *Id.*   Here,

13   Dr. Abend did not testify that he generally refers to the PDR in his clinical practice.

14   He did not testify that he "probably" read the PDR monograph for Prozac®.  Instead,

15   he explicitly testified to the contrary.  (Abend Dep. 49:17-50:5; 57:8-11; 317:11-15.)

16       **F.**    **Plaintiff Asks The Court To Assume That Dr. Abend "Indirectly"**

17             **Relied On Information He Received From Other Unspecified**

18             **Physicians Who May Have Reviewed The PDR Entry For Prozac®.**

19       Plaintiff suggests she does not have to show that Dr. Abend relied directly on

20   any statements about Prozac® in the PDR as long as there is a possibility that

21   Dr. Abend spoke with another unidentified doctor, or read an article written by

22   another doctor, who may have read the PDR monograph on Prozac® (Doc. 200

23   pp. 11-12.)  Plaintiff claims that, because "California allows reliance to be established

24   indirectly," summary judgment cannot be granted to Lilly because "it is reasonable to

25   assume that at least one of these experts on whom Dr. Abend relied, read the Prozac®

26   label . . . and their reliance is imputed to Dr. Abend." (Doc. 200 p. 11.)  If plaintiff

27   were correct, summary judgment would never be permissible in a prescription drug

28

1  case, and *Motus*, *Latiolais*, and *Conte* would be wrongly decided.[3]  Putting that aside,

2  plaintiff's argument that Dr. Abend's reliance may be established indirectly is based

3  on a misreading of California law.

4  　　　While some California cases discuss the concept of indirect reliance, they

5  concern situations where there is evidence the alleged misrepresentation was actually

6  communicated to the plaintiff or there was an agency relationship.  *See Mirkin v.*

7  *Wasserman*, 5 Cal. 4th 1082, 1097-98, 23 Cal. Rptr. 2d 101 (1993).  The cases

8  plaintiff relies upon recognize that a claim for misrepresentation cannot prevail

9  without evidence of actual reliance by the plaintiff or her agent.  *American Trust Co.*

10  *v. California Western States Life Ins. Co.*, 15 Cal. 2d 42, 46-47, 98 P.2d 497 (1940)

11  (reliance by corporate directors); *Varwig v. Anderson-Behel Porsche/Audi, Inc.*, 74

12  Cal. App. 3d 578, 580-81, 141 Cal. Rptr. 539 (1977) (reliance by plaintiff on car

13  dealer selling to plaintiff).  Under California law, either the plaintiff or the plaintiff's

14  agent must have actually encountered and relied upon the alleged misrepresentation.

15  *See, e.g.*, *Mirkin*, 5 Cal. 4th at 1095 (finding no indirect reliance where

16  misrepresentations were never communicated to plaintiff or agent); *Grinnell v.*

17  *Charles Pfizer & Co.*, 274 Cal. App. 2d 424, 441, 79 Cal. Rptr. 369 (1969) (reliance

18  by entity administering vaccine to plaintiffs).  Here, there is no evidence that

19  Dr. Abend relied – either directly or indirectly – on any representations from Lilly.

20  　　　Plaintiff also cites to a case applying Pennsylvania law, *Knipe v. SmithKline*

21  *Beecham*, 583 F. Supp. 2d 602 (E.D. Pa. 2008), in support of her indirect-reliance

22  argument.  (Doc. 200 p. 11.)  *Knipe* recognized the plaintiff (or learned intermediary)

23  "must actually hear and consider the misrepresentation . . . ." *Id.* at 621.  Here,

24  plaintiff cites no evidence that Dr. Abend heard or considered or was influenced by

25

26  [3] *Conte* explained that unequivocal testimony from a prescriber that he did not read or
    rely on the allegedly inadequate warnings is sufficient to support summary judgment

27  and affirmed the grant of summary judgment to the generic manufacturer for that
    reason.  168 Cal. App. 4th at 112.

28  　　　　　　　　　　　　　　　　　　　　　　14

81837 v1

1   any representations from Lilly about Prozac®.  And – in contrast to Dr. Abend – the

2   prescribing doctor in *Knipe* testified he relied on information about the SSRI at issue

3   (Paxil) from his former partner, that he had read ads about Paxil in medical journals,

4   and that the used the PDR several times a week to obtain information about

5   medications.  *Id.* at 622-23.  Plaintiff's counsel had the opportunity to develop similar

6   testimony from Dr. Abend.  He could not.

**G.**   **Plaintiff Asks To Court To Assume That Dr. Abend's Response
          To A Question About A Hypothetical Warning Creates A Material
          Issue Of Fact.**

10  Plaintiff attempts to create a fact issue based on Dr. Abend's testimony that he

11  "probably would have prescribed another medication" had he been given a

12  hypothetical warning about the purported need for concurrent tranquilizer therapy.

13  (Doc. 200 pp. 9-10 (citing *Motus*, 196 F. Supp. 2d at 997).)  Plaintiff makes this

14  argument despite Dr. Abend's unequivocal testimony that he did not see or rely on

15  any product information from Lilly in making his decision to prescribe fluoxetine to

16  the decedent.

17  A similar argument based on a hypothetical adequate warning was considered

18  and rejected in *Conte*.  The evidence in *Conte* established the prescribing physician

19  had not relied on any information provided by the generic manufacturer.  In opposing

20  the generic manufacturer's motion for summary judgment, the plaintiff claimed it was

21  "immaterial 'whether the allegedly inadequate warnings were relied upon; what must

22  be proven is that adequate warnings, if relied upon, would have changed the

23  *prescribing* decisions, and thereby prevented the injuries.' "  168 Cal. App. 4th at

24  112.  The Court of Appeal rejected this argument.  It held that "[t]here can be no

25  proximate cause where, as in this case, the prescribing physician did not read or rely

26  upon the allegedly inadequate warnings promulgated by a defendant about a

27  product."  *Id.*  (*citing Motus*, 358 F. 3d at 661; *Motus,* 196 F. Supp. 2d at 996-98.)

28
15

1    *Conte* is not alone in recognizing that a defendant is not liable in a failure-to-

2    warn or misrepresentation case when its warnings and product information are not

3    read or relied upon.  In *Ramirez v. Plough, Inc.*, 6 Cal. 4th 539, 25 Cal. Rptr. 2d 97

4    (1993), a mother sued a drug company on behalf of her son, who suffered Reye's

5    Syndrome allegedly caused by ingestion of aspirin.  She claimed the manufacturer had

6    failed to provide adequate warnings.  The California Supreme Court upheld summary

7    judgment for the manufacturer because the decision-maker – there, the plaintiff's

8    mother because the drug was available over the counter – had failed to read the

9    warnings.  *Id.* at 555-56.  It concluded there was "***no conceivable causal connection***

10   between the representations . . . and the plaintiff's injury" because the plaintiff's

11   mother had not read or relied on the allegedly inadequate warning.  *Id.* (emphasis

12   added).

13   The district court in *Latiolais* reached the same result.  It described the

14   plaintiff's effort to raise a "hypothetical inquiry" about a stronger warning's expected

15   effect on the prescribing doctor as an attempt to "circumvent the dispositive fact of the

16   prescriber's actual failure to read any product information or warning from Merck."

17   *Latiolais*, 2007 WL 5861354, at *4.  On appeal, the Ninth Circuit affirmed and

18   rejected the plaintiff's attempt to use a hypothetical question about a possible

19   enhanced warning as a basis for defeating summary judgment.  *Latiolais v. Merck &

20   Co.,* 302 Fed. Appx. 756, 759 (9th Cir. 2008).

21   Here, Dr. Abend testified he did not consult or rely on any oral or written

22   statements from Lilly when he prescribed fluoxetine for the decedent.  There is no

23   evidence that he consulted and relied on any Lilly warnings on Prozac®.  It is

24   irrelevant what Dr. Abend's hypothetical course of treatment might have been had

25   Lilly given a different warning.  Dr. Abend's response to plaintiff's question about a

26   hypothetical warning does not create a fact issue with respect to the reliance element

27   of plaintiff's claims.  It does not undercut Dr. Abend's unequivocal testimony that he

28

16

81837 v1

1   did not rely on any information from Lilly in deciding to prescribe fluoxetine for the

2   decedent.

3

4   **V.    PLANTIFF'S "STATEMENT OF FACTS" MISCHARACTERIZES**

5         **DR. ABEND'S TESTIMONY.**

6         Plaintiff's opposition contains a three-page statement of facts that includes the

7   following summary of Dr. Abend's purported testimony:

> Prior to prescribing fluoxetine to Noe, Dr. Abend met with
> Lilly sales representatives, received and reviewed Lilly's
> promotional material, received Prozac® samples which he
> distributed to his patients, read and relied upon medical
> journal articles and literature favorably discussing fluoxetine
> (including articles written by Lilly and articles which relied
> upon information provided by Lilly, its agents and
> consultants), and, as a result of reading these favorable
> reports, Dr. Abend began to prescribe fluoxetine to his
> patients.   Dr Abend testified that he expected drug
> companies to provide him with accurate information
> regarding the risks and benefits of their drugs and that, had
> Lilly or Sandoz informed him of the magnitude of the
> suicide risks associated with fluoxetine and other
> information regarding fluoxetine risks, he would have read,
> listened to, relied upon and heeded such warnings and
> instructions.

25   (Doc. 200 pp. 2-3.)  Plaintiff's summary is not supported by the record and does not

26   come close to creating a genuine issue of material fact.  Dr. Abend's actual testimony

27   exposes this summary as a gross misreading of his deposition.

28                                       17

1        Plaintiff's summary begins by stating that Dr. Abend "met with Lilly sales

2  representatives." (Doc. 200 p. 2.) This leaves the false impression that Dr. Abend

3  discussed Prozac® with Lilly sales representatives and relied on those discussions in

4  prescribing fluoxetine to the decedent. Plaintiff repeats this theme throughout her

5  brief, going so far as to include a subsection purporting to detail Dr. Abend's

6  interactions with Lilly sales representatives. (Doc. 200 pp. 4-5). But, Dr. Abend's

7  testimony regarding his interactions with sales representatives shows he did not rely

8  on any information they may have conveyed to him in making his prescribing

9  decision. (Abend Dep. 49:8-16.)

10        Plaintiff claims that Dr. Abend "received and reviewed Lilly's promotional

11  material," in another attempt to create the misimpression that Dr. Abend relied on

12  promotional material relating to Prozac® when prescribing fluoxetine for the

13  decedent. (Doc. 200 p. 2.) As explained by Dr. Abend, this is not correct:

14        Q:    Do you recall receiving any promotional materials or any literature

15             about Prozac or selective serotonin reuptake inhibitors from any

16             detail people or other personnel with Eli Lilly & Company?

17        **A:**    **No.**

18  (Abend Dep. 52:15-21; *see also* 317:2-10.)

19        Plaintiff next claims Dr. Abend "received Prozac® samples which he

20  distributed to his patients," creating the misimpression that the receipt of Prozac®

21  samples played a role in Dr. Abend's decision to prescribe fluoxetine to the decedent.

22  (Doc. 200 pp. 2-3.) Dr. Abend actually testified as follows:

23        Q:    Okay. Have you ever had a chance of receiving samples of drugs

24             from drug representatives?

25        **A:**    **Sometimes. We generally don't recommend that physicians**

26             **accept samples nowadays. But in the past, yes.**

27

28                                    18

81837 v1

Q:   In the past, yes.  So in the 1990s, do you recall receiving samples
of Prozac from Lilly representatives?

**A:   I don't specifically recall samples of Prozac, but I did accept
samples…back then.**

Q:   And would you subsequently distribute those samples to your
patients?

**A:   Only sometimes.**

(Abend Dep. 88:5-19.)  Later in his deposition, Dr. Abend confirmed that he received
samples of Prozac® in 1995, but did not recall receiving Prozac® samples in 2004.
(Abend Dep. 279:3-280:11.)  There is no basis for plaintiff's suggestion that
Dr. Abend's receipt of Prozac® samples in 1995 had anything to do with his decision
to prescribe generic fluoxetine to the decedent.

Plaintiff asserts Dr. Abend testified that he "read and relied upon medical
journal articles and literature favorably discussing fluoxetine (including articles
written by Lilly and articles which relied upon information provided by Lilly, its
agents and consultants)."  (Doc. 200 p. 3.)  While Dr. Abend did testify that he read
and relied on assorted unidentified medical literature (Abend Dep. 52:15-21), he did
not testify that he relied on articles written or influenced by Lilly's employees, agents,
or consultants.  Plaintiff simply speculates, without foundation, that because
Dr. Abend may have relied upon unspecified medical literature, he must have relied
upon literature written or influenced by Lilly's employees, agents, or consultants.
Plaintiff's counsel had ample opportunity to develop such testimony during
Dr. Abend's extensive deposition.  He failed to do so.

Plaintiff claims Dr. Abend testified that, "had Lilly or Sandoz informed him of
the magnitude of the suicide risks associated with fluoxetine and other information
regarding fluoxetine risks, he would have read, listened to, relied upon and heeded
such warnings and instructions."  (Doc. 200 p. 3)  Plaintiff suggests Dr. Abend

19

81837 v1

believes Lilly concealed from him the "the magnitude of the suicide risks" allegedly associated with fluoxetine. (*Id.*) Again, Dr. Abend's testimony uncovers plaintiff's mischaracterization.

Plaintiff's argument is based on one objectionable question about a hypothetical warning in response to which Dr. Abend testified he would "probably" prescribe a different medication. (Doc. 200 p. 3 (citing Abend Dep. 271:11-275:24).) Plaintiff's counsel did not ask Dr. Abend what he would have done had he been given a stronger warning about suicide risks. Instead, he asked what Dr. Abend would have done had the Prozac® label instructed that a tranquilizer should be co-prescribed with fluoxetine:

> Q:   Okay.   Doctor, this is for the purposes of clarifying the record for the previous question that we just asked.  And my question was: If Prozac's label indicated that it should be administered – coadministered with a tranquilizer to offset the suicide risks inherent in Prozac, and the labels and the instructions for the other antidepressants that you commonly utilize did not have such a requirement, would you still have prescribed Prozac or would you have prescribed a medication that didn't require the coadministration?
>
> **A:   I probably would have prescribed another medication.**

(Abend Dep. 275:10-24.)

The hypothetical warning posed by plaintiff's counsel is irrelevant under *Conte* because Dr. Abend did not rely on any product information from Lilly. It fails for another reason: Dr. Abend did not testify – as contended by plaintiff – that he "would have probably prescribed another medication" because he believed Lilly had obscured from him the "the magnitude of the suicide risks" associated with fluoxetine. (Doc. 200 p. 3.) Instead, he explained this was because "I would never coadminister

81837 v1

1   another central nervous system drug with the one that was prescribed." (Abend Dep.

2   272:22-23.) And after answering this hypothetical question, Dr. Abend clarified that

3   he has known of the alleged risk of self harm with Prozac® therapy since the 1990s

4   and had more than enough information to warn his patients of this potential risk:

5       Q:    So regardless of the additional information in the documents that

6              Mr. Esfandiari showed you, regardless of whether that information

7              could be characterized as new information or not, you certainly

8              had enough information as of the 1990s to warn your patients of

9              the risk of self harm in connection with Prozac; is that correct?

10       ….

11       **A:**    **Correct.**

12   (Abend Dep. 331:21-332:5.) Dr. Abend also testified that his regular practice in the

13   summer of 2004 was to warn patients to whom he prescribed fluoxetine about the risk

14   of self harm and that he has no reason to believe he did not follow this practice with

15   the decedent. (Abend Dep. 41:6-42:21.)

16       Plaintiff's repeated misreadings of Dr. Abend's testimony do not create a

17   genuine issue of material fact.

18

19   **VI.   PLAINTIFF'S ARGUMENTS AGAINST APPLICATION OF THE**

20          **LEARNED INTERMEDIARY DOCTRINE IGNORE THE FACT THAT**

21          **RELIANCE BY DR. ABEND IS AN ESSENTIAL ELEMENT OF HER**

22          **CLAIMS AGAINST LILLY.**

23       Plaintiff concludes her brief by raising several policy arguments against

24   application of the learned intermediary doctrine. She premises these arguments with

25   the statement that "in their motions for summary judgment, both defendants focused

26   solely on Dr. Abend (the learned intermediary) and ignored any discussion of the

27   decedent Noe Carrasco or his family." (Doc. 200 p. 13.) Lilly's Motion primarily

28                                      21

81837 v1

1   focuses on Dr. Abend's testimony because plaintiff's claims against Lilly, as created

2   and defined by *Conte*, require plaintiff to show reliance by the prescribing physician.

3   *Conte,* 168 Cal. App. 4th at 94, 101-02, 105-08.  Even if the Court chose to depart

4   from established California law and adopt an exception to the learned intermediary

5   doctrine, however, this would not relieve plaintiff of her burden of showing that

6   Dr. Abend relied on product information from Lilly.  *Id.*  And plaintiff's argument that

7   the Court should jettison or ignore the learned intermediary doctrine is contrary to

8   California law.  *See Motus,* 196 F. Supp. 2d at 990 ("California follows the learned

9   intermediary doctrine, which states that in the case of prescription drugs, the duty to

10  warn 'runs to the physician, not to the patient.' ") (quoting *Carlin v. Superior Court*,

11  13 Cal. 4th 1104, 1116, 56 Cal. Rptr. 2d 162 (1996)); *see also*, Order Denying

12  Plaintiff's Proposed Third Amended Complaint [Doc. No. 179] (same; *citing Motus*).

13        Plaintiff argues the learned intermediary doctrine does not apply where the

14  warning given to the learned intermediary is alleged to be inadequate.  (Doc. 200

15  pp. 13-14.)  This argument is based on a misreading of a quotation from *Stevens*, 9

16  Cal. 3d at 65.  At no point did *Stevens* hold that an inadequate warning to the learned

17  intermediary triggers a duty to warn the patient directly.  Even where warnings to the

18  physician may be inadequate, the learned intermediary doctrine is not suspended and

19  replaced by a duty to warn the patient.  *See Motus,* 196 F. Supp. 2d 984 at 991

20  (applying the learned intermediary doctrine and granting defendant's motion for

21  summary judgment on causation grounds even though defendant conceded that its

22  warnings were inadequate for purposes of the motion), *aff'd*, 358 F.3d at 660-61

23  ("[W]e agree with the district court that even if [the manufacturer's] warnings . . .

24  were deficient, on the facts of this case, [the plaintiff] failed to establish that [the

25  manufacturer's] allegedly inadequate warnings contributed to her husband's suicide.").

26        Plaintiff contends, without citing authority, that the learned intermediary

27  doctrine should not apply because the FDA now requires a Patient Medication Guide

28                                                22

("PMG") be distributed with all SSRI and SNRI antidepressants, including fluoxetine. (Doc. 200 p. 14.)  Plaintiff speculates that the decedent would not have ingested fluoxetine *if* Lilly had issued a PMG to patients in the 1990s because, *if* Lilly had done so, the decedent's relatives would have seen the warnings in the PMG and either stopped him from taking fluoxetine or monitored him at the "first sign of trouble." (Doc. 200 p. 14.)  Plaintiff provides no support for this speculation.  The FDA has stated that "the written patient medication information provided does not alter the duty, or set the standard of care for manufacturers, physicians, pharmacists, and other dispensers," and that "[h]ealth care professionals bear the primary responsibility for informing individuals about patient-specific benefits, risks, and directions for using prescription medication." 63 Fed. Reg. 66,378 at 66,384 (Dec. 1, 1998).  PMGs do not operate as an exception to the learned intermediary doctrine. *See id.*  And plaintiff cites no California authority supporting such an exception.

Plaintiff also fails to cite any case holding that causation can be established against a drug manufacturer based on testimony from a patient's relatives about product information they received or should have received.  This is not surprising because it would contravene the line of authority holding that a drug company's duty to warn runs to the doctor, not the patient, much less the patient's family.  If plaintiff were correct, it is hard to imagine summary judgment being available to a defendant in any pharmaceutical warnings-based case.  The patient's family would need only to declare that they would have prevented the patient's alleged injury if they understood what might allegedly happen.

Without citation to any California case, plaintiff invites the Court to create new California law and recognize a "direct-to-consumer" advertising exception to the learned intermediary doctrine.  (Doc. 200 pp. 14-18.)  Plaintiff relies primarily on three non-California cases: *State ex rel. Johnson & Johnson Corp. v. Karl*, 647 S.E.2d 899, 914, 220 W.Va 463 (W.Va. 2007); *Rimbert v. Eli Lilly & Co.*, 577 F.

23

81837 v1

1   Supp. 2d 1174 (D.N.M. 2008); and *Perez v. Wyeth Labs.*, 734 A.2d 1245, 161 N.J. 1
2   (N.J. 1999).  Plaintiff's reliance on *Karl* and *Rimbert* is misplaced because neither
3   case adopted a direct-to-consumer exception to the learned intermediary doctrine.
4   Rather, each took the position that the learned intermediary doctrine should not apply
5   at all.  As such, both are contrary to longstanding California law and should carry no
6   weight here.  And both cases are against the great weight of authority across the
7   United States.  *See In re Norplant Contraceptive Prods. Liab. Litig.*, 215 F. Supp. 2d
8   795, 803 (E.D. Tex. 2002) (compiling cases).  Plaintiff cites no authority that
9   California would or should follow *Karl* and *Rimbert*.

10         Plaintiff's reliance on *Perez v. Wyeth Labs., Inc.*, 734 A.2d 1245 (N.J. 1999) is
11   also misplaced.  In *Perez*, the New Jersey Supreme Court reaffirmed application of the
12   learned intermediary doctrine, but adopted an exception to the doctrine when specific
13   evidence exists that direct-to-consumer advertising influenced the physician's decision
14   to prescribe the medication at issue.  *Id.* at 1259.  Plaintiff cites no authority that
15   California courts would or should follow *Perez*.

16         Finally, plaintiff presents no evidence that indicates direct-to-consumer
17   advertising played any role in Dr. Abend's prescribing decision.  There is no evidence
18   the decedent saw or was influenced by any Prozac® advertisements.  The assertion by
19   decedent's sister that she remembers Prozac® advertisements is irrelevant.  Dr. Abend
20   did not testify that the decedent asked him to prescribe Prozac®.  Because plaintiff
21   has offered no evidence that direct-to-consumer advertising played any role in the
22   prescription at issue, there is no foundation for applying a direct-to-consumer
23   advertising exception to the learned intermediary doctrine, even if California had
24   adopted such an exception.  The Court should apply the learned intermediary doctrine
25   in this case, as it did in *Motus* and as the California Court of Appeal did in *Conte*.

26
27
28
                                          24

81837 v1

# VII.   CONCLUSION

Plaintiff's opposition to Lilly's Motion for Summary Judgment is based on unsupported speculation grounded in her misreading of Dr. Abend's testimony.  But speculation and guesswork are not sufficient to defeat summary judgment. Dr. Abend's testimony clears the smokescreen left by plaintiff's attempt to misconstrue his deposition.  It demonstrates that plaintiff cannot establish the elements of reliance and causation that are essential to her claims against Lilly. "[J]ustice requires that a defendant be as much entitled to be rid of an unmeritorious lawsuit as a plaintiff is entitled to maintain a good one."  *Conte*, 168 Cal App. 4th at 97 (internal quotation marks and citation omitted).  Lilly's motion for summary judgment should be granted.

Dated:  November 22, 2010

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: _____

Frank C. Rothrock
Attorneys for Defendant Eli Lilly and Company

25

81837 v1

# PROOF OF SERVICE

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 5 Park Plaza, Suite 1600, Irvine, California  92614.

On November 22, 2010, I served on the interested parties in said action the within:

## LILLY'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

by placing a true copy thereof in a sealed envelope(s) addressed as stated on the attached mailing list.

☐ (MAIL) I am readily familiar with this firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

☐ (FAX) I caused such document(s) to be served via facsimile on the interested parties at their facsimile numbers listed above.  The facsimile numbers used complied with California Rules of Court, Rule 2003, and no error was reported by the machine.  Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to print a report of the transmission.

☒ (ELECTRONIC FILING) I provided the document(s) listed above electronically through the CM/ECF system pursuant to the instructions set forth in the Local Rules for the United States District Court for the Central District of California.

☐ (HAND DELIVERY) By placing a true and correct copy of the above document(s) in a sealed envelope addressed as indicated above and causing such envelope(s) to be delivered by hand to the addressee(s) designated.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on November 22, 2010, at Irvine, California.


| Deborah Hohmann | _D. Hohmann_ |
|---|---|
| (Type or print name) | (Signature) |

72143

## SERVICE LIST

Michael L. Baum, Esq.
Kate E. Gillespie, Esq.
Bijan Esfandiari, Esq.
Baum Hedlund Aristei & Goldman
12100 Wilshire Blvd., Suite 950
Los Angeles, CA  90025-7106

Tel:  (310) 207-3233
Fax:  (310) 207-4204
mbaum@baumhedlundlaw.com
besfandiari@baumhedlundlaw.com
kgillespie@baumhedlundlaw.com
**Counsel for Plaintiff**

Arnold Anderson Vickery, Esq.
Paul Waldner, Esq.
Vickery, Waldner & Mallia, LLP
One Riverway Drive, Suite 1150
777 S. Post Oak Lane
Houston, TX  77056

Tel:  (713) 526-1100
Fax:  (713) 523-5939
**Co-counsel for Plaintiff**

Richard A. Clark, Esq.
Natasha N. Dawood, Esq.
Parker Milliken Clark, et al.
555 South Flower Street, 30th Floor
Los Angeles, CA  90071

Tel:  (213) 683-6500
Fax: (213) 683-6669
rclark@pmcos.com
ndawood@pmcos.com
**Counsel for Sandoz, Inc**

Joe G. Hollingsworth, Esq.
Eric G. Lasker, Esq.
Stephen A. Klein, Esq.
Michael R. Keenan, Esq.
Hollingsworth LLP
1350 I Street, N.W.
Washington, DC  20005

Tel:  (202) 898-5800
Fax:  (202) 682-1639
kgriffis@hollingsworthllp.com
sklein@hollingsworthllp.com
mkeenan@hollingsworth.com
**Counsel for Sandoz, Inc.**

72143